1  Kenneth M. Trujillo-Jamison (Bar No. 280212)
   ktrujillo-jamison@willenken.com
2  WILLENKEN LLP
3  707 Wilshire Blvd., Suite 4100
   Los Angeles, California 90017
4  Telephone:  (213) 955-9240
   Facsimile:   (213) 955-9250
5
6  Zack Chibane (admitted *pro hac vice*)
   zchibane@x.com
7  Christopher Guerriero (admitted *pro hac vice*)
   cguerriero@x.com
8  X CORP.
   249 W. 17th Street
9  New York, NY 10011
   Telephone:  (201) 228-0699
10

11 *Attorneys for Defendant X Corp., in its corporate*
   *capacity and as successor in interest to named defendant*
12 *Twitter, Inc.*

13                 UNITED STATES DISTRICT COURT

14                 CENTRAL DISTRICT OF CALIFORNIA

15

16 | MICHAEL GRECCO PRODUCTIONS, INC., | Case No.: 2:24-cv-04878-MEMF-JC |
   | a California corporation, | |
17 | | **DEFENDANT X CORP.'S NOTICE OF** |
18 | Plaintiff, | **MOTION AND MOTION FOR** |
   | | **EVIDENTIARY SANCTIONS;** |
19 | v. | **MEMORANDUM OF POINTS &** |
   | | **AUTHORITIES** |
20 | TWITTER, INC., a Delaware corporation; X | |
21 | CORP., a Nevada corporation; and DOES 1-10, | **Date:    January 15, 2026** |
   | inclusive, | **Time:    10:00 a.m.** |
22 | | **Place:   Courtroom 8B** |
   | Defendants. | |
23 | | Hon. Maame Ewusi-Mensah Frimpong |

24

25

26

27

28

TO THE CLERK OF THE ABOVE-TITLED COURT, THE PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on January 15, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, Defendant X Corp., in its corporate capacity and also as successor in interest to named defendant Twitter, Inc. ("X Corp."), will, and hereby does, move the Court for an order (1) issuing terminating sanctions or an adverse inference that (i) Plaintiff Michael Grecco Productions, Inc. ("Grecco") intentionally deleted the Grecco Account Data (as that term is defined in the Memorandum of Points & Authorities accompanying this motion), and (ii) the Grecco Account Data would have shown that Grecco posted the Photos on which its claims are based, and thus granted X Corp. and its users a "broad, royalty-free license to make [the Photos] available to the rest of the world and to let others do the same"; and (2) awarding X Corp. its reasonable attorneys' fees and costs incurred in investigating Grecco's spoliation and bringing the instant motion.

This motion is made under this Court's inherent powers and Federal Rule of Civil Procedure 37(e), and is based on this Notice of Motion and Motion for Evidentiary Sanctions, the Declarations of Kenneth M. Trujillo-Jamison, Zack Chibane, Josh Harris, and Mike Anderson (including their exhibits, where applicable), filed concurrently, all pleadings and papers on file in this action, such other evidence or arguments as may be presented to the Court, and such other matters of which this Court may take judicial notice.

This Motion complies with Local Rule 7-3, because X Corp. brings this Motion after its counsel participated in a conference with Grecco's counsel on November 25, 2025, during which counsel for the parties discussed the substance of this motion. Declaration of Kenneth M. Trujillo-Jamison ("Trujillo-Jamison Decl.") ¶ 2. Notwithstanding that conference, the parties are unable to reach a resolution that eliminates the necessity for the Motion. *Id.*

Dated:  December 4, 2025                    WILLENKEN LLP

By: */s/ Kenneth M. Trujillo-Jamison*
Kenneth M. Trujillo-Jamison
Attorneys for Defendant X Corp.

1
2

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................3

    A.    Grecco Fails to Disclose The Grecco Accounts in Its Pleadings or Initial Disclosures ................................................................................................3

    B.    X Corp. Learns of Grecco's Social Media Presence.................................3

    C.    Grecco Identifies the Grecco Accounts, Only After They "No Longer Exist[ed]" ....................................................................................................5

    D.    X Corp. Issues Additional Discovery into Whether Grecco Preserved *Any* Grecco Account Data ...............................................................................6

    E.    Grecco Effectively Admits It Did Not Preserve the Grecco Account Data............7

    F.    X Corp.'s Investigation Confirms that Grecco Intentionally Deleted All Grecco Account Data in December 2024—*Five Months After* Filing This Action...........7

    G.    Grecco Admits It "[D]eactivated the [A]ccount[s]" .................................8

III.    ARGUMENT ........................................................................................................8

    A.    Plaintiff's Spoliation of the Grecco Account Data Warrants Sanctions.................8

        1.    Plaintiff's Deletion of Evidence Constitutes Spoliation ...........................10

            a.    Grecco Should Have Preserved the Grecco Account Data............10

            b.    Plaintiff Failed to Take Reasonable Steps to Preserve the Grecco Account Data ....................................................................12

            c.    The Grecco Account Data Was Lost as a Result of Grecco's Failure to Preserve .........................................................13

            d.    The Grecco Account Data Cannot be Replaced Through Additional Discovery .....................................................................14

        2.    Plaintiff's Spoliation Has Severely Prejudiced X Corp. and Sanctions are Warranted Under this Court's Inherent Power.................15

        3.    Rule 37(e) Sanctions Also Are Appropriate Because Grecco Acted with Intent .........................................................................16

            a.    By Deleting Relevant Evidence *Five Months* After Bringing This Action and Failing to Preserve Such Evidence, Grecco Acted with Intent ..............................................17

b.      Grecco's Intentional Spoliation Warrants a Mandatory Jury Instruction or, Alternatively, Terminating Sanctions ....................19

B.      Defendant Is Entitled to Attorney's Fees and Costs for Bringing This Motion............................................................................................20

IV.      CONCLUSION.........................................................................................21

CERTIFICATE OF COMPLIANCE ............................................................22

DEFENDANT X CORP.'S MOTION FOR EVIDENTIARY SANCTIONS

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
  888 F. Supp. 2d 976 (N.D. Cal. 2012) ........................................................ 9

*Bobrick Washroom Equip., Inc. v. Am. Specialties, Inc.*,
  2012 WL 3217858 (C.D. Cal. Aug. 8, 2012) ............................................. 9

*Bruner v. City of Phx.*,
  2020 WL 554387 (D. Ariz. Feb. 4, 2020) ........................................... 13, 21

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
  2022 WL 837596 (S.D.N.Y. Mar. 21, 2022) ......................................... 5, 11

*Collins-Williams v. Contour Eastwyck LLC*,
  2022 WL 17828934 (N.D. Ga. Dec. 15, 2022) ......................................... 18

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
  2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ................................. 9, 12, 15

*Dish Network L.L.C. v. Jadoo TV, Inc.*,
  2022 WL 11270394 (N.D. Cal. Oct. 19, 2022) ......................................... 16

*Facebook, Inc. v. OnlineNIC Inc.*,
  2022 WL 2289067 (N.D. Cal. Mar. 28, 2022) ................................. 2, 15, 17, 18, 19

