1  Kenneth M. Trujillo-Jamison (Bar No. 280212)
   ktrujillo-jamison@willenken.com
2  WILLENKEN LLP
   707 Wilshire Blvd., Suite 4100
3  Los Angeles, California 90017
   Telephone: (213) 955-9240
4  Facsimile: (213) 955-9250
5
6  Zack Chibane (admitted *pro hac vice*)
   zchibane@x.com
7  Christopher Guerriero (admitted *pro hac vice*)
   cguerriero@x.com
8  X CORP.
   249 W. 17th Street
9  New York, NY 10011
   Telephone: (201) 228-0699
10
11 *Attorneys for Defendant X Corp., in its corporate*
   *capacity and as successor in interest to named defendant*
12 *Twitter, Inc.*

13                 UNITED STATES DISTRICT COURT

14                 CENTRAL DISTRICT OF CALIFORNIA

15

16 MICHAEL GRECCO PRODUCTIONS, INC.,          Case No.: 2:24-cv-04878-MEMF-JC
   a California corporation,
17                                            **DEFENDANT X CORP.'S REPLY IN**
18                 Plaintiff,                  **FURTHER SUPPORT OF ITS MOTION**
                                              **FOR EVIDENTIARY SANCTIONS**
19 v.
                                              Date:     January 15, 2026
20 TWITTER, INC., a Delaware corporation; X   Time:     10:00 a.m.
   CORP., a Nevada corporation; and DOES 1-10, Place:    Courtroom 8B
21 inclusive,
                                              Hon. Maame Ewusi-Mensah Frimpong
22                 Defendants.

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  The Opposition Admits that Grecco Intentionally Deleted Relevant Evidence ..................1

    A.  The Opposition Confirms Grecco Should Have Preserved the Grecco Accounts .................................................................................................................3

    B.  The Opposition Likewise Confirms Grecco Failed to Take Reasonable Steps to Preserve the Grecco Account Data ...........................................................6

    C.  The Opposition Also Confirms the Grecco Account Data Was Lost as a Result of Grecco's Failure to Preserve ...................................................................8

    D.  Grecco Does Not Contest that the Grecco Account Data Cannot be Replaced ...........................................................................................................12

II. The Opposition Confirms That Grecco's Spoliation Has Severely Prejudiced X Corp .................................................................................................................................12

III. Because Grecco Acted with Intent, Rule 37(e) Sanctions Are Also Appropriate .............14

IV. CONCLUSION .....................................................................................................................18

CERTIFICATE OF COMPLIANCE .............................................................................................19

1

# TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Am. Career Coll. Inc. v. Medina,*
   673 F. Supp. 3d 1139 (C.D. Cal. 2023) ............................................................. 1

5

*Apple Inc. v. Samsung Elecs. Co., Ltd.*
   881 F. Supp. 2d 1132 (N.D. Cal. 2012) ............................................................. 4

6

7

*Arteria Prop. Pty Ltd. v. Universal Funding V.T.O., Inc.,*
   No. 05-4896, 2008 WL 4513696 (D.N.J. Oct. 1, 2008) ..................................... 9

8

*Collins-Williams v. Contour Eastwyck LLC,*
   2022 WL 17828934 (N.D. Ga. Dec. 15, 2022) ................................................. 16

9

10

*Colonies Partners L.P. v. Cnty. of San Bernardino,*
   No. 5:18-cv-00420-JGB (SHK), 2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ............... 4

11

*Conservation Force v. Salazar,*
   677 F. Supp. 2d 1203 (N.D. Cal. 2009) ............................................................. 2

12

13

*Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.,*
   No. 1:17-cv-00519-DCN, 2019 WL 2236080 (D. Idaho May 21, 2019) ........... 2

14

*Edwards v. Junior State of Am. Found.,*
   No. 4:19-CV-140, 2021 WL 1600282 (E.D. Tex. Apr. 23, 2021) ...................... 8

15

16

*Facebook, Inc. v. Onlinenic Inc.,*
   No. 19-cv-07071, 2022 WL 2289067 (N.D. Cal. Mar. 28, 2022) ................... 12

17

*Fast v. GoDaddy.com LLC,*
   340 F.R.D. 326 (D. Ariz. 2022) ...................................................................... 11

18

19

*Gatto v. United Air Lines, Inc.,*
   No. 10-cv-1090, 2013 WL 1285285 (D.N.J. Mar. 25, 2013) .......................... 11

20

*Glaukos Corp. v. Ivantis, Inc.,*
   No. SACV 18-620 TLV (IDEx), 2020 WL 5914552 (C.D. Cal. July 30, 2020) ............. 14

21

22

*Great Minds v. Office Depot, Inc.,*
   945 F.3d 1106, 1110 (9th Cir. 2019) ................................................................. 5

23

*Hice v. Lemon,*
   No. 19-cv-4666, 2021 WL 6053812 (E.D.N.Y. Nov. 17, 2021) ..................... 15

24

25

*Holloway v. Cnty. of Orange,*
   No. 19-cv-01514-DOC (DFMx), 2021 WL 454239 (C.D. Cal. Jan. 20, 2021) ............... 7

26

*Hous. Rts. Ctr. v. Sterling,*
   No. CV 03-859 DSF, 2005 WL 3320739 (C.D. Cal. Mar. 2, 2005) ................ 18

27

*Leon v. IDX Sys. Corp.,*
   464 F.3d 951 (9th Cir. 2006) .......................................................................... 15

28

*Michael Grecco Prods., Inc. v. Fandom, Inc.,*
  No. 2:24-cv-05963, Dkt. 53-1 (C.D. Cal. Apr. 17, 2025) ................................... 17

*Milke v. City of Phx.,*
  497 F. Supp. 3d 442 (D. Ariz. 2020) .............................................................. 9

*Muhammad v. Cnty. of L.A.,*
  No. CV 15-01228-RGK (MANx), 2015 WL 13919171 (C.D. Cal. Oct. 2, 2015) .......... 13

*Nuvasive, Inc. v. Absolute Med.,*
  No. 6:17-cv-2206-Orl-41GJK, 2021 WL 3008153 (M.D. Fla. May 4, 2021) ................ 16

*Painter v. Atwood,*
  No. 12-01215, 2014 WL 1089694 (D. Nev. Mar. 18, 2014) ............................... 4

*Painter v. Atwood,*
  No. 2:12-CV-1215, 2014 WL 3611636, at *2 (D. Nev. July 21, 2014) ...................... 7

*Reinsdorf v. Skechers U.S.A., Inc.,*
  296 F.R.D. 604 (C.D. Cal. 2013) ................................................................. 3

*Schneider v. YouTube, LLC,*
  649 F. Supp. 3d 872 (N.D. Cal. Jan. 5, 2023) ................................................. 16

