UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL GRECCO PRODUCTIONS INC.,

Plaintiffs,

v.

TWITTER, INC. et al.,

Defendants.

Case No.: 8:24-cv-04878-MEMF-JC

**ORDER DENYING MOTION FOR SANCTIONS [DKT. NO. 57]**

Before the Court is Defendant X Corp.'s Motion for Sanctions. Dkt. No. 57 ("Motion"). For the reasons stated herein, the Court hereby DENIES the Motion without prejudice.

/ / /

/ / /

/ / /

/ / /

/ / /

## I.    Background

### A.  Factual Allegations

The fatual background has been fully set forth in the Court's Order Denying Motion for Judgment on the Pleadings. Dkt. No. 70. The factual background is derived from the allegations in the Second Amended Complaint filed by Plaintiff Michael Grecco Productions, Inc. ("Grecco"). Dkt. No. 30 ("2AC"). The Court makes no finding on the truth of those allegations.

### B.  Procedural History

Grecco filed suit in this Court on June 10, 2024. Dkt. No. 1. Grecco filed a First Amended Complaint on June 14, 2024. Dkt. No. 12. X Corp. filed an Answer to the First Amended Complaint on August 9, 2024. Dkt. No. 20.

On January 17, 2025, the parties stipulated to allow Grecco leave to file a Second Amended Complaint. Dkt. No. 26. The Court granted the Stipulation on February 7, 2025. Dkt. No. 29. On February 12, 2025, Grecco filed a Second Amended Complaint. Dkt. No. 30 ("2AC"). The 2AC alleges violations under 17 U.S.C. § 501 on the basis that X Corp. committed: (1) direct copyright infringement; (2) contributory copyright infringement; or (3) vicarious copyright infringement. *See generally* 2AC.

On June 20, 2024, X Corp. filed a Motion for Judgment on the Pleadings. Dkt. No. 41. On July 7, 2025, Grecco filed an Opposition to X Corp.'s Motion. Dkt. No. 42. On July 14, 2025, X Corp. filed a Reply in Support of its Motion. Dkt. No. 44.

On December 4, 2025, X Corp. filed the instant Motion. Motion. On December 18, 2025, Grecco filed an Opposition to X Corp.'s Motion. Dkt. No. 60 ("Opposition"). On December 24, 2025, X Corp. filed a Reply in Support of its Motion. Dkt. No. 61 ("Reply").

## II.    Applicable Law

### A.  Rule 37(e) Sanctions

Pursuant to Rule 37(e) of the Federal Rules of Civil Procedure, a district court has the inherent power and authority to issues terminating sanctions as to conduct related to the preservation of electronically stored information ("ESI"). Fed. R. Civ. P. 37(e); *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995) (dismissing an action where a party

"engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings"). Rule 37(e) provides that if ESI should have been preserved in anticipation of litigation but is lost due to a party's failure to take reasonable steps to preserve the ESI, a court may:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). For dismissal to be proper, the sanctioned conduct must involve willfulness, fault, or bad faith. *Anheuser-Busch*, 69 F.3d at 384; *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985); *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946 (9th Cir. 1993).

A district shall weigh several factors before dismissing an action under Rule 37(e). *Id.* The factors include: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Anheuser-Busch, Inc.*, 69 F.3d at 348. "Because intent can rarely be shown directly, a district court may consider circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e)(2) sanctions." *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024).

### III.   Discussion

The parties dispute whether Grecco spoliated relevant evidence by deleting an X Corp. account without preserving the account data, and whether Grecco acted with bad faith. *See generally* Motion; Opposition. For the reasons stated herein, the Court finds that Grecco failed to take reasonable steps to preserve the X Corp. account and did so intentionally, but overall, the equities do not weigh in favor of the sanction requested.

#### A.  Grecco Spoliated the X Corp. Account Data.

X Corp. asserts that by deactivating and failing to preserve the data regarding the X Corp. account under its control, Grecco destroyed relevant evidence, thus prejudicing X Corp. Motion at 1-

2, 12-14; Reply at 1-2. In response, Grecco contends that X Corp. had control of the at issue evidence, and that Grecco or its principal, Michael Grecco, had no reason to believe that the evidence was relevant to the action. Opposition at 6-7, 12-14.

i.    The X Corp. Account Data is Relevant to This Action.

