Kenneth M. Trujillo-Jamison (Bar No. 280212)
ktrujillo-jamison@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, California 90017
Telephone: (213) 955-9240
Facsimile: (213) 955-9250

Zack Chibane (admitted *pro hac vice*)
zchibane@x.com
Christopher Guerriero (admitted *pro hac vice*)
cguerriero@x.com
X CORP.
249 W. 17th Street
New York, NY 10011
Telephone: (201) 228-0699

*Attorneys for Defendant X Corp., in its corporate capacity and as successor in interest to named defendant Twitter, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC., a Delaware corporation; X CORP., a Nevada corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:24-cv-04878-MEMF-AYP<br><br>**DEFENDANT X CORP.'S REPLY IN SUPPORT OF ITS MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**<br><br>**Date: June 18, 2026**<br>**Time: 10:00 a.m.**<br>**Place: Courtroom 8B**<br><br>Hon. Maame Ewusi-Mensah Frimpong |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. The Opposition Concedes That Resolution of the Questions Presented Would Materially Advance the Litigation ........ 2

B. The Opposition Confirms There Are Substantial Grounds for Difference of Opinion ........ 2

1. Whether the Contributory Liability Standard the Court Applied Survived Cox Is a Novel and Hotly Disputed Legal Question ........ 2

2. Cox Does Impact Vicarious Liability, and the Ninth Circuit's Multiple Pleading Requirements to Allege a "Direct Financial Interest" Conflict ........ 6

3. Cox Confirms Primary Copyright Liability Cannot Be Premised on a Service Provider's Failure to Act, Without More ........ 8

C. Contrary to Grecco's Protestations, Each of X Corp.'s Questions Presented Are Questions of Law Suitable for Certification ........ 10

III. CONCLUSION ........ 12

CERTIFICATE OF COMPLIANCE ........ 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahmed v. Uber Techs.. Inc..*
No. 25-cv-24834-BLOOM/Elfenbein.
2026 WL 1127460 (S.D. Fla. Apr. 27, 2026) .......... 5

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) .......... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5, 11

*BDPJ Houston, LLC v. Continental Cas. Co.*,
No. 2:10-cv-01018-TMB, 2012 WL 13018736 (D. Ariz. Dec. 27, 2012) .......... 11

*Cox Comm'cns, Inc. v. Sony Music Entm't*,
607 U.S. __, 146 S. Ct. 959 (U.S. Mar. 25, 2026) .......... passim

*Ellison v. Robertson*,
357 F.3d 1072 (9th Cir. 2004) .......... 9, 10

*Grande Commc'ns Networks, LLC v. UMG Recordings, Inc.*,
No. 24-967, 2026 WL 922501 (Apr. 6, 2026) .......... 3

*McFarlin v. Conseco Servs., LLC*,
381 F.3d 1251 (11th Cir. 2004) .......... 11

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 931 (2005) .......... 3, 5

*Nazemian v. NVIDIA Corp.*,
No. 24-cv-01454-JST, 2026 WL 1229583 (N.D. Cal. May 5, 2026) .......... 4

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017) .......... 3, 5, 8

*Ramirez v. Ghilotti Bros. Inc.*,
941 F. Supp. 2d 1197 (N.D. Cal. 2013) .......... 2

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
464 U.S. 417 (1984) .......... 7

*Sony Music Entm't v. Cox Commc'ns, Inc.*,
93 F.4th 222 (4th Cir. 2024) .......... 3, 7

*Steering Committee v. United States*,
6 F.3d 572 (9th Cir. 1993) .......... 12

*Stross v. Zillow, Inc.*,
No. 22-36000, 2023 WL 8518904 (9th Cir. Dec. 8, 2023) .......... 10

*VHT, Inc. v. Zillow Grp., Inc.*,
918 F.3d 723 (9th Cir. 2019) ....................7, 8, 9, 10

*W. Mining Council v. Watt*,
643 F.2d 618 (9th Cir. 1981) ....................8

*Waterman v. TikTok, Inc.*,
No. 2:24-cv-04802-AB-AJR, 2024 WL 5413655 (C.D. Cal. Oct. 30, 2024)........8