*Fast v. GoDaddy.com LLC*,
  340 F.R.D. 326 (D. Ariz. 2022) .............................. 12, 13, 15, 16, 18

*Gatto v. United Air Lines, Inc.*,
  2013 WL 1285285 (D.N.J. Mar. 25, 2013) ............................................... 16

*Golden v. Michael Grecco Prods.*,
  524 F. Supp. 3d 52 (E.D.N.Y. 2021) ........................................................ 1

*Great Minds v. Office Depot, Inc.*,
  945 F.3d 1106 (9th Cir. 2019) ................................................. 11, 12, 15

*Hice v. Lemon*,
  2021 WL 6053812 (E.D.N.Y. Nov. 17, 2021) ......................................... 18

*Hice v. Lemon*,
  2022 WL 1407593 (E.D.N.Y. Nov. 17, 2021) ......................................... 21

*Holloway v. Cnty. of Orange*,
  2021 WL 454239 (C.D. Cal. Jan. 20, 2021) ................................. 12, 18, 19

*In re Napster, Inc. Copyright Litig.*,
  462 F. Supp. 2d 1060 (N.D. Cal. 2006) .................................................... 9

*Jones v. Riot Hosp. Grp. LLC*,
  95 F.4th 730 (9th Cir. 2024) .................................................................... 16

*Laub v. Horbaczewski,*
  2020 WL 9066078 (C.D. Cal. July 22, 2020).................................................... 17

*Lee v. Cnty. of Los Angeles,*
  2025 WL 2505484 (C.D. Cal. Aug. 29, 2025) ...................................................... 9

*Leon v. IDX Sys. Corp.,*
  464 F.3d 951 (9th Cir. 2006) ....................................................................... 17, 20

*Michael Grecco Productions, Inc. v. Fandom, Inc.,*
  No. 2:24-cv-05963, Dkt. 53-1 (C.D. Cal. Apr. 17, 2025) .................................. 18

*N.T.A.A. No Talk All Action, Inc. v. Nordstrom, Inc.,*
  2023 WL 9419145 (C.D. Cal. Nov. 3, 2023) ...................................................... 20

*Nuvasive, Inc. v. Absolute Med., LLC,*
  2021 WL 3008153 (M.D. Fla. May 4, 2021) ...................................................... 18

*Reinsdorf v. Skechers U.S.A., Inc.,*
  296 F.R.D. 604 (C.D. Cal. 2013) ....................................................................... 10

*Saensinbandit v. Alaska Airlines, Inc.,*
  2019 WL 6841972 (D. Alaska Dec. 15, 2019) ................................................... 21

*Schneider v. YouTube, LLC,*
  649 F. Supp. 3d 872 (N.D. Cal. Jan. 5, 2023) ....................................... 5, 11, 15

*Sethunya v. TikTok, Inc.,*
  2025 WL 1144776 (10th Cir. Apr. 18, 2025)................................................ 5, 11

*Surfvivor Media, Inc. v. Survivor Prods.,*
  406 F.3d 625(9th Cir. 2005) ................................................................................ 9

*WeRide Corp. v. Kun Huang,*
  WL 1967209 (N.D. Cal. Apr. 24, 2020).............................................................. 20

**Other Authorities**

Oct. 20, 2016 Article, *Photographers Focused on Copyright Rights Online,*
  Los Angeles Business Journal, *available at*
  https://labusinessjournal.com/technology/photographers-focused-online/
  (last visited December 4, 2025)............................................................................ 2

**Rules**

Fed. R. Civ. P. 37 ...................................................................................................... 23

Fed. R. Civ. P. 37(e) ................................................................... 1, 18, 21, 22, 23

Fed. R. Civ. P. 37(e)(2).................................................................... 10, 18, 20

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.    <u>INTRODUCTION</u>

3        Plaintiff Michael Grecco Productions, Inc. ("Grecco") is a serial litigant with *243* federal

4 copyright infringement cases under its belt in the past decade.[1] Grecco's cases follow the same

5 playbook: Grecco trawls the Internet for its decades-old photographs, and files strike suits to

6 extract settlements. One court correctly noted that Grecco may be "a litigious and opportunistic

7 copyright holder" and that its counsel "might be considered a 'copyright troll'"—"a term that

8 refers to someone who scours the internet for unlicensed use of copyrighted material for the

9 purpose of extracting settlements."[2]

10        Despite intimate familiarity with federal court litigation, Grecco failed to take the most

11 basic steps to preserve critical evidence in this case (this "Action"). **More than *five months***

12 **after suing X Corp. for copyright infringement, Grecco: (1) completed a five or six-step**

13 **manual process to permanently deactivate and thus delete *both* of its X accounts (the**

14 **"Grecco Accounts"), despite knowing this would result in permanent deletion of the Grecco**

15 **Accounts and all associated data (the "Grecco Account Data"); and (2) did not archive and**

16 **preserve the Grecco Accounts despite being repeatedly informed it could have easily done**

17 **so at *any time* before the Grecco Account Data was permanently deleted.**

18        The relevance of the Grecco Account Data—containing a trove of potentially case-

19 dispositive ESI spanning *sixteen years*—cannot be overstated.  The deleted Grecco Accounts,

20 which ***Grecco first disclosed to X eight months after it deleted them***, likely would have shown

21 that, consistent with Grecco's past practice, it posted the photographs at issue in this Action (the

22 "Photos") on X, and in doing so granted X Corp. and its users a "broad, royalty-free license" to

23

24

25

26 ────────────────

27 [1] *See* Declaration of Kenneth M. Trujillo-Jamison ("Trujillo-Jamison Decl.," filed concurrently)
¶ 3 & Ex. A (a search on Pacer for "Michael Grecco" as "plaintiff" yields 243 cases).

28 [2] *Golden v. Michael Grecco Prods.*, 524 F. Supp. 3d 52, 65 (E.D.N.Y. 2021).

DEFENDANT X CORP.'S MOTION FOR EVIDENTIARY SANCTIONS

make those Photos "available to the rest of the world and to let others do the same."[3] In other words, Grecco sued X Corp., and then intentionally and permanently destroyed the Grecco Accounts, along with **sixteen years' of Grecco Account Data**, before X Corp. could take steps to preserve it.

But the evidence Grecco could not destroy confirms it routinely posted its copyrighted photos on social media platforms, including X, and because doing so licensed their use on X, Grecco waived any copyright claims against X Corp. as to those photos. Because X Corp. cannot recover the Grecco Account Data due to Grecco's deletion of the Grecco Accounts before it informed X Corp. of their existence, X Corp. must "rely on incomplete and spotty evidence." *Facebook, Inc. v. OnlineNIC Inc.*, 2022 WL 2289067, at *10 (N.D. Cal. Mar. 28, 2022). Sanctions are warranted as a result. *See id.* (awarding terminating sanctions for spoliation of "[m]assive amounts of ESI, including the critical attachment files").

The facts set forth herein tell a damning story of discovery misconduct, demonstrating that Grecco intentionally spoliated highly relevant evidence and should be sanctioned under Ninth Circuit precedent, this Court's inherent power, and Rule 37(e). For all the reasons that follow, the Court should issue terminating sanctions or an adverse inference that Grecco deleted the Grecco Account Data intentionally, and that the Grecco Account Data would have shown that Grecco posted on X the very Photos on which its claims are based, and thus granted X Corp. and its users a "broad, royalty-free license to make [the Photos] available to the rest of the world and to let others do the same"; and the Court should award X Corp. its reasonable attorneys' fees and costs.