*Torgersen v. Siemens Bldg. Tech., Inc.,*
  2021 WL 2072151 (N.D. Ill. May 24, 2021) .................................................. 7

*United States v. Int'l Union of Petroleum and Indus. Workers,*
  870 F.2d 1450 (9th Cir. 1989) .................................................................... 9

*Volcan Grp., Inc. v. T-Mobile USA, Inc.,*
  940 F. Supp. 2d 1327 (W.D. Wash. 2012) ..................................................... 13

*Welter v. Hurt,*
  No. 2:23-cv-02627 (MARx), 2025 WL 1843263 (C.D. Cal. Apr. 1, 2025) ................ 3, 10

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    The Opposition Admits that Grecco Intentionally Deleted Relevant Evidence**

Defendant's motion for evidentiary sanctions (the "Motion" or "Mot.") demonstrated that Grecco intentionally spoliated evidence by deleting two of its Grecco Accounts[1] containing sixteen years of critically relevant Grecco Account Data months after bringing this action. (*See* ECF No. 58.) It completed a multi-step process to deactivate the Grecco Accounts, affirmatively electing *not* to easily download and preserve that Grecco Account Data before deleting it. (Mot. at 10–15.) Rather than contest these damning facts, Grecco's response largely admits them (*see* ECF No. 60; the "Opposition" or "Opp."):

- "**[I]nformation relating to the [@michaelgrecco] account could be relevant to the litigation**" (*id.* at 9) (emphasis added);

- "**This litigation had been pending for six months when Michael Grecco deactivated his** [@michaelgrecco] **account**" (*id.* at 4) (emphasis added);

- "**Michael Grecco sent an email to the social media team for [Plaintiff] MGP directing them to cut *all ties* to X,**" telling them that "I wanna close my Twitter account permanently. Any and all of them. I'd like to move everything over to blue sky" (*id.* at 2–3) (emphasis added); *see also* ECF 60-4 ("Grecco Declaration")).

These admissions alone warrant spoliation sanctions, as they establish each element of this Court's four-part test by a "preponderance of the evidence."[2] *See Am. Career Coll. Inc. v. Medina*, 673 F. Supp. 3d 1139, 1145 (C.D. Cal. 2023) (granting terminating sanctions for defendants' "deactivation and replacement of three alias e-mail accounts" during litigation).

But what the Opposition (and Michael Grecco's self-serving declaration) does *not* say speaks volumes: it does *not* say that Grecco never posted the Photos at issue on X from the

---

[1] Capitalized terms used herein have the meaning ascribed to them in the Motion.

[2] *See Lee v. Cnty. of Los Angeles*, 2025 WL 2505484, at *6 (C.D. Cal. Aug. 29, 2025) (a party must show that "(1) the information should have been preserved" "(2) a party failed to take reasonable steps to preserve," "(3) the information was lost as a result," and "(4) the information could not be restored or replaced by additional discovery.").

DEFENDANT X CORP.'S REPLY ISO MOTION FOR EVIDENTIARY SANCTIONS

Grecco Accounts; it does *not* say that Grecco did not intend to permanently delete the Grecco

Account Data; it does *not* even say that the Grecco Accounts are the only two that Grecco

spoliated. (*See* ECF No. 60.) Likewise, the Opposition is silent as to *any* effort Grecco made to

preserve that relevant data and offers no explanation for Grecco's decision to *decline* to easily

preserve the Grecco Account data when given the chance. (*See* Mot. at 6–7 (citing ECF No. 57-5

("Harris Decl.") (detailing the multiple warnings Grecco was given prior to permanently

deactivating its account, including the simple option to "Download an archive of your data"

which included all "media (images, videos, and GIFs you've attached to posts . . . .")).) In fact,

the Opposition does not even mention Grecco's *second* spoliated account, @DaysOfPunk, which

Grecco also intentionally deleted. (*See* Mot. at 6.) Grecco has thus waived any argument that it

did not spoliate evidence. *Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal.

2009) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed

waived.").

        Left with no factual or legal basis to avoid sanctions, the Opposition raises a number of

meritless arguments designed to shift blame, confuse the issues before this Court, and distract

from its now-admitted spoliation. For example, rather than explain what steps (if any) Grecco

took to preserve the Grecco Accounts, Grecco asks this Court to forgive its destruction of

evidence because it happened so long after Grecco filed this Action. (*See* Opp. at 4 ("[W]hy

would Michael Grecco wait until six months after the filing of the lawsuit to deactivate his

account if his intention was to hide crippling evidence?").) That is absurd and should be rejected,

as it was in *American Career College Inc. v. Medina*. 673 F. Supp. 3d at 1150 (C.D. Cal. 2023)

(rejecting spoliating party's argument that "if [they] were going to engage in a broad spectrum

campaign of deleting evidence . . . [they] would have done a better job."). Evidence must be

preserved for the duration of litigation, not only the first six months. *Dickinson Frozen Foods,

Inc. v. FPS Food Process Sols. Corp.*, No. 1:17-cv-00519-DCN, 2019 WL 2236080, at *8 (D.

Idaho May 21, 2019) ("a party must ensure that relevant information is retained on a continuing

basis once the preservation obligation arises."). Elsewhere in the Opposition, Grecco tries to

1   blame X Corp. for its own deletion of evidence, claiming Grecco "believed that *X . . .* would

2   retain all relevant account data." (Opp. at 11 (emphasis added).) But as Grecco knows from its

3   243 federal cases in the last decade, that is not how party-specific preservation obligations work:

4   a party cannot intentionally delete online evidence and elect not to back it up based on the hope

5   that the service provider might retain a copy. *See Welter v. Hurt*, No. 2:23-cv-02627 (MARx),

6   2025 WL 1843263, at *8 (C.D. Cal. Apr. 1, 2025) (granting adverse inference sanction where

7   individual defendant made the "discrete decision [] to stop paying for [his] Google subscription"

8   several months into the litigation, and "elect[ed] to not back-up or otherwise copy the

9   Workspace's contents," thus "allow[ing] the Google Workspace account to be deleted."). In any

10  event, Grecco's "belie[f]" is not credible, as Grecco was notified when it deleted the account that

11  it would result in the permanent deletion of the account's contents.  (*See* Mot. at 7–8; Harris

12  Decl. ¶¶ 7–9, 12–13, 18–19.)

13      In the end, Grecco's attempts to distract from its intentional deletion of evidence, and its

14  affirmative decision not to easily preserve such evidence, only confirm that spoliation sanctions

15  are warranted under this Court's inherent authority and Rule 37. (*See* Mot. at 17–21.)