X Corp. argues that the account potentially included "case-dispositive ESI spanning sixteen years." Motion at 1, 12, 14; Reply at 4-5. In particular, X Corp. claims that based on Grecco's past practices, Grecco likely posted the allegedly infringing photos on the X Corp. account, thereby granting X Corp. and its users a license to utilize and share the photos. *Id.* at 1-2 (citing X Corp., Terms of Service (2024), https://x.com/en/tos). Grecco states that there is no reasonable basis for it or Michael Grecco to believe that the account data was relevant to the issues. Opposition at 6-7, 12-14.

The Court finds that both parties should have known that the account data would be material to this action. Grecco asserts claims for copyright infringement under 17 U.S.C. section 501—specifically that X Corp. failed to honor Grecco's DMCA takedown requests—allowing X Corp. users to distribute its photos "without permission, license, or authorization." 2AC ¶ 15. As set forth in X Corp.'s Terms of Service, which Grecco does not dispute that it entered into voluntarily, a user "provides [X Corp.] with a broad, royalty-free license to make [the user's] Content available to the rest of the world and to let others do the same." X Corp.'s Terms of Service (2024), https://x.com/en/tos; Motion at 4-5. As such, if Grecco posted any of the alleged infringed photos on the X Corp. account—as it appears it did, given this Court's review of Exhibit A showing Grecco's copyrighted photos on his now-deleted @michaelgrecco X Corp. account, Dkt. No. 57-3—Grecco would have licensed the photos to X Corp. and users for distribution.[1] *Id.*; Motion at 8. If the Court

[1] Grecco claims that it and Michael Grecco did not have reason to believe that deactivating the @michaelgrecco account was important because X Corp. never plead license as an affirmative defense. Opposition at 7. As discussed herein, it appears that X Corp. did not plead a license defense because X Corp. was unaware of the existence of the account and Grecco did not acknowledge the account until August 29, 2025—over a year after the initial Complaint. Dkt. Nos. 1, 57-9, 57-10, 57-14; Motion at 5.

Grecco further contends that X Corp.'s license defense undermines its DMCA safe harbor argument as the license defense suggests actual knowledge of the alleged infringing material while the safe harbor argument asserts passive involvement. Opposition at 17-19 (citing *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 41 (2d Cir. 2012); then citing *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1056 (9th Cir. 2017)). First, X Corp. is not asserting the

found that Grecco licensed its photos, Grecco's copyright claims fail. *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) (holding that a copyright infringement claim "fails if the challenged use of the work falls within the scope of a valid license"). Therefore, the account data is directly material to the copyright infringement issue and thus, the parties were obligated to take reasonable steps to preserve the data under Rule 37(e).

ii.  <u>Each Party Had Access to the X Corp. Account Data.</u>

X Corp. next argues that Grecco, as the account's holder, had operational control over the account, including the deactivation of the account and the deletion of their data. Motion at 8-9; Reply at 10. Grecco does not directly contest its control over the account but claims that, because the data is on X Corp.'s servers, X Corp. "had control over the relevant data" as well. Opposition at 6, 8. As a result, Grecco posits that X Corp. "contributed to the situation by neglecting its own preservation duties." *Id.* at 6, 10.

The Court concludes that both parties exercised control over the X Corp. account data. First, because the data is kept on X Corp.'s servers, X Corp. technically had the ability to maintain the account and subsequently deleted the data following Grecco's failure to preserve the data. *Id.* Second, as the accounts' holder, Grecco similarly had control over the account, as evidenced by its ability to request deactivation of the account and decision to not preserve the accounts' data.[2] *Id.* at 8 ("[Grecco] had access to the @michaelgrecco account online through X's website."). Therefore, X Corp. and Grecco were in control of the at issue data. *See Jones*, 95 F.4th at 734-35 (focusing on the individual who had access to the at issue text message exchange for a Rule 37(e) determination); *Anheuser-Busch*, 69 F.3d at 342-43 (focusing on the individual who had knowledge of the at issue documents for a Rule 37(e) analysis).

iii.  <u>Grecco Failed to Take Reasonable Steps to Preserve the X Corp. Account Data.</u>

---

license defense but stating that the spoliated evidence would support a license defense. Second, contrary to Grecco's claim that X Corp. would be actively licensing users, Grecco would be providing the license—not X Corp.—pursuant to the X Corp. Terms of Service. *See* X Corp.'s Terms of Service (2024), https://x.com/en/tos.