*Zagorsky-Beaudoin v. Rhino Entm't Co.*,
No. CV-18-03031-PHX-JAT, 2019 WL 4759788 (D. Ariz. Sep. 9, 2019)...........8

**Statutes**

28 U.S.C. § 1292(b) ....................1, 2, 10, 11, 12

**Other Authorities**

Berkeley Ctr. for L. & Tech., How Cox Communications Reshaped the Contributory Copyright Infringement Standard (Apr. 14, 2026), https://www.law.berkeley.edu/research/bclt/bclt-legal-analysis/cox-v-sonymusic/. ....................4

Morgan Armen Nercessian & Joshua M. Dalton, SCOTUS Limits Contributory Copyright Liability for Internet Service Providers, Morgan Lewis (Apr. 10, 2026), https://www.morganlewis.com/pubs/2026/04/scotus-limits-contributory-copyright-liability-for-internet-service-providers....................5

Supreme Court Confirms Limits on Contributory Liability for Copyright Infringement, Cooley LLP (Mar. 26, 2026), https://www.cooley.com/news/insight/2026/2026-03-26-supreme-court-confirms-limits-on-contributory-liability-for-copyright-infringement....................5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Opposition[1] does not seriously dispute that *Cox* altered the landscape for contributory copyright liability. Nor can it. The consensus of practitioners, academics, and courts alike is that it did. Instead, the Opposition simply endorses the Order's relegation of *Cox* to a footnote. But the purported factual distinction both understates *Cox*'s impact and fails on its own terms. *Cox* clarified a *new* legal standard for contributory copyright liability that *prohibits* liability based on "knowledge of infringement and insufficient action to prevent it." *Cox Comm'cns, Inc. v. Sony Music Entm't,* 607 U.S. __, 146 S. Ct. 959, 963 (U.S. Mar. 25, 2026). The Ninth Circuit's "actual knowledge and material contribution" standard *permits* liability for precisely that, as the Order held here. Order at 7–8. The Opposition is also wrong that *Cox* has no impact on vicarious or direct liability. Opp. at 2. *Cox* casts doubt over whether allegations that now fail for purposes of contributory liability can suffice for purposes of vicarious liability, and permitting direct liability for actions X Corp. cannot even be held contributorily liable for would stand *Cox* on its head.

The Opposition also confirms that all three Section 1292(b) factors weigh in favor of X Corp. First, there is no dispute that resolution of the questions presented would materially advance the litigation: resolution of any one of the questions presented would be claim dispositive; resolution of all three would terminate the case entirely. Second, there are substantial grounds for a difference of opinion on all three questions. Indeed, the Order is an outlier in its treatment of *Cox*. Third, all

---

[1] The "Opposition" refers to Plaintiff's Opposition to Defendant X Corp.'s Motion for Certification of Interlocutory Appeal under 28 U.S.C. § 1292(b). [Dkt. No. 77.] All other capitalized terms not otherwise defined herein shall have the meaning ascribed to them in Defendant X Corp.'s Motion for Certification of Interlocutory Appeal under 28 U.S.C. § 1292(b) [Dkt. No. 75; the "Opening Brief" or "Opening Br."].

three questions presented are purely legal disputes. Contrary to the Opposition's characterization, the questions do not "quibble[] with the" facts. Opp. at 7. Instead, they ask whether the legal standards for copyright liability in the Ninth Circuit have changed in light of *Cox*. They likely have.

## II. <u>ARGUMENT</u>

### A. The Opposition Concedes That Resolution of the Questions Presented Would Materially Advance the Litigation

As the Opening Brief explained, resolution of any one of the questions presented would be claim-dispositive; resolution of all three would terminate the case entirely. Opening Br. at 3. Certification would allow quick resolution of the three threshold legal questions presented and preserve the resources of the parties and the Court, rather than require the parties to potentially labor under incorrect legal standards through summary judgment and trial. Other than a single, bare assertion that "X Corp.'s arguments regrading [sic] advancement of the termination of this litigation are unfounded" (Opp. at 5), the Opposition advances no counterargument on this point. The Opposition's silence concedes the point. *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 n.8 (N.D. Cal. 2013) (collecting cases holding that a party conceded an argument by failing to respond to it).