---

[3] *See* X Corp.'s Terms of Service, *available at* https://x.com/en/tos (defining "Content" to include "*any . . . **photos** . . .* uploaded, downloaded or appearing on the Services.") (emphasis added).

## II.   BACKGROUND

### A.   Grecco Fails to Disclose The Grecco Accounts in Its Pleadings or Initial Disclosures

According to the Second Amended Complaint (ECF No. 30; the "SAC"), Grecco "owns the rights to multiple photographs made by Michael Grecco, a photographer and author. (*Id.* ¶ 4.) Grecco works with "a team of eight law firms throughout the country" to gin up claims of copyright infringement and extract settlements.[4] Consistent with this litigation strategy, Grecco sued X Corp. (formerly Twitter) on June 10, 2024. (ECF No. 1.) On February 12, 2025, Grecco filed its SAC, claiming infringements of 111 of its Photos based on alleged user posts on X containing those Photos. (SAC ¶¶ 29–30.)

Although Grecco's SAC and exhibits thereto identify dozens of X accounts that allegedly infringed these Photos,[5] and accounts from which the alleged infringement was documented,[6] *none* of its three complaints nor its initial disclosures even reference, much less identify, the Grecco Accounts. (*See generally* ECF No. 1; ECF No. 12; SAC; Trujillo-Jamison Decl., Ex. B.) On June 20, 2025, X Corp. moved for judgment on the pleadings because, among other things, Grecco failed to plead that X Corp. had actual knowledge of specific acts of infringement because the SAC is devoid of any detail concerning its alleged DMCA takedown notices. (ECF No. 41.)

### B.   X Corp. Learns of Grecco's Social Media Presence

In the summer of 2025, X Corp. discovered Michael Grecco's social media presence, and multiple instances of Grecco posting its own copyrighted photographs on X and Facebook. (*See, e.g.*, Declaration of Zack Chibane ("Chibane Decl.," filed concurrently) ¶¶ 3–8 & Ex. A;

---

[4] *See* Oct. 20, 2016 Article, *Photographers Focused on Copyright Rights Online*, Los Angeles Business Journal, *available at* https://labusinessjournal.com/technology/photographers-focused-online/ (last visited December 4, 2025).

[5] *See* SAC Ex. C (ECF No. 30-3) (194 pages of screenshots from X purporting to show X accounts that posted the Photos and infringed Grecco's copyrights).

[6] *See id.* (screenshots apparently taken from various X accounts showing alleged infringements).

DEFENDANT X CORP.'S MOTION FOR EVIDENTIARY SANCTIONS

1  Trujillo-Jamison Decl., Ex. G.) X Corp. first became aware of Grecco's @michaelgrecco

2  account in or around June 2025 in the course of conducting online research, including on

3  Grecco's website, www.grecco.com. (Chibane Decl. ¶¶ 3–8.) Grecco's website contains a

4  "twitter" button that, if clicked, takes users to x.com/michaelgrecco. (*Id.* ¶ 5.) That website states

5  that the @michaelgrecco "account doesn't exist," consistent with account deletion. (*Id.* ¶ 6.)

6  Later searches of X.com using the @michaelgrecco handle yielded few results, but did reveal a

7  single screenshot, posted to X by a third-party user, which appeared to show Grecco's Twitter

8  (now X) account as of around February 2019. (*Id.* Ex. A.) That screenshot shows Grecco having

9  posted multiple of its copyrighted photos on Twitter (now X) in a landscape-oriented cover photo

10  on the top of the profile page:



11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  (*Id.* ¶ 8.)

27        The significance of the deleted Grecco Accounts and Grecco Account Data—including

28  all photographs Grecco posted on X since 2009—cannot be overstated. Grecco's posting of *any*

of the 111 Photos at issue in this case granted X Corp. "a broad, royalty-free license to make [its] Content available to the rest of the world and to let others do the same." *See* X Corp.'s Terms of Service, *available at* https://x.com/en/tos (effective November 15, 2024). Evidence of such posts—which would be contained in the deleted Grecco Account Data—would dispose of Grecco's copyright claims. *See Schneider v. YouTube, LLC*, 649 F. Supp. 3d 872, 885 (N.D. Cal. Jan. 5, 2023) (dismissing direct copyright infringement claim based on works that plaintiff "uploaded . . . to YouTube," because "[u]nder the plain language of the TOS, YouTube cannot be liable for direct infringement of these works."); *Sethunya v. TikTok, Inc.*, 2025 WL 1144776, at *3 (10th Cir. Apr. 18, 2025) (in affirming dismissal of copyright infringement claims based on works plaintiff posted on those platforms, holding that "[t]he district court correctly ruled that [plaintiff's] copyright claims against both defendants failed because she had granted them non-exclusive licenses"); *Bus. Casual Holdings, LLC v. YouTube, LLC*, 2022 WL 837596, at *5 (S.D.N.Y. Mar. 21, 2022) ("under the plain language of the license, YouTube cannot be liable for directly infringing any copyrights associated with any content that [plaintiff] has uploaded").

On June 26, 2025, X Corp. propounded more discovery requests that asked Grecco, among other things, to "admit that [Grecco] [c]ontrolled the X account @michaelgrecco" and to "[i]dentify all accounts on the X platform that You or anyone on Your behalf has created or that You or anyone on Your behalf otherwise controlled." (Trujillo-Jamison Decl., Ex. C at No. 1; *id.*, Ex. D at No. 12.)

Meanwhile, Grecco's discovery requests did not identify the Grecco Accounts. Grecco requested documents related to photos uploaded by *dozens of other X users*—each identified by their alleged X account handle—but did *not* ask for documents for Grecco's own accounts. (*See id.*, Ex. E at Nos. 10–23 (requesting documents relating to images allegedly posted by five X accounts but not referencing @michaelgrecco).)

## C.     Grecco Identifies the Grecco Accounts, Only After They "No Longer Exist[ed]"

On August 29, 2025—for the very first time—Grecco acknowledged the existence of the Grecco Accounts. In response to an RFA, Grecco admitted that its principal, Michael Grecco,

"[c]ontrolled the X account @michaelgrecco," and in response an interrogatory, Grecco identified a second account, @DaysofPunk, that "Michael Grecco . . . has used." (Trujillo-Jamison Decl., Ex. H at No. 1; *id.*, Ex. I at No. 12.) Grecco also stated in response to another interrogatory that the alleged infringements "were discovered by Michael Grecco . . . through [his] activity on the Twitter/X platform." (*Id.* at No. 13.) In the same responses, however, Grecco grew cagey, vaguely asserting that both its @DaysofPunk and @michaelgrecco accounts "***no longer exist***." (*Id.* at No. 12 (emphasis added).)