16      **A.    The Opposition Confirms Grecco Should Have Preserved the Grecco
17          Accounts**

18      The Motion demonstrated that Grecco should have preserved the highly relevant Grecco

19  Account Data by no later than June 10, 2024, when it filed this Action. *See Reinsdorf v. Skechers*

20  *U.S.A.*, Inc., 296 F.R.D. 604, 626 (C.D. Cal. 2013) (duty to preserve "arises when the party has

21  notice" or "should have known that evidence may be relevant."). As the Motion explained, the

22  relevance of the Grecco Accounts is confirmed not only by Grecco's intentional conduct,[3] but

23  also by two undisputed facts: (i) Grecco posted its copyrighted works ***dozens of times*** on

24

25

26

27

---

[3] (*See* Mot. at 10 (citing *Reinsdorf*, 296 F.R.D. at 627 ("When evidence is destroyed in bad faith
(*i.e.*, intentionally or willfully), that fact alone is sufficient to demonstrate relevance.")).)

DEFENDANT X CORP.'S REPLY ISO MOTION FOR EVIDENTIARY SANCTIONS

Twitter/X[4] and Facebook,[5] thus granting those platforms claim-dispositive licenses to those works, and (ii) Grecco admitted that it used the now-deleted Grecco Accounts to investigate and assert the claims in this Action.[6] (*See* Mot. at 10–12); *see Colonies Partners L.P. v. Cnty. of San Bernardino*, No. 5:18-cv-00420-JGB (SHK), 2020 WL 1496444, at *6 (C.D. Cal. Feb. 27, 2020) (rejecting argument "based on conjecture" that spoliated ESI was "not relevant" because non-spoliating party "cite[d] to evidence from these two sources, and obtained from other sources, that show [ESI] are relevant to the issues in this case.")

In response, Grecco admits that "***information relating to the*** [**@michaelgrecco**] ***account could be relevant to the litigation***." (Opp. at 9 (emphasis added)). This admission alone shows that Grecco should have preserved the highly relevant Grecco Account Data, which Grecco admittedly controlled. (*See* Opp. at 2 n.4 (admitting that "[t]he @michaelgrecco handle is controlled personally by Michael Grecco").)[7] The Opposition's contradictory assertions about Grecco's subjective belief are not the law. (*See* Opp. at 14 (claiming Grecco "had no reason to believe that its own posts would be at issue" in this Action).) Rather, the objective "duty to preserve pertains to evidence that is *relevant to the claims or defenses of any party, or which is relevant to the subject matter involved in the action*." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012) (emphasis added); *Painter v. Atwood*, No. 12-01215,

---

[4] (*See* Mot. at 11 n.10 (citing Chibane Decl., Ex. A (screenshot showing @michaelgrecco account having posted multiple copyrighted photos purportedly owned by Grecco)).)

[5] (*See* Mot. at 12 n.11 (citing Trujillo-Jamison Decl., Ex. G (39 examples of Grecco posting copyrighted photos purportedly owned by Grecco to its Facebook account)).)

[6] (*See* Mot. at 12 n.12 (citing Trujillo-Jamison Decl., Ex. I (Grecco admitted that it used the Grecco Accounts to investigate and prosecute the infringement alleged in this Action)).)

[7] Curiously, the Opposition brief contradicts itself elsewhere, claiming without explanation that "neither MGP nor Michael Grecco (as an individual) ever had access or control to the evidence in question." (Opp. at 2.) As confirmed by Grecco's sworn interrogatory responses on August 29, 2025, this is false. (*See* Mot. at 5–6 (citing Trujillo-Jamison Decl., Ex. H at No. 1 & Ex. I at No. 12 (admitting that Michael Grecco "[c]ontrolled the X account @michaelgrecco" and Grecco "has [also] used" a second account, @DaysOfPunk)).)

DEFENDANT X CORP.'S REPLY ISO MOTION FOR EVIDENTIARY SANCTIONS

1    2014 WL 1089694, at *9 (D. Nev. Mar. 18, 2014) ("[a]lthough Plaintiff's counsel may have

2    failed to advise Plaintiff that she needed to save her Facebook posts and of the possible

3    consequences for failing to do so, the deletion of a Facebook comment is an intentional act, not

4    an accident, and the Court cannot infer that Plaintiff deleted Facebook comments . . . for an

5    innocent reason").

6         Grecco's admission aside, the deleted Grecco Account Data is plainly "relevant to the

7    subject matter involved in the action" because this Action challenges posts by third party users

8    containing the Photos at issue which, according to Grecco, were sent "without Plaintiff's

9    permission, license, or consent." (SAC ¶ 132; *see id.* ¶¶ 14, 127.) Grecco cannot credibly argue

10   that the evidence showing Grecco voluntarily posted those Photos on X—and thus provided the

11   very "permission, license, or consent" it claims was absent (*id.*)—is somehow not relevant to this

12   Action. And contrary to Grecco's attempts to blame X Corp. for failing to expressly assert a

13   "license defense" in its Answer (Opp. at 13), it is *Grecco's* own conduct—in posting the Photos

14   on X (a fact known only to Grecco until June 2025 (*see* Mot. at 3)) and affirmatively raising the

15   issue of licensing in the SAC—that put *Grecco* on notice of such relevance. In any event, Grecco

16   and X Corp. stipulated that X Corp.'s Answer expressly "denie[d] the allegations in Plaintiff's

17   SAC"[8] and "reserve[d] all defenses," including as to any license Grecco agreed to in X Corp.'s

18   Terms of Service. (ECF No. 32 at 2 (Stipulation Regarding Answer to SAC); *see* ECF No. 20

19   (Answer to FAC).)

20        Accordingly, the Grecco Account Data is centrally relevant to claim-dispositive issues in

21   this Action and should have been preserved. *See Great Minds v. Office Depot, Inc.*, 945 F.3d

22   1106, 1110 (9th Cir. 2019) (holding that an infringement claim "fails if the challenged use of the

23   work falls within the scope of a valid license").

24

25   _____

26   [8] Among the allegations in the SAC that X Corp. expressly "denied" (ECF No. 32) is the
     allegation that the third-party posts at issue were "unauthorized actions . . . performed without
     Plaintiff's permission, license, or consent." (SAC ¶ 132.) This denial alone is more than enough
27   to have put Grecco on notice that the Grecco Account Data—which Grecco knew contained
     copyrighted photos it voluntarily posted—was "relevant to the claims or defenses" in this Action.
28   *See Apple Inc.*, 881 F. Supp. 2d at 1137.