[2] Grecco admits that it controlled the @michaelgrecco account but that X Corp. "controlled the actual data and account information that resided on its servers." Opposition at 8. Grecco, however, fails to mention that it also had control over the account data. As raised by X Corp., users, like Grecco, have the ability to "Download an archive of [the user's] data" via a button right above the deactivate account option. Motion at 6; Dkt. No. 57-5 ¶ 15. Therefore, the Court finds that Grecco had control of the data.

First, Grecco discusses that X Corp. was on notice regarding the relevance of the account's data because Grecco sent X Corp. a DMCA takedown request a year prior to initiating the suit against X Corp. Opposition at 2, 5. The DMCA takedown request does not mention or indicate that Grecco possessed an account with X Corp. Dkt. No. 60-3. The request only provides information as to the photo, location, email address, Grecco's website, and infringing poster. *Id.* Grecco also did not identify the at issue accounts in his three complaints. *See* Dkt. Nos. 1, 12, 30; Motion at 3. And as stated in Zack Chibane's Declaration, X Corp. did not learn of the @michaelgrecco X Corp. account until June 2025, Dkt. No. 57-2 ¶¶ 3-8, five months after the account had been deactivated and four months after the data could have been restored, Dkt. No. 57-4 ¶¶ 12-13, 18-19. Upon learning of the @michaelgrecco X Corp. account, X Corp. sought discovery, asking Grecco if it controlled the account on June 26, 2025. Motion at 5; *see* Dkt. Nos. 57-9 to -10. Grecco, however, did not acknowledge the account until August 29, 2025. Dkt. No. 57-14. In sum, the record demonstrates that X Corp. did not reasonably have notice of the specific account at issue.

Second, X Corp. argues that Grecco had ample opportunity to preserve or archive the account data yet failed to do so. Motion at 8-12; Reply at 6-7, 11. X Corp. states that Grecco, knowing that it had a duty to preserve the data, and despite being warned numerous times through the multi-step process to deactivating an X Corp. account, deleted the account without electing to preserve the data. Motion at 7-8. In response, Grecco discusses how it had no reasonable notice that the account was relevant to the action because X Corp. did not raise its license defense or seek discovery on the account until eight months after Grecco initiated the suit. Opposition at 10, 14.

As stated, Grecco's account, which is believed to contain photos of some copyrighted material, serves as notice to Grecco that the account's data is relevant. Grecco asserts copyright infringement based upon photos posted on X Corp. 2AC ¶ 29. It is implausible to suggest that Grecco, as a sophisticated litigant who has filed over two-hundred federal copyright infringement cases over the past decade, did not realize that posts under its controlled accounts would be irrelevant to its action.[3] Motion at 1; Dkt. No. 57-7.

---

[3] At the January 15, 2026 hearing, the Court also noted that Grecco has had counsel since the inception of this action. As such, counsel and/or Grecco should have reasonably concluded that the existence of Grecco's account on the platform Grecco is suing for copyright infringement would have relevance in the matter.