### B. The Opposition Confirms There Are Substantial Grounds for Difference of Opinion

#### *1. Whether the Contributory Liability Standard the Court Applied Survived Cox Is a Novel and Hotly Disputed Legal Question*

The Opening Brief explained why *Cox* imperiled the "actual knowledge and material contribution" standard that the Court applied in its Order, and why the fate of that standard post-*Cox* presents the exact "substantial ground for difference of opinion" that Section 1292(b) was designed to address. Opening Br. at 9–12. *Cox* reversed the Fourth Circuit for finding liability "based only on its Circuit precedent

establishing a new form of contributory liability" that "went beyond the two forms of liability recognized in *Grokster* and *Sony*."[2] *Cox* clarified that contributory liability lies only if "[t]he provider of a service . . . *intended* its service to be used for infringement." *Cox*, 146 S. Ct. at 964 (emphasis added). The Supreme Court explained that the Fourth Circuit's standard conflicted with the Supreme "Court's repeated admonition that contributory liability cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it." *Cox*, 146 S. Ct. at 963.

*Cox* applies squarely here. The Order applied the Ninth Circuit's "actual knowledge and material contribution" standard and held the SAC sufficient based solely on alleged knowledge and allegations "that Twitter could have taken 'simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works.'" Order at 7–8 (quoting *Perfect 10, Inc. v. Giganews, Inc*., 847 F.3d 657, 671 (9th Cir. 2017)). Like in *Cox*, the Ninth Circuit's standard is found nowhere in *Grokster* or *Sony,* and its application here—sustaining pleadings based simply on alleged "knowledge" and "insufficient action to prevent it"—permits precisely the same result *Cox* expressly prohibited. *Cox*, 146 S. Ct. at 963.

As the Motion highlighted (and the Opposition ignored), *Cox*'s impact on Circuit contributory liability precedent has already reared its head: the Supreme Court vacated and remanded a Fifth Circuit decision that endorsed the "simple measures" standard the Court applied. Opening Br. at 10 (citing *Grande Commc'ns Networks, LLC v. UMG Recordings, Inc.*, No. 24-967, 2026 WL 922501 (Apr. 6, 2026)). The Ninth Circuit's "actual knowledge and material contribution" standard

---

[2] "*Grokster*" refers to *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 931 (2005). "*Sony*" refers to *Sony Corp. of Am. v. Univ. City Studios, Inc.*, 464 U.S. 417 (1984).

has only been undermined further since. After supplemental briefing and a hearing on "the impact of [*Cox*] on Plaintiffs' contributory infringement claim," Judge Tigar announced the following standard, which tracks *Cox* and omits any reference to "actual knowledge and material contribution" or "simple measures to prevent" infringement:

> To state a claim for contributory infringement, Plaintiffs must plausibly allege that NVIDIA (1) had knowledge of a third party's infringement; and (2) induced that infringement or provided a service that was tailored to that infringement . . . [t]he provider of a service is contributorily liable for the user's infringement only if it intended that the provided service be used for infringement. The intent required for contributory liability can be shown only if the party induced the infringement or the provided service is tailored to that infringement.

*Nazemian v. NVIDIA Corp.,* No. 24-cv-01454-JST, 2026 WL 1229583, at *5 (N.D. Cal. May 5, 2026) (citations omitted); *contra* Order at 7–8 (citation omitted). Professor Pam Samuelson put it bluntly:

> [T]he Ninth Circuit Court of Appeals said that there was contributory liability if you fail to take simple measures to prevent infringement, I think that's no longer going to be a viable precedent. I think that it doesn't match up with the the [sic] kind of the patent standards that the [Supreme] [C]ourt endorsed, and it doesn't, it's not clear what it's going to mean for vicarious infringement.