**D.    X Corp. Issues Additional Discovery into Whether Grecco Preserved *Any* Grecco Account Data**

In response to Grecco's discovery responses and X Corp.'s own efforts to identify the Grecco Accounts, X Corp. sought to preserve data for those accounts. X Corp. determined, however, that the Grecco Accounts appeared to have been permanently deleted several months earlier.

To be sure, users like Grecco who choose to deactivate and delete their X accounts can take simple steps to preserve their data. For example, when an X user decides to deactivate and delete an account, the user is given opportunities to "Download an archive of your data" both before and after clicking "Deactivate your account." (Declaration of Josh Harris ("Harris Decl.," filed concurrently) ¶¶ 14–16, 20–22.) The option to "**Download an archive of your data**" is shown prominently to all users, ***including immediately above the button a desktop user must press to deactivate their account***:

DEFENDANT X CORP.'S MOTION FOR EVIDENTIARY SANCTIONS

1  (*Id.* ¶ 15.)  Users who opt to preserve their data through this "**Download an archive of your**

2  **data**" option are sent a file containing, among other data, "**media (images, videos, and GIFs**

3  **you've attached to posts** . . ."  (*Id.* ¶ 16.)

4      Seeking to discover, among other things, whether Grecco archived and preserved any of

5  the Grecco Account Data from the Grecco Accounts, X Corp. issued a second set of 113 RFAs.

6  (Trujillo-Jamison Decl., Ex. J.)

7      **E.**    **Grecco Effectively Admits It Did Not Preserve the Grecco Account Data**

8      Grecco's responses to those RFAs confirmed it had not. In response to requests seeking

9  admissions that Grecco posted the Photos on X from the Grecco Accounts, Grecco responded

10 113 times that "***Plaintiff lacks sufficient information to admit or deny this request***" and that

11 "***neither Plaintiff nor Michael Grecco currently have access to the @michaelgrecco account***

12 ***and as such lacks the ability to perform the search required by this Request***." (Trujillo-Jamison

13 Decl., Ex. K at Nos. 32–143 (emphasis added).) These responses confirm that Grecco did not

14 preserve any ESI from the Grecco Accounts, despite knowledge that it could have easily done so

15 *any time* before deleting the accounts. (*See* Harris Decl. ¶¶ 4–6, 20–22.)

16

17     **F.**    **X Corp.'s Investigation Confirms that Grecco Intentionally Deleted All**
              **Grecco Account Data in December 2024—*Five Months After* Filing This**

18               **Action**

19     After Grecco confirmed it had not preserved the Grecco Account Data, X Corp. further

20 investigated whether it could recover any of that data. (*See generally* Declaration of Michael

21 Anderson ("Anderson Decl.," filed concurrently) ¶¶ 2–11.) This investigation revealed, for the

22 first time, that on December 2, 2024, Grecco voluntarily completed a multi-step process to

23 deactivate both Grecco Accounts. (*See id.*) The investigation further revealed that both Grecco

24 Accounts and their associated data were permanently deleted on January 1, 2025 because of

25 Grecco's intentional actions. (*See id.*) Grecco completed these steps ***more than eight months***

26 before it first identified those accounts to X.

27     In deactivating the Grecco Accounts, Grecco undertook an unintentional, five or six-step

28 manual process that, among other things, included ***repeated, unmistakable warnings*** that such

deactivation would result in permanent deletion of the Grecco Accounts and all Grecco Account

Data. (*See generally* Harris Decl.) During that process, Grecco was repeatedly warned that

"**[t]his will deactivate your account**" which can be restored only "**up to 30 days after**

**deactivation**." (*See id.* ¶¶ 12–13, 18–19 (emphasis added).) X's Terms of Service and

incorporated Privacy Policy also notified Grecco that by "**follow[ing] the [deactivation]**

**instructions**," its "**accounts will be deactivated and [the accounts'] data will be queued for**

**Deletion[.]**" (*See id.* ¶ 8 (citing https://x.com/en/privacy) (emphasis added).) Similarly, the "How

to deactivate your account" Help Center—which is linked to both X Terms of Service and

Privacy Policy—informed users like Grecco that "**[a]fter your 30-day deactivation window,**

**your X account is permanently deleted**" and "**[o]nce your account is deleted, your account is**

**no longer available in our systems**." (*Id.* ¶ 9 (emphasis added).)

If Grecco logged back in to either of the Grecco Accounts within the thirty-day

deactivation period, a graphic appeared, warning that after that period elapsed, "it will no longer

be possible for you to restore your X account." (*Id.* ¶¶ 24–25.)

Finally, Grecco was given multiple opportunities to "download an archive of [its] account

data"—including all "media (images, videos, and GIFs)"—*any time* in that thirty-day window.

(*Id.* ¶¶ 14–16, 20–22.) Grecco chose not to do so. (*See* Trujillo-Jamison Decl., Ex. K at Nos. 32-

143.)

### G.    Grecco Admits It "[D]eactivated the [A]ccount[s]"

On November 17, 2025, X Corp. sent a meet-and-confer letter about the instant motion.

(Trujillo-Jamison Decl., Ex. L.) In a response letter sent one week later, Grecco admitted that

"Mr. Grecco deactivated the [@michaelgrecco] account" after he initiated this Action. (*See id.*,

Ex. M.) Grecco's counsel later confirmed that Grecco also deactivated the @DaysOfPunk

account when Grecco deactivated the @michaelgrecco account. (Trujillo-Jamison Decl. ¶ 16.)

## III.  ARGUMENT

### A.    Plaintiff's Spoliation of the Grecco Account Data Warrants Sanctions

"Spoliation is the destruction or material alteration of evidence, or the failure to otherwise

preserve evidence, for another's use in litigation . . . ." *Bobrick Washroom Equip., Inc. v. Am.*

*Specialties, Inc.*, 2012 WL 3217858, at *2 (C.D. Cal. Aug. 8, 2012), *aff'd,* 565 F. App'x 660 (9th Cir. 2014). The law imposes "a duty to preserve evidence which [the litigant] knows or reasonably should know is relevant to" a case. *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). "Relevant information for purposes of discovery is information reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citation modified). "In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012).

   To demonstrate spoliation, a party must show by a "preponderance of the evidence" that: "(1) the information should have been preserved in the anticipation or conduct of litigation, (2) a party failed to take reasonable steps to preserve the information, (3) the information was lost as a result, and (4) the information could not be restored or replaced by additional discovery." *Lee v. Cnty. of Los Angeles*, 2025 WL 2505484, at *6 (C.D. Cal. Aug. 29, 2025). "If those criteria are met, and the reviewing court finds there is 'prejudice to another party from [the] loss of the [ESI],' the Court may 'order measures no greater than necessary to cure the prejudice.'" *Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *2 (C.D. Cal. Feb. 27, 2020), *report and recommendation adopted,* 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020). "If . . . the party that was supposed to have preserved the ESI 'acted with the intent to deprive another party of the information's use in the litigation,' Rule 37(e)(2) authorizes the following sanctions: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." *Id.* (citing Fed. R. Civ. P. 37(e)(2)).