**B.**    **The Opposition Likewise Confirms Grecco Failed to Take Reasonable Steps to Preserve the Grecco Account Data**

The Motion further demonstrated that by intentionally deleting, and affirmatively choosing not to download and preserve, the Grecco Account Data, Grecco failed to take the most basic steps to preserve such relevant evidence. (*See* Mot. at 12–13 (citing Harris Decl. ¶¶ 14–16, 20–22)); *see GoDaddy.com*, 340 F.R.D. at 346 ("While Plaintiff claims not to have known that she would lose access to her @cox.net emails, she should have known that the Cox-hosted email account would be deactivated when she terminated her Cox services.").

Grecco's Opposition only confirms its failure to take reasonable steps to preserve the Grecco Account Data. For example, Grecco admits that "Michael Grecco deactivated his account" approximately "six months after the filing of the lawsuit." (Opp. at 4.) Lacking any legal justification for this misconduct, Grecco feigns surprise that its affirmative decision to permanently deactivate the Grecco Accounts resulted in account deletion. (Opp. at 3–4 ("the deactivation . . . should never have resulted in the deletion of data").) But as the Motion explained, and Grecco's Opposition largely ignores, Grecco was *repeatedly* and unmistakably warned that its affirmative *deactivation* of the accounts would result in permanent *deletion* after thirty days. (*See* Mot. at 7–8 (citing Harris Decl. ¶¶ 12–13, 18–19 (citing repeated warnings that "[*t*]*his will deactivate your account*" which can be restored "***up to 30 days after deactivation***") (emphasis added)); *see also id.* ¶ 8 (citing X's Privacy Policy) (warning, in a provision titled "***Deleting Your Information***" that, by "***follow[ing] the [deactivation] instructions***" your "***account will be deactivated and [the account's] data will be queued for deletion***") (emphasis added); *id.* ¶ 9 (citing X Help Center) ("[*a*]*fter your 30-day deactivation window, your X account is permanently deleted*" and "[*o*]*nce your account is deleted, your account is no longer available in our systems*") (emphases added).) Despite these many warnings, Grecco affirmatively chose not to re-activate either of the Grecco Accounts within the "30-day deactivation window" and thus, both Grecco Accounts were permanently deleted. (*See* Mot. at 7–8.)

6

DEFENDANT X CORP.'S REPLY ISO MOTION FOR EVIDENTIARY SANCTIONS

In response, Grecco grasps at straws, claiming that one of the many warnings Grecco received—*i.e.*, X's warning in its Terms of Service and incorporated Privacy Policy (*see* Mot. at 8) that a user's data is "queued for deletion" after it is deactivated—did not put him on notice that deactivation would result in deletion. (*See* Opp. at 10.) Not so. The provision in which that phrase appears—titled "***Deleting your information***"—leaves no doubt that Grecco was on notice of the permanence of its actions, not only by affirmatively deleting the Grecco Accounts, but by separately choosing not to archive the Grecco Account Data before doing so:

> **5.2 Deleting your information.**
>
> If you follow the instructions here, **your account will be deactivated and your data will be queued for deletion**. When deactivated, your X account, including your display name, username, and public profile, will no longer be viewable on X.com, X for iOS, and X for Android. **For up to 30 days after deactivation it is still possible to restore your X account** if it was accidentally or wrongfully deactivated.

(Harris Decl. ¶ 8 (quoting X Privacy Policy, available at https://x.com/en/privacy) (emphasis added).)

Tellingly, Grecco cites no evidence of its own to dispute or contradict any of these facts. *Painter v. Atwood*, No. 2:12-CV-1215, 2014 WL 3611636, at *2 (D. Nev. July 21, 2014) (issuing adverse inference sanction where "the only evidence on the record . . . shows that posts had been deleted" and "no evidence has been presented [by plaintiff] to contradict it").

Instead, Grecco asks this Court to excuse its spoliation because it was "based on Michael Grecco's political disagreement with Elon Musk[]" that was "grounded in principle." (Opp. at 3.) But Grecco's "political disagreement[s]" have no bearing on its *legal* obligation to preserve relevant ESI, which it knowingly violated. *See Holloway v. Cnty. of Orange*, No. 19-cv-01514-DOC (DFMx), 2021 WL 454239, at *2 (C.D. Cal. Jan. 20, 2021) ("That Plaintiff may have deleted his account over societal issues and not with the intent to destroy evidence is not dispositive; to the contrary, Plaintiff's 'conscious disregard' of his discovery obligations is sufficient to show a culpable state of mind."); *see also Torgersen v. Siemens Bldg. Tech.*, Inc., 2021 WL 2072151, at *4–6 (N.D. Ill. May 24, 2021) (granting spoliation sanctions based on

DEFENDANT X CORP.'S REPLY ISO MOTION FOR EVIDENTIARY SANCTIONS

1  plaintiff's "intentional" "destruction of his Facebook" account and rejecting as "balderdash"

2  plaintiff's explanation that he deleted the account "for reasons related to . . . his political

3  expressions").

4         Grecco also makes no attempt to explain how Michael Grecco's "political disagreement"

5  influenced its separate, affirmative decision not to preserve the Grecco Accounts before deleting

6  them—*i.e.*, by "***download***[*ing*] ***an archive of*** [*its*] ***account data***"—including all "***media*** (***images,***

7  ***videos, and GIFs***[)]." (Mot. at 6–7 (citing Harris Decl. ¶¶ 14–16, 20–22); *see generally* Opp.)

8  Grecco has no response to the fact that it could have easily preserved such data by downloading

9  a copy, but affirmatively decided not to do so. That is spoliation. (*See* Mot. at 12–13 (citing

10 *GoDaddy.com*, 340 F.R.D. at 346 (plaintiff had failed to take reasonable steps to preserve ESI in

11 part because she had failed "to download or copy the contents of the [] email account before she

12 had it disconnected")).)

13        At bottom, Grecco does not contest that it intentionally deleted both Grecco Accounts

14 and all associated Grecco Account Data six months after filing this Action. (*See generally* Opp.)

15 Nor does Grecco contest that it could have easily archived *all* Grecco Account Data before it was

16 deleted. (*Id.*) Worse, Grecco's Opposition does not provide *any* detail regarding the steps it took

17 (if any) to identify and preserve relevant evidence, including from the Grecco Accounts, after

18 filing this Action. (*Id.*) Taken together, these undisputed facts leave no doubt that Grecco failed

19 to take reasonable steps to preserve relevant evidence. *See Edwards v. Junior State of Am.*

20 *Found.*, No. 4:19-CV-140, 2021 WL 1600282, at *8 (E.D. Tex. Apr. 23, 2021) (a party's "failure

21 to keep his Facebook account active long enough to download the files in question constitutes a

22 brazen failure to take reasonable steps to preserve the pertinent ESI.").