Despite the clear relevance of the account data, Grecco, five months after the original complaint, deactivated the @michaelgrecco account and did not preserve or archive the data. Motion at 6; Dkt. No. 57-5 ¶ 15. As part of the deactivation process, a user is prompted, at numerous times and locations, that the user "can restore" the account and its data "for up to 30 days after deactivation," or the user can "download an archive of [the user's] data." Dkt. No. 57-5 ¶¶ 4-6, 12-15, 17-22. Instead, Grecco deactivated the account, did not restore the account, and did not download an archive of the account's data, resulting in the complete loss of the account's data. Dkt. No. 57-17 ¶¶ 32-143; Opposition at 5-6 (indicating Grecco's admission that it deactivated the accounts). Given that Grecco had reason to know the account data was material to this action, Grecco had a duty to preserve the account data, which it failed to do when it deactivated the account. Fed. R. Civ. P. 37(e); *Anheuser-Busch, Inc.*, 69 F.3d at 348. As such, Grecco failed to take reasonable preventative measures.

However, the Court finds that X Corp. also failed to act diligently in preserving the account data. Upon receipt of Grecco's DMCA takedown request, Dkt. No. 60-3, X Corp. was provided with Grecco's principal's name, Michael Grecco, and Grecco's website, www.grecco.com, Dkt. No. 57-2 ¶¶ 3-5. At that point, X Corp. could have conducted a search for accounts under Grecco or Michael Grecco. X Corp., however, did not conduct an investigation until June 2025—a year after the filing of the original Complaint and before the account was deactivated. *Id.* ¶ 3. At the January 15, 2026 hearing, X Corp. represented that a search would have been immaterial because X Corp. would not have been able to confirm any resulting accounts belonged to Grecco. This argument is unavailing as the relevant account is titled @michaelgrecco and X Corp. could have sought discovery to confirm the account then.[4] Dkt. No. 57-2 ¶ 6. In sum, the Court concludes that X Corp. failed to take reasonable steps to preserve the data.

iv.   X Corp. Is Prejudiced by the Lost Data.

---

[4] X Corp. also posits that a search would be immaterial because there are many "bot accounts with variations" of Michael Grecco's name on X Corp's platform. Motion at 14. X Corp.'s contention, however, reinforces the fact that X Corp. could have filtered out the bot accounts by confirming the real Michael Grecco account with Grecco.

X Corp. maintains that the account data is lost and cannot be replaced through additional discovery. Motion at 13-15; Reply at 12-13. As a result, X Corp. states that it has been deprived of substantiating a license defense. *Id.* at 15. Grecco explains that there is no license defense and thus, the lost data is immaterial to X Corp.'s defense.[5] Opposition at 15.

As evidenced by the remaining remnant of the @michaelgrecco account, Grecco posted copyrighted material on its controlled X Corp. account. Dkt. No. 57-3. Pursuant to X Corp.'s Terms of Service, Grecco's post provided a license to X Corp. and its users to the material. *See* X Corp.'s Terms of Service (2024), https://x.com/en/tos. Therefore, the account data potentially included material evidence substantiating a license defense.

Grecco's license defense contentions are unavailing. First, Grecco claims that X Corp. never licensed anything to users. Opposition at 15. This misreads the Terms of Service which provide that by posting the copyrighted material on its account, Grecco—not X Corp.—provided a license to X Corp. and users. *See* X Corp.'s Terms of Service (2024), https://x.com/en/tos. Second, Grecco describes how the user posts were from other sources, not from "materials Grecco actually uploaded," so there "would be no relevant license." Opposition at 15. This is contrary to the explicit evidence that the @michaelgrecco account included alleged copyrighted material. Dkt. No. 57-3. Additionally, X Corp. proffered examples of Grecco posting copyrighted photos purportedly owned by Grecco on other social media platforms such as Facebook, suggesting a common practice to upload copyrighted material to social media. *See* Dkt. No. 57-13 (showing thirty-nine examples of purported copyrighted material posted on Facebook). And the Court is not inclined to adopt Grecco's unsupported claim and declaration that the material on Grecco's controlled accounts lack relevance given that Grecco is responsible for the Court's inability to assess the account data. Reply at 13.