Berkeley Ctr. for L. & Tech., How Cox Communications Reshaped the Contributory Copyright Infringement Standard (Apr. 14, 2026), https://www.law.berkeley.edu/research/bclt/bclt-legal-analysis/cox-v-sonymusic/. Industry commentators reached the same conclusion. Morgan Lewis, citing *Giganews*, explained that the Ninth Circuit and others had "establishe[d] contributory liability standards of their own, independent of inducement" and that *Cox* "displaces [those] standards that impose liability based on knowledge of infringement coupled with a failure to act." Morgan Armen Nercessian & Joshua M. Dalton, SCOTUS Limits Contributory Copyright Liability for Internet Service

Providers, Morgan Lewis (Apr. 10, 2026), https://www.morganlewis.com/pubs/2026/04/scotus-limits-contributory-copyright-liability-for-internet-service-providers; *see also* Supreme Court Confirms Limits on Contributory Liability for Copyright Infringement, Cooley LLP (Mar. 26, 2026), https://www.cooley.com/news/insight/2026/2026-03-26-supreme-court-confirms-limits-on-contributory-liability-for-copyright-infringement (explaining that *Giganews* "went a step further" than *Grokster* and *Sony* and that "the *Cox* decision rejects such expansion of the doctrine of contributory infringement"). And another court interpreting the impact of *Cox* held that "[e]ven if Plaintiffs had alleged 'insufficient action to prevent [infringement],' the Supreme Court has expressly stated that this would be insufficient to establish contributory liability." *Ahmed v. Uber Techs., Inc.*, No. 25-cv-24834-BLOOM/Elfenbein, 2026 WL 1127460, at *8 (S.D. Fla. Apr. 27, 2026) (citing *Cox*, 146 S. Ct. at 969).

For its part, Grecco never really contests that *Cox* dramatically changes the landscape for contributory copyright liability. It does. Instead, the Opposition's counterarguments confirm the propriety of interlocutory review. First, the Opposition tries to remedy the Order and argues that the Court did not solely rely on the Ninth Circuit's "actual knowledge and material contribution" standard. Opp. at 11 (quoting Order at 8). But the Court did, and the Opposition concedes as much by citing the Court's holding verbatim (complete with citation to *Giganews*) in the very next sentence. *Id*. Second, the Opposition recasts whether the "actual knowledge and material contribution" standard survived *Cox* as a mere "factual quibble," only to argue the legal import of *Cox* a few sentences later. But the dispute here is not about what the facts may be; rather, it is about the application of a legal standard to the facts alleged in the complaint, which is a purely legal question. *See Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009) ("Evaluating the sufficiency of a complaint is not a 'fact-based' question of law . . . ."). Plaintiff's

insistence that his claims survive under the *Cox* standard[3] proves the point—the critical legal question worthy of interlocutory review is whether the Ninth Circuit's contributory liability standard remains good law after *Cox*.

In any event, the purported "factual" distinction the Order drew to dispose of *Cox* finds no support in the cases themselves. The Order held that *Cox* was distinguishable because Grecco "submitted numerous DMCA takedown requests" and "Twitter . . . took no action to remove the infringing materials" (Order at 8 n.5), but the allegations in this case are actually *more* favorable to X Corp. than they were to the defendant in *Cox*. The defendant in *Cox* received "163,148" infringement notices from the plaintiff and "terminated only 32 subscribers." *Cox*, 146 S. Ct. at 965–66, and the SAC alleges X Corp. removed a greater portion of the noticed Grecco images than did the defendant in *Cox*, SAC ¶¶ 16, 20.

*2. Cox Does Impact Vicarious Liability, and the Ninth Circuit's Multiple Pleading Requirements to Allege a "Direct Financial Interest" Conflict*

The Opposition contends that *Cox* is irrelevant to vicarious liability because it was a decision about contributory liability. Opp. at 2. But the Opposition fails to grapple with a fundamental point: its argument would effectively render *Cox* a dead letter. *Cox* held that "contributory liability cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it." *Cox*, 146 S. Ct. at

---

[3] While the Opposition tries to fit the SAC into *Cox*'s new contributory liability framework and argues that Defendant "recklessly intended for its services to be used by its users notwithstanding copyright infringement" and that its platform is "tailored for infringement[,]" the Order held the opposite. *See* Order at 9 ("Inducement, the distribution of 'a device with the object of promoting its use to infringe copyright,' is not sufficiently alleged in the 2AC . . . . the assertions are conclusory and do not address how Twitter's failure to address the DMCA takedown requests substantiate Twitter's objective in promoting the infringing content . . . . the failure to remove does not speak to an objective to promote." (citations omitted).