   On December 2, 2024, more than ***five months after*** filing this Action, and more than ***eight months before*** Grecco first identified the Grecco Accounts to X Corp., Plaintiff intentionally deleted *all* Grecco Account Data spanning ***sixteen years***, including potentially case-dispositive evidence. Grecco's intentional deletion of evidence satisfies all four elements to demonstrate spoliation and caused severe prejudice to X Corp. Thus, sanctions are warranted.

DEFENDANT X CORP.'S MOTION FOR EVIDENTIARY SANCTIONS

1      *1. Plaintiff's Deletion of Evidence Constitutes Spoliation*

2    Grecco's permanent deletion of the Grecco Accounts more than five months after filing

3 this Action, and its affirmative decision not to easily "download an archive of [its] data" before

4 doing so, easily constitutes spoliation.

5       a. Grecco Should Have Preserved the Grecco Account Data

6    "The first factor a court will consider, the obligation to preserve evidence, arises when

7 the party has notice that the evidence is relevant to litigation or when a party should have known

8 that the evidence may be relevant to future litigation." *Reinsdorf v. Skechers U.S.A., Inc.*, 296

9 F.R.D. 604, 626–27 (C.D. Cal. 2013). "When evidence is destroyed in bad faith (*i.e.*,

10 intentionally or willfully), that fact alone is sufficient to demonstrate relevance." *Id.* at 627.

11    As discussed *supra*, Greco's multi-step deletion of the Grecco Accounts on December 2,

12 2024, *i.e.*, five months after filing this Action (*see* Anderson Decl. ¶¶ 5–9; Harris Decl. ¶¶ 12,

13 18), was intentional, which on its own satisfies relevance.

14    Even if Grecco's intentional deletion of the Grecco Account Data did not demonstrate

15 relevance, Grecco still should have preserved the deleted Grecco Account Data because the data

16 is plainly relevant to Grecco's claims—including whether Grecco, consistent with its past

17 practice,[7] posted the Photos on X and thus granted X Corp. a license to make those Photos

18 available to the very third-party users who committed the alleged infringement. (SAC ¶ 24

19 (alleging third-party "users . . . uploaded the Photos . . . on Twitter.").)

20    In creating, accessing, and using its X accounts since at least March 2009,[8] Grecco

21 agreed to X's Terms of Service, which at all relevant times provided that:

22    You retain ownership and rights to any of your Content you post or share, and **you
23    provide us with a broad, royalty-free license to make your Content available
     to the rest of the world and to let others do the same.**

24 X Corp.'s Terms of Service, *available at* https://x.com/en/tos (effective November 15, 2024)

25 (emphasis added) (defining "Content" to include "Photos" posted or shared on X).

26

27 
  [7] *See infra* nn. 11–12.

28 [8] *See* Chibane Decl., Ex. A (("[j]oined March 2009).

DEFENDANT X CORP.'S MOTION FOR EVIDENTIARY SANCTIONS

Thus, if Plaintiff posted *any* of the 111 Photos at issue in this case, it granted X Corp. "a broad, royalty-free license to make [those Photos] available to the rest of the world and to let others do the same." *Id.* The existence of such posts—which the Grecco Account Data would have revealed—would dispose of Grecco's copyright infringement claim as a matter of law because an infringement claim "fails if the challenged use of the work falls within the scope of a valid license." *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019).

Courts have dismissed analogous copyright infringement claims against social media platforms where, as here, the plaintiff posted the works at issue on those platforms. *See Schneider*, 649 F. Supp. 3d at 885 (dismissing copyright claim based on works that plaintiff uploaded to YouTube because "[u]nder the plain language of the TOS, YouTube cannot be liable for direct infringement of these works"); *Sethunya*, 2025 WL 1144776, at *3 (10th Cir. Apr. 18, 2025) (in affirming dismissal of copyright claims based on works plaintiff on TikTok and Facebook, holding that "[t]he district court correctly ruled that [plaintiff's] copyright claims against both defendants failed because she had granted them non-exclusive licenses that encompass the allegedly infringing uses"); *Bus. Casual*, 2022 WL 837596, at *5 ("under the plain language of the license, YouTube cannot be liable for directly infringing any copyrights associated with any content that [plaintiff] has uploaded").

The same outcome would be warranted here if Grecco had not spoliated evidence. This is not merely hypothetical. While Grecco now claims its "policy" was "not to post photos to Twitter/X,"[9] publicly available evidence shows this is false. In recent years, Grecco has not only posted its own copyrighted material on X,[10] but it has also done so *at least thirty-nine times* on Facebook, which it also sued for copyright infringement *based on those very same*

---

[9] *See* Trujillo-Jamison Decl., Ex. M.

[10] *See supra* n. 10 (citing Chibane Decl., Ex. A (screenshot showing @michaelgrecco account having posted multiple copyrighted photos purportedly owned by Plaintiff)).

DEFENDANT X CORP.'S MOTION FOR EVIDENTIARY SANCTIONS

1    *photographs*.[11] For any Photos Grecco posted on X, its copyright infringement claims would fail

2    as a matter of law. *See, e.g.*, *Great Minds*, 945 F.3d at 1110. Thus, the deleted Grecco Account

3    Data is highly relevant, and Plaintiff was on notice of its relevance by virtue of its agreement to

4    X Corp.'s Terms of Service and its prior conduct on X and Facebook.[12]

5         In sum, the spoliated Grecco Data from the Grecco Accounts is highly relevant to its

6    copyright claims and should have been preserved. *See Fast v. GoDaddy.com LLC*, 340 F.R.D.

7    326, 343 (D. Ariz. 2022) ("the Court finds by a preponderance of the evidence that the

8    [Facebook] message contained evidence relevant to this case"); *Holloway v. Cnty. of Orange*,

9    2021 WL 454239, at *2 (C.D. Cal. Jan. 20, 2021) ("Plaintiff had an obligation to preserve his

10   Facebook account, he deleted the account with a culpable state of mind, and the account was

11   relevant to Defendants' claims").

12        b.    Plaintiff Failed to Take Reasonable Steps to Preserve the Grecco

13              Account Data

14        "Once aware of their duty to preserve ESI in anticipation of litigation, parties must take

15   reasonable steps to preserve ESI." *Colonies Partners L.P.*, 2020 WL 1496444, at *8. Where a

16   party either deletes relevant ESI, or "allow[s] ESI to be deleted," the failure to take "reasonable

17   steps to preserve ESI" element is satisfied. *Id.* at *8.

18        Grecco did not just fail to take the most basic steps to preserve the Grecco Account Data.

19   It actively and deliberately deleted the Grecco Accounts it controlled, and knowingly failed to

20   download and preserve such data before doing so. Any argument Grecco may assert that it did

21   not know that deactivating the Grecco Accounts would result in deletion of the Grecco Account

22

23   _____

24   [11] *See* Trujillo-Jamison Decl., Ex. G (39 examples showing "Michael Grecco Photography"
     account on Facebook posting copyrighted photos purportedly owned by Plaintiff). This fact
25   alone confirms the highly relevant nature of Plaintiff's deleted Grecco Account Data.

26   [12] The relevance of the deleted Grecco Account Data is independently established by Grecco's
     admission that it used the Grecco Accounts to investigate and prosecute the infringement alleged
27   in this Action. *See* Trujillo-Jamison Decl., Ex. I at No. 13 ("***the incidents of confusion were
     discovered by Michael Grecco . . . through [his] activity on the Twitter/X platform***") (emphasis
28   added).