23        **C.    The Opposition Also Confirms the Grecco Account Data Was Lost as a
24              Result of Grecco's Failure to Preserve**

25        As the Motion explained, there is also no doubt that Grecco's voluntary deletion of both

26 Grecco Accounts—and its affirmative decision not to easily archive such data—is the sole

27

28

1    reason the Grecco Account Data was lost. (*See* Mot. at 13.) Grecco's desperate attempts to shift

2    blame and distract from its misconduct only confirm this fact.

3          For example, Grecco claims "X is at fault here for failing to take appropriate steps to

4    preserve evidence" and that "X was in possession and control of the evidence" because it was

5    "kept on X's servers." (Opp. at 4, 6, 11.) ***But Grecco has already admitted under oath that it***

6    ***"controlled" both Grecco Accounts***.[9] Regardless, "[c]ontrol is defined as the legal right to

7    obtain documents upon demand," and, as the Motion explained, Grecco was at all times able to

8    obtain the Grecco Account Data "upon demand"—it simply chose not to. (*See* Mot. at 14);

9    *United States v. Int'l Union of Petroleum and Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir.

10   1989); *Milke v. City of Phx.*, 497 F. Supp. 3d 442, 458 (D. Ariz. 2020) (plaintiff "had an

11   obligation to preserve . . . her social media sites" because plaintiff "exercised control over the

12   contents" of those sites); *see also Arteria Prop. Pty Ltd. v. Universal Funding V.T.O., Inc*., No.

13   05-4896, 2008 WL 4513696, at *5 (D.N.J. Oct. 1, 2008) ("Despite the inevitable presence of an

14   intermediary when posting content on the Web, the Court finds that [the spoliating party] still

15   had the *ultimate* authority, and thus control, to add, delete, or modify the website's content.")

16         Grecco's blame-shifting fails in light of the undisputed fact that Grecco first confirmed

17   the identity of the Grecco Accounts on August 29, 2025—***eight months after Grecco deleted***

18   ***both accounts***. (*See* Mot. at 13.) As the Motion explained (*id.* at 14), X Corp. cannot be faulted

19   for failing to independently search its platform of 600 million users for accounts that may belong

20   to Grecco, especially because, according to Grecco, there are "many bot accounts with variations

21   of [Michael Grecco's] name on X Corp.'s platform [that] are not controlled by Plaintiff or Mr.

22   Grecco." (*Id.* (citing Trujillo-Jamison Decl., Ex. I at No. 12).) This is especially so because X

23   Corp. did not know the critical relevance of the Grecco Accounts to this Action until the summer

24   of 2025, when it discovered evidence that Grecco posted its own copyrighted photos on

25

26

27   [9] (*See, e.g.,* Mot. at 5–6 (citing Trujillo-Jamison Decl. Ex. H at No. 1; *id.*, Ex. I at No. 12)
     (admitting that Michael Grecco "[c]ontrolled the X account @michaelgrecco" and identifying

28   the @DaysOfPunk account as one "Michael Grecco . . . has used."); Opp. at 2 n.4 ("The
     @michaelgrecco handle is controlled personally by Michael Grecco . . . .").)

9

1    Twitter/X and Facebook. (*See* Mot. at 12 n.11.) Nor would X have had any reason to know that

2    an account titled @DaysOfPunk belonged to Michael Grecco. (*Id.* at 14.)[10]

3          The Opposition also claims X Corp. "had actual notice of the [Grecco Accounts']

4    existence and ownership" based on a purported February 2024 DMCA takedown notice

5    appended to the Opposition.[11] (Opp. at 9 (citing ECF Nos. 60-1 ("Foss Decl.") & 60-2 (Ex. 2).)

6    This is demonstrably false: even a cursory review of that purported takedown notice confirms

7    that it says *nothing* about any Twitter/X account belonging to Grecco. (*See* Foss Decl. at 2–3 (no

8    mention of *any* Twitter/X account belonging to Grecco).)[12]

9          Courts routinely reject similar attempts by spoliating parties—including parties

10   significantly less experienced than Grecco—to blame others for their voluntary deletion of their

11   internet accounts. In *Welter v. Hurt*, the Court issued spoliation sanctions based on defendant's

12   "discrete decision," months after litigation commenced, to "to stop paying for [his] Google

13   subscription" and "to not back-up or otherwise copy the Workspace's contents," before it was

14   deleted by Google. 2025 WL 1843263 at *8–9. In holding that "Defendant allowed the Google

15   Workspace account to be deleted" and the "deletion of the Google Workspace was intentional,"

16   the Court rejected defendant's argument that he "shouldn't be responsible" for the Google

17   Workspace account because he "is not an administrator" and "does not have access to the

18

19   [10] While Grecco claims X Corp. should have known the identity of its account because it "had a
20   blue checkmark," Grecco includes no facts whatsoever to support that assertion, which is ironic
     because X Corp.'s inability to confirm that fact—or any facts about the Grecco Accounts—is the
21   result of Grecco's intentional spoliation and decision not to archive the Grecco Accounts. (*See*
22   Opp. at 5, 16.)

23   [11] In yet another desperate bid to distract from its own discovery misconduct, Grecco asserts—
     without evidence or citation—that "X Failed to Institute a Litigation Hold." (Opp. at 8.) Not only
24   is this false, but X's litigation hold is beside the point, because by the time Grecco first disclosed
     the identity of the Grecco Accounts to X on August 29, 2025, they had been voluntarily and
25   permanently deleted for ***eight months***.

26   [12] Grecco also ignores that X Corp. has, and at all relevant times had, a legal duty to comply with
27   user requests—like Grecco's request here—to permanently delete user data upon request. (*See*
     Mot. at 14 n.14); *see Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (collecting cases,
28   including from the Court of Justice of the European Union, requiring online platforms remove
     "[p]ersonal data upon request").)

DEFENDANT X CORP.'S REPLY ISO MOTION FOR EVIDENTIARY SANCTIONS

Google Account.  *Id.* at \*9 (granting terminating sanctions against defendant because he "***had an affirmative duty to step in and prevent the loss of [the account] but took no action whatsoever to download, copy, or otherwise preserve***") (citation modified; emphasis added).