Accordingly, because the record establishes that the account data involved material beneficial to X Corp.'s defense—and Grecco does not assert the copyrighted photos at issue were never posted

---

[5] Grecco also claims that any prejudice to X Corp. from the lost data can be cured by "testimonial evidence from the account holder." Opposition at 20. However, given that Grecco's conduct—failing to preserve apparent material evidence and refusing to acknowledge the existence of the accounts for months—the Court does not find testimonial evidence from Grecco sufficient to cure to lost data.

on the accounts, Reply at 1-2; *see generally* Opposition—the Court finds that X Corp. is prejudiced by Grecco's failure to preserve the account data. Fed. R. Civ. P. 37(e); *Anheuser-Busch, Inc.*, 69 F.3d at 348. Prejudice to X Corp., however, is tempered by X Corp.'s own failure to diligently investigate accounts belonging to Grecco at the inception of this action and failure to preserve the data.

### B. Grecco Acted with Intent.

X Corp. asserts that Grecco acted with intent when deactivating the accounts and not preserving the accounts' data. Motion at 17; Reply at 14-16. Grecco counters, stating that the timing does not substantiate a finding of intent and presents an alternate reason for the deactivation. Opposition at 15.

The record evidence supports a finding of intent. Grecco, on its own accord, five months after filing a copyright infringement suit based on photos posted on X Corp., completed the multi-step process to deactivate its controlled accounts, bypassed numerous opportunities to preserve the data on the accounts, and neglected to acknowledge the existence of the accounts until eight months after the deactivation. Dkt. Nos. 57-5 ¶¶ 4-6, 12-15, 17-22, 57-17 ¶¶ 32-143; Opposition at 5-6. Grecco's contentions regarding timing are unpersuasive. Opposition at 15. Whether Grecco deactivated the accounts before litigation or five months after beginning litigation warrants the same finding—Grecco deliberately failed to preserve material evidence. Fed. R. Civ. P. 37(e); *Anheuser-Busch, Inc.*, 69 F.3d at 348. And Grecco's proffered alternate theory that the accounts were deactivated so Michael Grecco could "detach from Elon Musk" for political reasons are equally unavailing. Having a second legitimate reason for deactivating the accounts does not moot the first reason, especially given that Grecco is a sophisticated copyright litigant who reasonably should have known of the relevance of the accounts' data. And Michael Grecco could have politically separated from Elon Musk by deactivating the accounts without deleting the data. Reply at 8. In sum, considering the totality of the circumstances, the Court finds that Grecco intentionally failed to preserve the accounts' data. *Jones*, 95 F.4th at 735.

### C. The Court Will Not Provide the Requested Relief.

X Corp. requests that the Court issue a mandatory jury instruction regarding Grecco's intentional spoliation or render terminating sanctions. Motion at 19-20.

In *Jones*, the Ninth Circuit held that dismissal under Rule 37(e) was proper after "repeated violations of court orders even after monetary sanctions had been imposed." 95 F.4th at 736. In *Anheuser-Busch, Inc.*, the Ninth Circuit upheld a dismissal pursuant to Rule 37(e) because defendant repeatedly concealed and misrepresented to the court regarding the existence of documents. 69 F.3d at 349-50. In *Leon v. IDX Sys. Corp.*, 464 F.3d951, 958-61 (9th Cir. 2006), the Ninth Circuit approved a Rule 37(e) dismissal because plaintiff was clearly aware of the relevant evidence, the acts "were indisputably intentional," and "less drastic sanctions are not useful."

The Court also notes that there was no existing court order regarding the accounts' data prior to Grecco's deactivation. And the Court has not warned Grecco of the possibility of dismissal for spoliation. *Anheuser-Busch, Inc.*, 69 F.3d at 348. Further, although there is an implication that the accounts' data is detrimental to Grecco based on Exhibit A, Dkt. No. 57-3, but it does not appear to be equivalent to the factual circumstances in the Ninth Circuit authority relied upon by the Court.

Given each party's failure to preserve the data, the Court is not satisfied at this time that the equities warrant that a spoliation jury instruction be issued. If, however, X Corp., through discovery, uncovers evidence further substantiating Grecco's intentional conduct to destroy the data, the Court will reconsider a motion for sanctions.

Accordingly, the Court finds sanctions are not warranted under Rule 37(e)(2)(B).

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES the Motion without prejudice (Dkt. No. 57).


IT IS SO ORDERED.


Dated: April 2, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

10