963. But the Order held that Grecco's allegations that "Twitter could have removed the content from its platform"—the very standard *Cox* rejected—sufficed to meet the "right and ability to supervise the infringing conduct" prong of the Ninth Circuit's vicarious liability test. Order at 10; *id.* at 9 (citing *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019)). If knowledge and insufficient action suffice for *vicarious* liability, as the Order held, then the very same copyright liability standard that the Supreme Court rejected would merely be resurrected under a different label, and the *Cox* decision would be rendered meaningless. That cannot be, and the history of *Cox* confirms that was not the Supreme Court's intent: it denied review of the portion of the Fourth Circuit's decision that Cox was not vicariously liable and left that holding intact. 146 S. Ct. at 966; *Sony Music Entm't v. Cox Commc'ns, Inc.*, 93 F.4th 222, 232–33 (4th Cir. 2024); *cf. Sony*, 464 U.S. 417, 435 n.17 ("[T]he lines between direct infringement, contributory infringement and vicarious liability are not clearly drawn").

There are also substantial grounds for a difference of opinion on whether the "direct financial interest" prong is satisfied here. Order at 9–10. As the Opposition concedes, all Grecco alleged is: (1) X Corp., generally and "on information and belief," "has generated revenue through its social media platform" and that "website traffic translates into substantial ill-gotten commercial advantage and revenue generation . . . as a direct consequence of [its] infringing actions" (Opp. at 13; SAC ¶ 27); and (2) "Defendants have received substantial benefits in connection with the unauthorized reproduction, distribution, and utilization of the Photos for purposes of trade, including by increasing the traffic to their websites and use of their services" (SAC ¶ 131). Based on those allegations the Court held "that Grecco has adequately asserted a direct financial interest." Order at 10. But "the direct financial benefit prong of the vicarious infringement test 'demands more than evidence that customers were 'drawn' to [defendant] to obtain access to infringing material in general.'" *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657,

673 (9th Cir. 2017) (citation omitted). And courts should not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). The SAC offers nothing more, and other courts in this district have dismissed copyright complaints based on similarly deficient allegations. *See, e.g.*, *Waterman v. TikTok, Inc.*, No. 2:24-cv-04802-AB-AJR, 2024 WL 5413655, at *5 (C.D. Cal. Oct. 30, 2024) (dismissing claims because "vague and conclusory" allegation of increased traffic "does not allege any relationship between the infringing activity and the alleged increased traffic TikTok experienced by the Photos existing on TikTok's platform" or "how increased traffic establishes a financial interest or how this alleged infringement has created increased traffic on TikTok's platform"); *Zagorsky-Beaudoin v. Rhino Entm't Co.*, No. CV-18-03031-PHX-JAT, 2019 WL 4759788, at *9 (D. Ariz. Sep. 9, 2019) ("The Complaint includes no factual allegations that the listing of the *All Night Long* track on Defendant eBay's site affected Defendant eBay's user base in any way, and thus, Plaintiff has not alleged facts that Defendant eBay had a direct financial interest in others' alleged direct infringement of her copyright.").