1  Data is baseless because, as noted above, X Corp. expressly notifies users in multiple ways that

2  deactivating an account will result in deletion of their data thirty days after deactivation (*see*

3  § II.F, *supra*), and "even if a plaintiff or their counsel does not have the technical knowledge to

4  understand metadata, every lawyer has a clear obligation to help their client to preserve all

5  relevant evidence . . . and clearly inform their client that they cannot alter or delete any potential

6  evidence." *See Bruner v. City of Phx.*, 2020 WL 554387, at *5 (D. Ariz. Feb. 4, 2020). Indeed,

7  Grecco could have easily archived and preserved the Grecco Account Data; that process was

8  repeatedly explained to Grecco as it deleted the accounts. (*See* Harris Decl. ¶¶ 14–16, 20–22.)

9  Grecco simply chose not to, and thus failed to take reasonable steps to preserve the Grecco

10  Account Data. *See GoDaddy.com*, 340 F.R.D. at 346 ("While Plaintiff claims not to have known

11  that she would lose access to her @cox.net emails, ***she should have known that the Cox-hosted***

12  ***email account would be deactivated when she terminated her Cox services***.") (emphasis added).

13
                            c.       The Grecco Account Data Was Lost as a Result of Grecco's
14                                   Failure to Preserve

15           Plaintiff's failure to preserve the Grecco Account Data—and indeed its affirmative

16  decision to delete without archiving—caused it to be lost. (*See* § II.F, *supra*.) Grecco cannot

17  blame on X Corp. for its own failure to preserve the data: Grecco first disclosed the Grecco

18  Accounts to X Corp. months *after* Grecco deleted the accounts, and by then X Corp. could no

19  longer take reasonable steps to preserve it.

20           X Corp. first confirmed that both Grecco Accounts belonged to Plaintiff on August 29,

21  2025—***eight months after Grecco voluntarily deleted those accounts***. (*See* § II.C, *supra*.)

22  Before that date, Grecco *never* referenced, much less identified the Grecco Accounts: not in its

23  three complaints, its initial disclosures, or its own discovery requests. *Id.* In fact, Grecco

24  represented in its initial disclosures that "***[d]ocuments and communications pertaining to the***

25  ***photographs-at-issue***" were "***in the custody of Plaintiff and its counsel***" (Trujillo-Jamison

26  Decl., Ex. B at 4–5 (emphasis added)), which misrepresented to X Corp. that Grecco was

27  preserving those documents. In any event, by the time X Corp. confirmed that the Grecco

28

1   Accounts belonged to Plaintiff, it could not identify, preserve, or recover the Grecco Account

2   Data—because Grecco had deleted those accounts months before. (*See* Anderson Decl. ¶ 11.)[13]

3        To be clear, X Corp. could not have feasibly identified and preserved the Grecco Account

4   Data before Grecco confirmed the Grecco Accounts. An independent search for the identity of an

5   X account belonging to "Michael Grecco" would have been no small task: there are

6   approximately 600 million active accounts on X and, according to Grecco, there are "many bot

7   accounts with variations of [Michael Grecco's] name on X Corp.'s platform [that] are not

8   controlled by Plaintiff or Mr. Grecco." (Trujillo-Jamison Decl., Ex. I at No. 12.)

9        Moreover, Grecco decided not only to permanently deactivate and delete the Grecco

10  Accounts, but it also failed to easily "download an archive of [its] data" before doing so. (*See*

11  § II.D, *supra*.) This voluntary decision is an independent basis for finding that the Grecco

12  Account Data was intentionally deleted because of Grecco's conduct, regardless of X Corp.'s

13  efforts to preserve data potentially relevant to this case.[14]

14       Accordingly, the Grecco Account Data was lost solely because of Plaintiff's voluntary

15  decision to delete both Grecco Accounts and all associated Grecco Account Data.

16            d.    The Grecco Account Data Cannot be Replaced Through Additional

17                   Discovery

18       No additional discovery can recover the Grecco Account Data, as evidenced by Grecco's

19  discovery responses. When asked on more than 111 occasions to admit that it posted the Photos

20  at issue on X, Grecco responded that "***Plaintiff lacks sufficient information to admit or deny***

21  ***this request***," that such information is "***not in the possession, custody, or control of Plaintiff***"

22  and "***no longer exist[s]***," and that Grecco does not "***have access to the @michaelgrecco account***

23

24  _____

25  [13] *See also* X Help Center, available at https://help.x.com/en/managing-your-account/accessing-your-x-data ("Once permanently deactivated, all information associated with your account is no longer available in our Production Tools.").

26

27  [14] To be sure, at all times relevant to this Action, X Corp. was and is legally obligated under various regulatory regimes to delete all user data from its servers in response to a voluntary request by a user—like Grecco's request here—to deactivate and delete their account. (*See* Harris Decl. ¶ 10.)

28

1  *and as such lacks the ability to perform the search*." (*See* Trujillo-Jamison Decl., Ex. K at Nos.

2  32-143 (emphases added).) Considering Grecco's spoliation of the Grecco Account Data, no

3  further discovery can establish whether Grecco posted the Photos at issue on X—which would be

4  dispositive of its claims.

5              2.       *Plaintiff's Spoliation Has Severely Prejudiced X Corp. and Sanctions are*

6                       *Warranted Under this Court's Inherent Power*

7          When spoliation of evidence causes prejudice to the non-spoliating party, sanctions are

8  warranted. *Colonies Partners L.P.*, 2020 WL 1496444, at *4.

9          Grecco's spoliation of the Grecco Account Data has caused severe, irreversible prejudice

10 to X Corp. Courts in the Ninth Circuit find prejudice where, as here, "another party's failure to

11 produce documents forced the non-spoliating party to rely on incomplete and spotty evidence."

12 *OnlineNIC Inc.*, 2022 WL 2289067, at *10 (citation modified); *GoDaddy.com*, 340 F.R.D. at 346

13 ("The Court finds that loss of the @cox.net email account prejudiced Defendants" because "[t]he

14 lost ESI likely included communications regarding core events at issue in the case.").

15         Although in typical cases "there is no way to know what the spoliated evidence would

16 have revealed," this is the rare case where there is ample evidence to infer what the Grecco

17 Account Data would have revealed. *See OnlineNIC Inc.*, 2022 WL 2289067, at *10. As

18 discussed, Grecco has a demonstrated history of posting its copyrighted photos to social media,

19 including on Twitter/X and *at least thirty-nine times* on Facebook.[15] Grecco's deletion of the

20 Grecco Account Data has deprived X Corp. of the opportunity to investigate, develop, and assert

21 a case-dispositive defense: that Grecco posted the Photos at issue on Twitter/X and thus granted

22 a royalty-free license to allow X Corp. and its users to do the same. *See Great Minds*, 945 F.3d at

23 1110; *Schneider*, 649 F. Supp. 3d at 885.