Grecco's affirmative conduct here—in completing a five or six-step process to delete both Grecco Accounts and affirmatively choosing not to easily preserve them (*see* Mot. at 7–8)—is even more egregious and deserving of sanctions. *See, e.g.*, *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 336 (D. Ariz. 2022) (plaintiff "failed to take reasonable steps to preserve" ESI when she "knowingly ended her [email] account without taking steps to preserve the ESI it contained" and "***should have known that the . . . email account would be deactivated when she terminated her Cox services***.") (emphasis added); *Medina*, 673 F. Supp. 3d at 1150 ("***the Court rejects Defendants' assertion that it innocently deactivated relevant e-mail accounts***" because the "spoliated evidence includes ESI stored on e-mail accounts that Defendants deleted in the month or two before Plaintiffs filed this action, which due to Google's data retention policy . . . were unrecoverable twenty days following deactivation.") (emphasis added); *see also Gatto v. United Air Lines, Inc.*, No. 10-cv-1090, 2013 WL 1285285, at \*4 (D.N.J. Mar. 25, 2013) ("***Plaintiff intentionally deactivated the account***" and "***[i]n doing so . . . fail[ed] to reactivate the account within the necessary time period***" and "***caused the account to be permanently deleted***.") (emphasis added).

In the end, the facts are clear: Grecco (i) sued X Corp. to challenge posts on X containing its copyrighted Photos, (ii) refused to disclose that it operated multiple X accounts that posted those same Photos, (iii) intentionally deleted ***sixteen years of ESI*** that would have shown Grecco waived its claims against X Corp., and, finally, (iv) disclosed those accounts to X Corp. for the first time ***eight months after they were deleted***. (*See* Mot. at 1–2.) Grecco not only failed to preserve the critically relevant Grecco Account Data despite a legal duty to do so, but it intentionally deactivated and deleted that data and affirmatively chose not to archive and download it before doing so. Accordingly, the loss of the Grecco Account Data was caused solely by Grecco's affirmative actions.

**D.      Grecco Does Not Contest that the Grecco Account Data Cannot be Replaced**

The Opposition does not contest that the Grecco Account Data is lost and cannot be replaced through additional discovery. (*See* Mot. at 14–15; *see generally* Opp.)

Accordingly, for all the reasons set forth in the Motion and herein, Grecco's deletion of evidence easily establishes spoliation "by a preponderance of the evidence." *See Lee*, 2025 WL 2505484, at *6 (a party must show that "(1) the information should have been preserved" "(2) a party failed to take reasonable steps to preserve," "(3) the information was lost as a result," and "(4) the information could not be restored or replaced by additional discovery.").

**II.     The Opposition Confirms That Grecco's Spoliation Has Severely Prejudiced X Corp.**

In addition to Grecco's spoliation, the Motion demonstrated the severe and irreversible prejudice wrought by Grecco's intentional deletion of the Grecco Account Data, and its decision not to archive and download them before doing so. (*See* Mot. at 15–16.) Despite its inability to review *any* of the Grecco Account Data due to Grecco's spoliation, X Corp. nevertheless discovered extrinsic evidence proving that Grecco posted its own copyrighted photographs on social media ***at least forty times***. (*See* Mot. at 11–12 nn. 10–11.) Without the Grecco Accounts themselves, X Corp. is forced to rely on incomplete and spotty evidence to determine whether such conduct extended to the Photos at issue. This is textbook prejudice. *See Facebook, Inc. v. Onlinenic Inc.*, No. 19-cv-07071, 2022 WL 2289067, at *10 (N.D. Cal. Mar. 28, 2022) (prejudice satisfied where "another party's failure to produce documents forced the non-spoliating party to rely on incomplete and spotty evidence."); *GoDaddy.com*, 340 F.R.D. at 346 ("loss of the @cox.net email account prejudiced Defendants" because "[t]he lost ESI likely included communications regarding core events").

Grecco has no response to X Corp.'s evidence establishing Grecco's pattern of posting its copyrighted works at least ***forty times*** on social media. (*See* Mot. at 11–12 nn. 10–11; *see generally* Opp.) Grecco does not deny that it posted such copyrighted works to social media, including to Twitter/X. (*See generally* Opp.) Instead, Grecco submits an unsupported and self-serving declaration stating that "[***a***]***s a policy***, [Michael Grecco] did not post [his] copyrighted

1   images to [his] Twitter/X account" and "***to the best of*** [***his***] ***recollection*** the copyrighted images

2   at issue in this infringement case were not posted to the X platform by [him]." (ECF 60-4

3   ("Grecco Declaration") ¶ 12 (emphasis added).) But the Grecco Declaration is most notable for

4   what it does *not* say. It does *not* say that Grecco did not intentionally deactivate both Grecco

5   Accounts and all Grecco Account Data. It does *not* say that Grecco did not affirmatively choose

6   not to preserve such data before doing so. It does *not* say that Grecco did not post any of the

7   Photos at issue from the Grecco Accounts.[13] It does *not* even say that the two Grecco Accounts

8   were the *only* accounts Grecco intentionally destroyed. (*See generally id.*)

9          In the end, the Grecco Declaration and its self-serving assertions only confirm the severe

10  prejudice to X Corp. It should be stricken as a matter of law for multiple reasons. ***First***, it is

11  contradicted by Grecco's discovery responses—sworn under penalty of perjury—stating that

12  Grecco "***lacks sufficient information to admit or deny***" whether it posted *any* of the 111 Photos

13  at issue on X. (*See* Mot. at 14–15); *Muhammad v. Cnty. of L.A.*, No. CV 15-01228-RGK

14  (MANx), 2015 WL 13919171, at *4 (C.D. Cal. Oct. 2, 2015) (courts routinely "bar consideration

15  of affidavits that contradict prior discovery responses"). ***Second***, it is contradicted by evidence

16  showing Grecco *did* post its copyrighted photos *dozens* of times on social media. (*See* Mot. at

17  11–12 nn. 10–11); *Volcan Grp., Inc. v. T-Mobile USA, Inc.*, 940 F. Supp. 2d 1327, 1335–36

18  (W.D. Wash. 2012) ("Although Akrie has presented multiple declarations denying that Plaintiff

19  despoiled evidence, those self-serving declarations  . . . are contradicted by substantial

20  evidence"). ***Third***, it is incapable of interrogation or verification by X Corp. or this Court

21  precisely because Grecco spoliated evidence. *See Lee*, 2025 WL 2505484, at *15 ("[c]ontrary to

22

23  _____

     [13] The Opposition tepidly offers to do so at some unspecified point in the future: "Mr. Grecco is
24  prepared to confirm under oath that this policy was followed." (Opp. at 20.)

25  But Grecco has had multiple opportunities to confirm under oath that it did not post the Photos at
     issue on Twitter/X—including in the Grecco Declaration itself—and instead chose not to. (*See*
26  *generally* Grecco Declaration; *see also* Mot. at 7 (citing Trujillo-Jamison Decl., Ex. K at Nos.
     32–143 (responding 113 times that "***Plaintiff lacks sufficient information to admit or deny***"
27  whether it posted any of the 111 Photos at issue on Twitter/X).)