### *3.* Cox *Confirms Primary Copyright Liability Cannot Be Premised on a Service Provider's Failure to Act, Without More*

As explained in the Opening Brief, the Order's holding that primary copyright liability can be premised on a neutral platform's failure to act in response to alleged infringement by third-party users presents substantial grounds for difference of opinion in light of *Cox*. Opening Br. at 16–19. The Ninth Circuit has long held that direct infringement requires "active" involvement in the infringement by the defendant. *VHT, Inc.*, 918 F.3d at 732. This is because "[t]o prove a claim of direct copyright infringement," plaintiff must show that "*the defendant himself* violated one or more of the plaintiff's exclusive rights under the Copyright Act." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)

(emphasis added). "Most of the time [volitional conduct] will come down to *who selects the copyrighted content: the defendant or its customers*." *Id*. (emphasis added). For a neutral internet platform like X, it is undisputed that *third-party* users select and upload content, not the platform itself. The Supreme Court reinforced this principle in *Cox* by holding that even *secondary* liability "cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it." 146 S. Ct. at 969. If knowledge plus insufficient action cannot establish *secondary* liability under *Cox*, it cannot possibly satisfy the higher threshold for primary liability based on direct infringement. The Order's holding to the contrary—that by passively "*allow[ing]* the alleged infringing material to remain on its platform," Twitter can be *primarily* liable for direct infringement—thus presents substantial grounds for difference of opinion. Order at 6–7 (emphasis added).

The Opposition does not contest that "active" involvement is required for direct infringement. Opp. at 7–9. Instead, it misstates the Order, reimagines the allegations, and misapplies the law. First, the Opposition claims—without citation—that the Order "made clear that implementing a policy that knowingly refuses to comply with the DMCA constitutes 'volitional conduct.'" *Id*. at 7–8. The Order says no such thing. *See generally* Order (no mention of any "policy" at X or elsewhere). Even if the Order had addressed such a policy, its existence would do nothing to demonstrate "active" involvement in the infringement, as required by *VHT*. Second, the Opposition confuses the elements of direct infringement by claiming X's "maintain[ing] the ability to terminate accounts of repeat infringers" supports direct infringement. Opp. at 7–8. But the ability (or lack thereof) to terminate repeat infringers—an element of the DMCA safe harbor—has nothing to do with direct infringement, which requires action by the defendant. *See* Order at 4 (listing the three elements of direct infringement). As the Supreme Court explained in *Cox*, the DMCA does not "impose[] liability for Internet service providers who serve known infringers. . . . The DMCA merely creates new *defenses* from liability

for such providers." *Cox*, 146 S. Ct. at 969. Indeed, "the DMCA made clear that failure to comply with the safe-harbor rules 'shall not bear adversely upon . . . a defense by the service provider that the service provider's conduct is not infringing.'" *Id.* (citation omitted). Third, the Opposition attempts to distinguish *Cox* on the grounds that X "makes money on each infringement" posted to its platform, while Cox did not. Opp. at 9. As explained above, this revenue theory appears nowhere in the SAC and should therefore be disregarded. More fundamentally, "financial benefit," let alone the purported indirect financial benefit the Opposition refers to, is not an element of direct infringement at all. Order at 4.

At bottom, the Opposition has no answer to the overwhelming authority requiring that a plaintiff plead "active" involvement by a neutral service provider in the infringement of its third-party users. *See, e.g., VHT*, 918 F.3d at 732; *Cox*, 146 S. Ct. at 966; *Ellison*, 357 F.3d at 1076; *see also Stross v. Zillow, Inc.*, No. 22-36000, 2023 WL 8518904 (9th Cir. Dec. 8, 2023) (affirming dismissal of direct infringement claim premised on Zillow's passive failure "to control the photographs on its system" because such a failure to act theory is "squarely foreclosed by *VHT*."). Thus, the Order's holding that primary liability for direct infringement can be premised on a service provider's failure to act conflicts with ample case law in this Circuit and supplies significant grounds for difference of opinion.

### C. Contrary to Grecco's Protestations, Each of X Corp.'s Questions Presented Are Questions of Law Suitable for Certification

Finally, Grecco is wrong that X Corp.'s questions presented are questions of fact not suitable for certification for appeal under Section 1292(b). Opp. at 5–9. "Interlocutory appeal [under Section 1292(b)] is appropriate only if the order subject to appeal involves a 'controlling question of law.'" *BDPJ Houston, LLC v. Continental Cas. Co.*, No. 2:10-cv-01018-TMB, 2012 WL 13018736, at *2 (D. Ariz. Dec. 27, 2012) (citation omitted). Although "the Ninth Circuit has not

precisely defined 'question of law'. . . in the context of § 1292(b), the term 'question of law' means an abstract legal issue . . . ." *Id.; see also id.* n.22 (citing *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) (a "question of law" means "an abstract legal issue" that can be decided without delving into the facts of the case)); *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004) ("what the framers of § 1292(b) had in mind is more of an abstract legal issue," meaning that an appellate court "can decide quickly and cleanly without having to study the record").