24         Having been deprived of the opportunity to prove this defense, X Corp. has been severely

25 and irreversibly prejudiced. As a result, sanctions are necessary and appropriate under this

26 Court's inherent powers. *See, e.g.*, *OnlineNIC Inc.*, 2022 WL 2289067, at *10 (finding prejudice

27

28 [15] *See supra* nn. 11–12.

to the non-spoliating party based on the fact that "[m]assive amounts of ESI, including the
critical attachment files"—which "likely would have featured prominently in [the non-spoliating
party's] prosecution of their case"—were "deleted . . . after this litigation had commenced");
*GoDaddy.com*, 340 F.R.D. at 343 ("[d]efendants were prejudiced by Plaintiff's destruction of"
Facebook messages containing "evidence relevant to this case"); *Gatto v. United Air Lines, Inc.*,
2013 WL 1285285, at *4 (D.N.J. Mar. 25, 2013) ("Plaintiff intentionally deactivated the
[Facebook] account. In doing so, and then failing to reactivate the account within the necessary
time period, Plaintiff effectively caused the account to be permanently deleted" and thus "a
spoliation inference is appropriate.")

Accordingly, this Court should exercise its inherent power by issuing terminating
sanctions or instruct the jury that it may presume that the deleted Grecco Account Data was
unfavorable to Grecco and would have shown that Grecco voluntarily posted the Photos at issue
to the X platform.

              *3.*    *Rule 37(e) Sanctions Also Are Appropriate Because Grecco Acted with Intent*

While all four elements of spoliation are satisfied and sanctions are warranted under this
Court's inherent powers (as explained above), Rule 37(e) independently supports sanctions based
on Grecco's intentional deletion of the Grecco Account Data. "[T]he finding of intent required
by [Rule 37(e)(2)] can support not only an inference that the lost information was unfavorable to
the party that intentionally destroyed it, but also an inference that the opposing party was
prejudiced by the loss of information that would have favored its position." *Jones v. Riot Hosp.
Grp. LLC*, 95 F.4th 730, 736 (9th Cir. 2024). "Under Rule 37(e)(2), the court may issue the
following sanctions: (1) a presumption that the lost information was unfavorable to the party;
(2) a jury instruction that it may or must presume the information was unfavorable to the party;
or (3) a dismissal or default judgment." *Dish Network L.L.C. v. Jadoo TV, Inc.*, 2022 WL
11270394, at *2 (N.D. Cal. Oct. 19, 2022) (citation modified). Where "the Court finds that the
party acted with the intent to deprive another party of the information's use in the litigation, a

1  court may issue terminating sanctions." *OnlineNIC Inc.*, 2022 WL 2289067, at *6 (citation

2  modified).

3  "[C]ourts have found that 'intent' in this context means 'the evidence shows, or it is

4  reasonable to infer, that a party purposefully destroyed evidence to avoid its litigation

5  obligations.'" *Id.* (collecting cases). Courts consider "relevant factors" including "the timing of

6  the destruction, the method of deletion (*e.g.*, automatic deletion vs. affirmative steps of erasure),

7  [and] selective preservation." *Laub v. Horbaczewski*, 2020 WL 9066078, at *6 (C.D. Cal. July

8  22, 2020).

9

10       a.    By Deleting Relevant Evidence *Five Months* After Bringing This Action and Failing to Preserve Such Evidence, Grecco Acted with Intent

11

12       Grecco's deletion of both Grecco Accounts five months after litigation commenced is

13  textbook intent. As to timing, Grecco knowingly deleted highly relevant evidence ***five months***

14  ***after he sued***, and while it was under a legal duty to preserve that evidence. Grecco sued X Corp.

15  about posts on X allegedly containing the Photos at issue, represented that it possessed

16  "documents and communications pertaining to the photographs-at-issue,"[16] and then deleted the

17  only evidence that would show Grecco posted those photographs (and thus provided X and its

18  users a "broad, royalty-free" license to do the same). As to the method of deletion, Grecco

19  followed a five or six-step, manual process that repeatedly warned that its actions would cause

20  permanent deletion of the Grecco Account Data. (*See* Harris Decl. ¶¶ 12–13, 18–19.) Finally, as

21  to preservation, Grecco preserved *none* of the Grecco Account Data but *easily* could have at any

22  time before its deletion, as was disclosed to him multiple times before the data was permanently

23  deleted. (*See* Harris Decl. ¶¶ 14–16, 20–22.)

24       Accordingly, Grecco's spoliation was intentional. *See, e.g.*, *Leon v. IDX Sys. Corp.*, 464

25  F.3d 951, 959 (9th Cir. 2006) (affirming finding of "willful spoliation because [plaintiff] knew

26  he was under a duty to preserve all data on the laptop, but intentionally deleted many files"

27

28  [16] *See supra* at 14.

1  including email accounts); *Holloway*, 2021 WL 454239, at *2 (granting adverse inference where

2  "[p]laintiff had an obligation to preserve his Facebook account, he deleted the account with a

3  culpable state of mind, and the account was relevant to Defendants' claims"); *Hice v. Lemon*,

4  2021 WL 6053812, at *5–6 (E.D.N.Y. Nov. 17, 2021) (intent "sufficiently established" where

5  plaintiff "admitted to deleting his Twitter account" shortly after filing his complaint);

6  *GoDaddy.com*, 340 F.R.D. at 343 ("Plaintiff unsent the [relevant Facebook] message with the

7  intent to deprive Defendants of its use as required for Rule 37(e)(2) sanctions."); *see also*

8  *Collins-Williams v. Contour Eastwyck LLC*, 2022 WL 17828934, at *1 (N.D. Ga. Dec. 15, 2022)

9  ("Because the defendant proactively [deactivated and] divested itself of access to the Gmail

10  accounts . . . it was clearly under an obligation to preserve, the court finds the defendant acted

11  with the intent to deprive"); *Nuvasive, Inc. v. Absolute Med.*, *LLC*, 2021 WL 3008153, at *7

12  (M.D. Fla. May 4, 2021) ("Defendants and their counsel not only failed to take reasonable steps

13  to preserve that evidence, as required by Rule 37(e)—but *intentionally destroyed* vast amounts of

14  evidence" when they "deactivated . . . email accounts").

15      Grecco's prolific experience litigating in federal court also warrants a finding of intent

16  here. As discussed supra, Grecco has filed ***243 federal copyright cases*** in the past decade, and it

17  works with "a team of eight law firms throughout the country" to gin up copyright infringement

18  claims.[17] Grecco recently demonstrated its knowledge of the preservation obligations at play here

19  when it asserted its own spoliation motion for sanctions in this Court in a different case. *See*

20  *Michael Grecco Productions, Inc. v. Fandom, Inc.*, No. 2:24-cv-05963, Dkt. 53-1 (C.D. Cal.

21  Apr. 17, 2025). There, Grecco challenged as intentional spoliation Fandom's *passive* deletion of

22  documents through an "auto-delete" email configuration. *Id.* at 9–10 (seeking sanctions under

23  Rule 37(e) based on "Fandom knowingly . . . delet[ing] all emails from unregistered senders").

24  Here, Grecco's *affirmative*, *manual* deletion of the Grecco Account Data is significantly more

25  deserving of such sanctions, and Grecco thus cannot feign ignorance of standard document

26  preservation obligations like those it flouted here. *See OnlineNIC Inc.*, 2022 WL 2289067, at *7

27

28  [17] *See supra* n. 1; *id.* at 4 & n 4.