28  Grecco's silence on this potentially case-dispositive issue speaks volumes.

13

1  [ ] Defendants' self-serving portrayal, the destruction here involved nothing short of affirmative

2  action—some person employed by [ ] Defendants made the decision to replace and delete the

3  contents of these two cell phones . . . and deleted them"). To credit Grecco's self-serving denials

4  would be to impermissibly reward its spoliation of evidence.

5      Accordingly, in light of the severe prejudice to X Corp., this Court should exercise its

6  inherent power by issuing terminating sanctions or instruct the jury that it may presume that the

7  deleted Grecco Account Data was unfavorable to Grecco and would have shown that Grecco

8  voluntarily posted the Photos at issue to the X platform.

9  **III.    Because Grecco Acted with Intent, Rule 37(e) Sanctions Are Also Appropriate**

10     The Motion established that Grecco's discovery misconduct in this Action—in

11  completing a multi-step process to permanently deactivate and thus delete all Grecco Account

12  Data and choosing not to download that data before doing so—was no accident. (*See* Mot. at 16–

13  18); *see Painter*, 2014 WL 1089694, at * 9 ("the deletion of Facebook comment is an intentional

14  act"). Instead, the facts set forth in X Corp.'s motion provide ample support for an inference that

15  Grecco purposely and intentionally deleted the Grecco Account Data while under a duty to

16  preserve. (*See* Mot. at 17–18; Harris Decl. ¶¶ 12–13, 18–19 (detailing the five or six-step,

17  manual process for account deactivation that repeatedly warned such process would result in

18  permanent deletion of data); *id.* ¶¶ 14–16, 20–22 (explaining the easy steps Grecco could have

19  taken to preserve and download its data).) This is true regardless of Grecco's attempt to justify

20  its destruction of evidence as stemming from a "political disagreement." *See, e.g.*, *Glaukos Corp.*

21  *v. Ivantis, Inc.*, No. SACV 18-620 TLV (IDEx), 2020 WL 5914552, at *4 (C.D. Cal. July 30,

22  2020) (finding intentional spoliation and noting that "[t]he Court did not fail to consider [the

23  spoliating party's] stated reasons for why it adopted its email deletion policy . . . the Court

24  considered [defendant's] rationale but concluded that [defendant] nevertheless failed to suspend

25  the policy even when litigation was reasonably foreseeable, and inferred an intent to deprive"

26  from defendant's course of conduct); *Holloway*, 2021 WL 454239, at *2 ("That Plaintiff may

27  have deleted his account over societal issues and not with the intent to destroy evidence is not

28

1    dispositive; to the contrary, Plaintiff's 'conscious disregard' of his discovery obligations is

2    sufficient to show a culpable state of mind."); *Torgersen*, 2021 WL 2072151, at *4 (rejecting

3    plaintiff's explanation for his spoliation—that he "deleted his account solely for reasons related

4    to ever increasing online threats and intimidating communications . . . related to his political

5    expressions"—and holding that "Plaintiff's destruction of his Facebook was intentional and

6    occurred while on notice to preserve the same. Plaintiff's explanation for what happened here is

7    balderdash.").

8         Indeed, Grecco's *own* admissions confirm that its deletion of all Grecco Account Data

9    was an intentional act. (Opp. at 20 (citing Grecco Declaration).) On December 1, 2024—six

10   months after filing this Action and while under a legal duty to preserve—Grecco directed two of

11   its agents to "***close my Twitter account permanently***" and do the same with respect to "[a]ny

12   and all of" its "***several Twitter accounts***" and to "***move everything over to blue sky***." (Grecco

13   Declaration ¶ 7; *id.*, Ex. A at 1.) Grecco gave this instruction with the specific knowledge that

14   (i) it was under a legal duty to preserve *all* relevant evidence; and (ii) the Grecco Accounts

15   contained case-dispositive evidence showing Grecco licensed the Photos to X Corp. *See supra*

16   discussion at 2–3.

17        This is textbook intentionality that courts routinely find sufficient to warrant spoliation

18   sanctions. (*See* Mot. at 17–18 (citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)

19   (affirming finding of "willful spoliation because [plaintiff] knew it was under a duty to preserve

20   all data on the laptop, but intentionally deleted many files" including mass destruction of emails

21   and email accounts); *Holloway*, 2021 WL 454239, at *2 (granting adverse inference where

22   "[p]laintiff had an obligation to preserve his Facebook account, he deleted the account with a

23   culpable state of mind, and the account was relevant to Defendants' claims"); *Hice v. Lemon*, No.

24   19-cv-4666, 2021 WL 6053812, at *5–6 (E.D.N.Y. Nov. 17, 2021) (intentionality "sufficiently

25   established" where plaintiff "admitted to deleting his Twitter account" shortly after filing his

26   complaint); *GoDaddy.com*, 340 F.R.D. at 343 ("Plaintiff unsent the [relevant Facebook] message

27   with the intent to deprive Defendants of its use as required for Rule 37(e)(2) sanctions.");

28

1  *Collins-Williams v. Contour Eastwyck LLC*, 2022 WL 17828934, at *105 (N.D. Ga. Dec. 15,

2  2022) ("Because the defendant proactively [deactivated and thus] divested itself of access to the

3  Gmail accounts and then sought to stall and argue rather than seek to regain access to the

4  accounts it was clearly under an obligation to preserve, the court finds the defendant acted with

5  the intent to deprive the plaintiffs of access to these accounts sufficient to incur the most severe

6  sanctions."); *Nuvasive, Inc. v. Absolute Med.*, No. 6:17-cv-2206-Orl-41GJK, 2021 WL 3008153,

7  at *6–7 (M.D. Fla. May 4, 2021) (defendants "*intentionally destroyed* vast amounts of evidence"

8  when they "deactivated . . . email accounts")); *see also Onlinenic Inc.*, 2022 WL 2289067, at *9

9  ("widespread deletion activities . . . alone evidence bad faith."); *Medina*, 673 F. Supp. 3d at 1150

10  (granting terminating sanctions based on defendant's intentional "deactivation and replacement

11  of three alias e-mail accounts").

12      Grecco attempts to avoid the devastating import of this case law by claiming such cases

13  are "distinguishable" because, here "X was the party in possession of the account information

14  and data" and that, in those cases, the deleted evidence was relevant whereas here it is not. (Opp.