Each of X Corp.'s questions seeks resolution of an "abstract legal issue" based on the allegations in Grecco's complaint—pure legal questions, as discussed above. *See Iqbal*, 556 U.S. at 674. X Corp.'s first question asks whether the Ninth Circuit's "actual knowledge and material contribution" standard survived the Supreme Court's holding in *Cox* that "[t]he provider of a service is contributorily liable for the user's infringement *only if it intended that the provided service be used for infringement*." Opening Br. at 1 (emphasis added). X Corp.'s second question likewise asks the Ninth Circuit to decide "[w]hether, in light of *Cox*, allegations that a general-purpose social media provider failed to take down allegedly infringing content in response to takedown notices and conclusions that it gained 'substantial ill-gotten commercial advantage and revenue generation' from infringement" suffice to state a vicarious liability claim. *Id.* (emphasis added). Finally, X Corp.'s third question likewise asks "[w]hether, in light of *Cox*, primary (direct) copyright liability can be premised on a general-purpose social media platform's passive hosting and display of third-party user-uploaded content after receiving DMCA takedown notices, without any allegation that the platform ever actively selected, posted, promoted or exercised direction over the allegedly infringing content." *Id.* (emphasis added). In short, each of these questions seeks to have the Ninth Circuit clarify its existing case law on contributory, vicarious, and direct infringement liability in light of *Cox*. Thus, each of these questions pose

"abstract legal issues" that are suitable for certification of interlocutory appeal under Section 1292(b).[4]

The Opposition's retort that the Motion raises "Questions of Fact—Not Law" (Opp. at 5) misses the mark. The Motion does not "attempt[] to recharacterize the facts of this case"; those alleged facts are set forth in the SAC. Opp. at 6. Rather, it is the Opposition that "attempts to recharacterize" (Opp. at 6) the Motion as raising factual questions where it raises only legal ones. The narrow legal questions presented in this Motion are whether and how the standards for contributory, vicarious and direct infringement liability are impacted by the Supreme Court's landmark *Cox* decision. Despite his attempt to confuse the issues, Grecco inadvertently admits as much. Opp. at 7 (arguing that "*Cox* was expressly not even a vicarious liability case"); Opp. at 8 (for direct liability, arguing that *"Cox* is inapposite to any grand sweeping change here").

## III. CONCLUSION

For these reasons and those set forth in the Opening Brief, the Motion raises important legal questions on the scope of contributory, vicarious, and direct liability in light of *Cox*. The Court should therefore certify the three questions presented for interlocutory appeal under 28 U.S.C. § 1292(b).

Respectfully submitted,

Dated: May 27, 2026

WILLENKEN LLP

By: */s/ Kenneth M. Trujillo-Jamison*
Kenneth M. Trujillo-Jamison
*Attorneys for Defendant X Corp., in its corporate capacity and as successor-in-*

---

[4] Furthermore, certification is appropriate even if the Court determines that one or more of X Corp.'s questions is not a "pure legal question." *See Steering Committee v. United States*, 6 F.3d 572, 575 (9th Cir. 1993). The Ninth Circuit has long "held that the presence of a pure legal question permits the court to resolve all questions material to the order." *Id.* at 576.

*interest to named defendant Twitter, Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendant X Corp., in its corporate capacity and as successor in interest to named defendant Twitter, Inc., certifies that this brief contains 3,824 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 27, 2026 WILLENKEN LLP

By: */s/ Kenneth M. Trujillo-Jamison*
Kenneth M. Trujillo-Jamison
*Attorneys for Defendant X Corp., in its corporate capacity and as successor in interest to named defendant Twitter, Inc.*