(finding intentional spoliation and noting that the spoliating parties "are technologically

sophisticated parties that, by now, should be well-acquainted with their preservation obligations

under Rule 37(e)").

　　　　　　　　　　b.　　　Grecco's Intentional Spoliation Warrants a Mandatory Jury
　　　　　　　　　　　　　　Instruction or, Alternatively, Terminating Sanctions

Considering Grecco's intentional spoliation of evidence, further sanctions are warranted

under Rule 37(e)—including (1) a mandatory jury instruction stating that Grecco intentionally

deleted the Grecco Account Data, the Grecco Account Data would have been harmful to

Grecco's case, and the Grecco Account Data would have shown Grecco posted the Photos at

issue on X; and (2) terminating sanctions dismissing this Action on the basis that X Corp. has

been unfairly and irrevocably deprived of case-dispositive evidence contained in the Grecco

Account Data.

At a minimum, Grecco's intentional deletion of highly relevant, potentially case-

dispositive evidence warrants a mandatory jury instruction that Grecco acted intentionally in

deleting relevant data, and that such data would have not only been harmful to Grecco's case but

would have shown that Grecco posted the Photos at issue on X. Courts routinely issue mandatory

jury instructions where a party intentionally deactivates and/or deletes entire online accounts

containing relevant evidence it was under a duty to preserve. *See, e.g.*, *Holloway*, 2021 WL

454239, at *2.

Considering Grecco's misconduct, the harsh remedy of terminating sanctions also is

appropriate. Having been irreparably deprived of a case-dispositive licensing defense because of

Grecco's intentional conduct, the only way to fully remedy the prejudice to X Corp. is through

terminating sanctions. In *Facebook, Inc. v. OnlineNIC Inc.*, 2022 WL 2289067, the Court

"deem[ed] it appropriate to issue terminating sanctions under Rule 37(e)" where the defendant

deleted a large number of files after the litigation began, including 75.7% of highly relevant

document "attachments" that amounted to the "most critical type of evidence" in the case. *Id.* at

*8. In considering but declining to issue lesser sanctions, the Court reasoned that "no jury

instruction, monetary sanction, or exclusion of evidence will right the wrong occasioned by

1  [defendants'] extensive spoliation." *Id.* ("the Court deems it appropriate to issue terminating

2  sanctions under Rule 37(e).").

3       The same is true here. A mandatory jury instruction stating that Grecco posted the Photos

4  at issue to X would only partially remedy the prejudice to X Corp., because it is impossible to

5  know with certainty what *else* the Grecco Account Data would have revealed. Under these

6  circumstances, "[w]hen faced with incidents of mass spoliation, the Ninth Circuit and this Court

7  have found that 'any jury instruction or exclusion of evidence would be inappropriate.'" *Id.* at

8  *11. Accordingly, terminating sanctions are necessary and appropriate. *See, e.g.*, *WeRide Corp.*

9  *v. Kun Huang*, WL 1967209, at *15 (N.D. Cal. Apr. 24, 2020) (ordering terminating sanction as

10  a result of defendant's spoliation of ESI while considering but rejecting lesser sanctions because,

11  without the deleted ESI and source code, the non-spoliating party "would be unable counter [the

12  spoliating party] if he rebutted those [jury] instructions"); *Leon*, 464 F.3d at 960 (affirming

13  terminating sanction to remedy spoliation of 2,200 files because a ruling excluding evidence

14  would be "futile," and a jury instruction would still leave Defendants unable to rebut Plaintiffs'

15  evidence); *N.T.A.A. No Talk All Action, Inc. v. Nordstrom, Inc.*, 2023 WL 9419145, at *6 (C.D.

16  Cal. Nov. 3, 2023) ("the Court imposes terminating sanctions pursuant to Rule 37 and its

17  inherent authority" based on "spoliation of [plaintiff's] Facebook messages, messaging app

18  history, and photos and videos, as well as the attempted spoliation of thousands of other

19  potentially relevant files and emails").

20       Accordingly, this Court should enter a mandatory jury instruction, or, alternatively,

21  terminating sanctions pursuant to Rule 37(e).

22       **B.    Defendant Is Entitled to Attorney's Fees and Costs for Bringing This Motion**

23       X Corp. is entitled to reasonable attorney's fees and costs incurred in investigating

24  Grecco's spoliation and bringing the instant motion.

25       Because of Grecco's intentional misconduct, X Corp. has incurred significant cost and

26  expense investigating Grecco's spoliation, conducting the court-ordered meet and confer process

27  in connection with the instant motion, and preparing the instant motion. Accordingly, this Court

28  should order Grecco to pay X Corp.'s reasonable attorneys' fees and costs. *See, e.g.*, *Bruner*,

1  2020 WL 554387, at *9 (awarding $100,000 in sanctions where plaintiff "delet[ed]at least one

2  Facebook post and deactivating their Facebook accounts); *Hice v. Lemon*, 2022 WL 1407593, at

3  *3 (E.D.N.Y. Mar. 23, 2022) (awarding attorneys' fees and costs where plaintiff "deleted his

4  entire Twitter account . . . less than a week after this action was commenced"); *Saensinbandit v.*

5  *Alaska Airlines, Inc.*, 2019 WL 6841972, at *3 (D. Alaska Dec. 15, 2019) (awarding attorneys'

6  fees and expenses based on "Plaintiff's deactivation of her Facebook account after discovery").

7  **IV.  <u>CONCLUSION</u>**

8          For all these reasons, X Corp. respectfully requests an order issuing terminating sanctions

9  or an adverse inference that Grecco deleted the Grecco Account Data intentionally, and the

10 Grecco Account Data would have shown that Grecco posted the very Photos on which its claims

11 are based, and thus granted X Corp. and its users a "broad, royalty-free license to make [the

12 Photos] available to the rest of the world and to let others do the same"; and awarding X Corp. its

13 reasonable attorneys' fees and costs.

14                                  Respectfully submitted,

15 Dated:  December 4, 2025          WILLENKEN LLP

16

17                                  By: */s/ Kenneth M. Trujillo-Jamison*
                                       Kenneth M. Trujillo-Jamison
18                                     Attorneys for Defendant X Corp.

19

20

21

22

23

24

25

26

27

28

DEFENDANT X CORP.'S MOTION FOR EVIDENTIARY SANCTIONS

1

**<u>CERTIFICATE OF COMPLIANCE</u>**

2          The undersigned, counsel of record for Defendant X Corp. in its corporate capacity and

3    also as successor in interest to named defendant Twitter, Inc., certifies that this brief contains

4    6,999 words, which complies with the word limit of L.R. 11-6.1.

5    Dated:  December 4, 2025                    WILLENKEN LLP

6

7                                         By: */s/ Kenneth M. Trujillo-Jamison*
                                              Kenneth M. Trujillo-Jamison
8                                              Attorneys for Defendant X Corp.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT X CORP.'S MOTION FOR EVIDENTIARY SANCTIONS