15  at 12.) But as discussed above, Grecco's distinction as to "possession" is meritless—***Grecco has***

16  ***already admitted under oath that it "controlled" both Grecco Accounts***.[14] And Grecco's

17  attempt to distinguish those cases as involving relevant evidence fares no better. Evidence that

18  Grecco posted the Photos at issue here—a fact the Grecco Account Data would have readily

19  revealed—is case-dispositive for all the reasons explained in the Motion and *supra*. (*See* Mot. at

20  10–11); *Schneider v. YouTube, LLC*, 649 F. Supp. 3d 872, 885 (N.D. Cal. Jan. 5, 2023)

21  (dismissing direct copyright infringement claim based on works that plaintiff "uploaded . . . to

22  YouTube," because "[u]nder the plain language of the TOS, YouTube cannot be liable for direct

23  infringement of these works"). Indeed, to the extent the cases cited in the Motion can be

24  distinguished, such distinctions only confirm the intentional nature of Grecco's spoliation of ***at***

25

26  _____

27  [14] (*See, e.g.,* Mot. at 5 (citing Trujillo-Jamison Decl. Ex. H at No. 1; *id.*, Ex. I at No. 12) (admitting that Michael Grecco "[c]ontrolled the X account @michaelgrecco" and identifying

28  the @DaysOfPunk account as one "Michael Grecco . . . has used."); Opp. at 2 n.4 ("The @michaelgrecco handle is controlled personally by Michael Grecco").)

DEFENDANT X CORP.'S REPLY ISO MOTION FOR EVIDENTIARY SANCTIONS

1    *least*[15] two Grecco Accounts **six months** after filing this Action. *See, e.g., Holloway*, 2021 WL

2    454239, at *2 (issuing sanctions based on deletion of *one* Facebook account: "Plaintiff had an

3    obligation to preserve his Facebook account, he deleted the account with a culpable state of

4    mind, and the account was relevant to Defendants' claims"); *Hice*, 2021 WL 6053812, at *5–6

5    (intent "sufficiently established" where plaintiff "admitted to deleting his Twitter account" "***less***

6    ***than a week*** after this action was commenced") (emphasis added).

7          A finding of intentionality is particularly warranted here given that Grecco is one of the

8    most experienced, prolific litigants in the country—with ***243*** federal copyright cases under its

9    belt in the past decade alone. (*See* Mot. at 1); *Onlinenic Inc.*, 2022 WL 2289067, at *7 (finding

10    intentional spoliation where the spoliating parties "are technologically sophisticated parties that,

11    by now, should be well-acquainted with their preservation obligations under Rule 37(e)").

12    Indeed, as the Motion explained and Grecco simply ignores, earlier this year Grecco

13    demonstrated its familiarity with federal preservation obligations when it brought its own

14    spoliation motion in this Court based on a defendant's *passive* deletion of evidence. *See Michael*

15    *Grecco Prods., Inc. v. Fandom*, Inc., No. 2:24-cv-05963, Dkt. 53-1 (C.D. Cal. Apr. 17, 2025)

16    (arguing that defendant's *passive* auto-delete email feature was intentional spoliation).

17          It is simply not credible for Grecco to feign ignorance with its preservation obligations

18    here by claiming that "it simply never occurred to Mr. Grecco that his accounts had anything to

19    do with this action." (Opp. at 11.) *Grecco* posted its copyrighted works on social media at least

20    ***forty times***, thus granting X Corp. and Facebook broad licenses to those works. (Mot. at 11–12

21    nn. 10–11.) *Grecco* affirmatively deleted all Grecco Account Data and decided not to easily

22

23    _____

24    [15] While Michael Grecco's December 1, 2024 instruction to Grecco's "social media team" was to
     deactivate and thus delete "***several*** accounts" on X (Grecco Declaration ¶ 1), the Opposition

25    refers to only one account—@michaelgrecco—and he has disclosed only two accounts in this
     Action. *See* Mot. at 5–6. Conspicuously absent from the Opposition and the Grecco Declaration

26    is any representation that the two Grecco Accounts were the only two that were deleted.

27    As a consequence of Grecco's spoliation of evidence, the question of whether Grecco deleted
     and destroyed *more than* two accounts in December 2024 is one that X Corp. and this Court will

28    likely never answer.

DEFENDANT X CORP.'S REPLY ISO MOTION FOR EVIDENTIARY SANCTIONS

1  download and preserve that data before doing so. (*See* Mot. at 14.) *Grecco* first raised the issue

2  of third-party licenses in this Action—by alleging the third-party posts at issue were shared

3  "without Plaintiff's permission, **license**, or consent." (SAC ¶¶ 14, 127, 132 (emphasis added).)

4  And *Grecco* and its counsel have the affirmative legal obligation to search for, identify, and

5  preserve relevant evidence. *Bruner*, 2020 WL 554387, at *5 ("[E]ven if a plaintiff or their

6  counsel does not have the technical knowledge to understand metadata, every lawyer has a clear

7  obligation to help their client to preserve all relevant evidence . . . a lawyer must instruct their

8  client on how to preserve potentially relevant evidence and clearly inform their client that they

9  cannot alter or delete any potential evidence."); *Hous. Rts. Ctr. v. Sterling*, No. CV 03-859 DSF,

10  2005 WL 3320739, at *3 (C.D. Cal. Mar. 2, 2005) ("Defense counsel's apparent failure, in this

11  electronic age, to verify with appropriate representatives of their client whether there was an e-

12  mail backup system, cannot be countenanced.").

13       The undisputed facts confirm that Grecco has intentionally breached that duty. Sanctions

14  are thus warranted for all the reasons set forth here and in the Motion.

15  **IV.  CONCLUSION**

16       For all these reasons as well as those set forth in the Motion, Grecco's intentional

17  spoliation of relevant evidence six months after filing this Action warrants severe sanctions.

18  Defendant respectfully requests an order issuing terminating sanctions or an adverse inference

19  that (i) Grecco deleted the Grecco Account Data intentionally, and (ii) the Grecco Account Data

20  would have shown that Grecco posted the very Photos on which its claims are based, thus

21  granting X Corp. and its users a "broad, royalty-free license to make [the Photos] available to the

22  rest of the world and to let others do the same"; and awarding X Corp. its reasonable attorneys'

23  fees and costs.

24                             Respectfully submitted,

25  Dated:  December 24, 2025           WILLENKEN LLP

26

27                           By: */s/ Kenneth M. Trujillo-Jamison*
                           Kenneth M. Trujillo-Jamison

28                             Attorneys for Defendant X Corp.

DEFENDANT X CORP.'S REPLY ISO MOTION FOR EVIDENTIARY SANCTIONS

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant X Corp. in its corporate capacity and also as successor in interest to named defendant Twitter, Inc., certifies that this brief contains 6,086 words, which complies with the word limit of L.R. 11-6.1.

Dated:  December 24, 2025                    WILLENKEN LLP


                              By: */s/ Kenneth M. Trujillo-Jamison*
                                  Kenneth M. Trujillo-Jamison
                                  Attorneys for Defendant X Corp.

19

DEFENDANT X CORP.'S REPLY ISO MOTION FOR EVIDENTIARY SANCTIONS