Kenneth M. Trujillo-Jamison (Bar No. 280212)
ktrujillo-jamison@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, California 90017
Telephone:  (213) 955-9240
Facsimile:   (213) 955-9250

Zack Chibane (admitted *pro hac vice*)
zchibane@x.com
Christopher Guerriero (admitted *pro hac vice*)
cguerriero@x.com
X CORP.
249 W. 17th Street
New York, NY 10011
Telephone:  (201) 228-0699

*Attorneys for Defendant X Corp., in its*
*corporate capacity and as successor in interest*
*to named defendant Twitter, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC., a Delaware corporation; X CORP., a Nevada corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:24-cv-04878-MEMF-AYP<br><br>**DEFENDANT X CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date:   September 10, 2026**<br>**Time:   8:30 a.m.**<br>**Place:   Courtroom 9D**<br><br>Hon. George H. Wu |

**TO THE CLERK OF THE ABOVE-TITLED COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE THAT, on September 10, 2026, at 8:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 9D of the above-titled Court, located at 350 West 1st Street, Los Angeles, California 90012, Defendant X Corp. ("X"), in its corporate capacity and as successor in interest to named defendant Twitter, Inc., will, and hereby does, move to dismiss the Fourth Amended Complaint (Dkt. No. 95-1; "4AC") filed by Plaintiff Michael Grecco Productions, Inc. ("Grecco") under Fed. R. Civ. P. 12(b)(6) for failure to state claims for direct, contributory, or vicarious copyright infringement, and because claims based on forty-one photographs are time-barred under 17 U.S.C. § 507(b).

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Eric Pitty and exhibits thereto, the Declaration of Kenneth M. Trujillo-Jamison and exhibits thereto, all pleadings and papers on file in this matter and/or incorporated by reference, and upon such matters as may be subject to judicial notice or presented to the Court at the time of hearing or otherwise.

This motion is made following the meet and confer of counsel under L.R. 7-3, which took place by videoconference on July 31, 2026, during which counsel discussed the substance of this motion and any potential resolution. Declaration of Kenneth M. Trujillo-Jamison ¶ 2. That meet and confer did not resolve the issues raised in this motion. *Id.*

Respectfully submitted,

Dated:  August 7, 2026           WILLENKEN LLP

By: */s/ Kenneth M. Trujillo-Jamison*
Kenneth M. Trujillo-Jamison
*Attorneys for Defendant X Corp., in its corporate capacity and as successor in interest to named defendant Twitter, Inc.*

1

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

## <u>**TABLE OF CONTENTS**</u>

<u>Page</u>

I. INTRODUCTION ...................................................................................... 1

II. BACKGROUND .........................................................................................3

    A. Grecco's First Three Complaints and X's Rule 12(c) Motion ............3

    B. *Cox* Narrows Secondary Copyright Liability .......................................3

    C. The Prior Order Dismisses Thirty-Eight Time-Barred Photographs and Grants Limited Leave to Amend Allegations as to Those Photographs .................................................................................3

    D. The TAC Finally Reveals X Promptly Responded to Grecco's Takedown Notices, and the Court Dismisses Grecco's Contributory Claim ...........................................................................4

    E. The Fourth Amended Complaint .......................................................5

III. LEGAL STANDARD ................................................................................6

IV. ARGUMENT ..............................................................................................6

    A. Grecco's Direct Infringement Claim Fails, Considering Its Continued Failure to Plead Volitional Conduct...................................6

    B. Grecco's Failure to Plead Any Intent to Infringe Defeats Contributory Liability Under *Cox*.......................................................11

        1. The 4AC Re-Pleads Only Knowledge and Inaction.................11

        2. Grecco's New Allegations Only Confirm Its Inability to Plead Intent ............................................................................12

        3. The 4AC Pleads No "Tailored to Infringement" Facts ............14

    C. Grecco Fails to Plausibly Allege Vicarious Infringement..................15

        1. Grecco Still Fails to Plead Any Direct Financial Interest ........15

        2. Grecco Also Cannot Plead the Right and Ability to Supervise..................................................................................17

    D. Forty-One Photographs Are Time-Barred, and Grecco Has Again Pleaded No Basis for Tolling..................................................19

    E. Dismissal Should Be with Prejudice..................................................21

V. CONCLUSION ........................................................................................22

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*A&M Records, Inc. v. Napster, Inc.,*
239 F.3d 1004 (9th Cir. 2001) ....................................................................................15

*Art Records LLC v. YouTube LLC,*
2026 WL 1669167 (N.D. Cal. June 9, 2026) ....................................1, 8, 9, 10, 13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..........................................................................................6, 7, 14

*Barnes v. Sanchez,*
2026 WL 1912085 (N.D. Cal. July 2, 2026) ............................................................15, 16

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..........................................................................................6, 13

*Bluprint Clothing Corp. v. Chico's Fas, Inc.,*
2024 WL 3914469 (C.D. Cal. July 23, 2024) ..............................................................20

*Cox Commc'ns, Inc. v. Sony Music Ent.,*
146 S. Ct. 959 (2026) ....................................................1, 2, 3, 7, 8, 11, 13, 15, 18

*Daniels-Hall v. Nat'l Educ. Ass'n,*
629 F.3d 992 (9th Cir. 2010) ....................................................................................6

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.,*
365 U.S. 127 (1961) ..........................................................................................13

*Ellison v. Robertson,*
357 F.3d 1072 (9th Cir. 2004) ....................................................................15, 16, 17

*Foman v. Davis,*
371 U.S. 178 (1962) ..........................................................................................22

*Harrison v. Facebook, Inc.,*
816 F. App'x 228 (9th Cir. 2020) ....................................................................................9

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.,*
__ U.S. __, 146 S. Ct. 1391 (2026) ................................................................7, 13, 14

*In re Century Aluminum Co. Sec. Litig.,*
729 F.3d 1104 (9th Cir. 2013) ....................................................................................7

*In re Napster, Inc. Copyright Litig.,*
2005 WL 289977 (N.D. Cal. Feb. 3, 2005) ..............................................................19

*Karth v. Keryx Biopharmaceuticals, Inc.,*
6 F.4th 123 (1st Cir. 2021) ..........................................................................................6

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

*Kendall v. Visa U.S.A.. Inc..*
  518 F.3d 1042 (9th Cir. 2008) ...................................................................................19

*Leadsinger, Inc. v. BMG Music Publ'g,*
  512 F.3d 522 (9th Cir. 2008) ....................................................................................22

*Long v. Dorset,*
  854 F. App'x 861 (9th Cir. 2021) ........................................................................7, 8, 9

*Luvdarts, LLC v. AT&T Mobility, LLC,*
  710 F.3d 1068 (9th Cir. 2013) .............................................................................7, 8, 9

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
  545 U.S. 913 (2005)..................................................................................................11

*Michael Grecco Prods. v. BDG Media, Inc.,*
  2019 WL 13128605 (C.D. Cal. Nov. 21, 2019) ......................................................21

*Michael Grecco Prods., Inc. v. BDG Media, Inc.,*
  834 F. App'x 353 (9th Cir. 2021) .............................................................................21

*Michael Grecco Prods. v. Livingly Media,*
  No. 2:20-cv-00151-DSF-JC (C.D. Cal.)...................................................................20

*Michael Grecco Prods. v. Livingly Media,*
  2021 WL 2546759 (C.D. Cal. Apr. 16, 2021) ..........................................................20

*Michael Grecco Prods. v. Valuewalk LLC,*
  345 F. Supp. 3d 482 (S.D.N.Y. 2018) ......................................................................20

*Michael Grecco Prods.. Inc. v. Ziff Davis. LLC,*
  No. 2:19-cv-04776-DSF-JC (C.D. Cal.)...................................................................20

*Michael Grecco Prods., Inc. v. Ziff Davis, LLC,*
  2021 WL 6618863 (C.D. Cal. Sep. 8, 2021) ............................................................20

*Perfect 10, Inc. v. Amazon.com, Inc.,*
  508 F.3d 1146 (9th Cir. 2007) ...............................................................9, 15, 17, 18

*Perfect 10, Inc. v. Giganews, Inc.,*
  847 F.3d 657 (9th Cir. 2017) .................................................................................7, 16

*Petrella v. Metro-Goldwyn-Mayer, Inc.,*
  572 U.S. 663 (2014)..................................................................................................20

*Schneider v. YouTube, LLC,*
  649 F. Supp. 3d 872 (N.D. Cal. 2023)........................................................................7

*Sony Music Ent. v. Cox Commc'ns, Inc.,*
  93 F.4th 222 (4th Cir. 2024) .....................................................................................12

*Sosa v. DIRECTV, Inc.,*
  437 F.3d 923 (9th Cir. 2006) ....................................................................................13

*Stross v. Twitter, Inc.,*
  2022 WL 1843142 (C.D. Cal. Feb. 28, 2022) ............................................................9

iii

*Twitter, Inc. v. Taamneh,*
   598 U.S. 471 (2023)..................................................................................................14

*United Mine Workers of Am. v. Pennington,*
   381 U.S. 657 (1965)..................................................................................................13

*Ventura Content, Ltd. v. Motherless, Inc.,*
   885 F.3d 597 (9th Cir. 2018) .....................................................................................18

*VHT, Inc. v. Zillow Grp, Inc.,*
   918 F.3d 723 (9th Cir. 2019) .................................................1, 2, 7, 8, 9, 15, 18

*Waterman v. Twitter, Inc.,*
   No. 2:24-cv-04881-SRM-PD (C.D. Cal. Aug. 3, 2026).........................1, 8, 16, 18

*Wolf v. Travolta,*
   167 F. Supp. 3d 1077 (C.D. Cal. 2016) ...................................................................20

**Statutes**

17 U.S.C. § 106.............................................................................................................7

17 U.S.C. § 412(2).......................................................................................................21

17 U.S.C. § 507(b) .........................................................................................................1

17 U.S.C. § 512(c)(3)(A)(ii) ..........................................................................................5

17 U.S.C. § 512(c)(3)(B)(ii) ..........................................................................................9

17 U.S.C. § 512(l)...........................................................................................................8

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................1

Fed. R. Civ. P. 12(c) ......................................................................................................3

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Michael Grecco Productions, Inc. ("Grecco") is a professional copyright plaintiff with more than 250 federal cases under its belt.[1] This is Grecco's *fifth* complaint against X Corp. ("X") in two years. When the Court permitted this final amendment, it warned "this will be the last opportunity to amend" and that any new allegations "should be made with the Court's guidance in mind." Grecco's 4AC ignores that guidance. Grecco's claims still rest on the same defective theory of passive copyright liability based on inaction: that X is liable for third-party posts on its platform because it did not immediately remove those posts after receiving deficient takedown notices it promptly responded to. Grecco's theory fails several times over, as this Court just held in *Waterman v. Twitter, Inc.*, which dismissed materially identical direct, contributory, and vicarious infringement claims against X—pleaded from the same template, by the same counsel, and filed on the same day as this case. No. 2:24-cv-04881-SRM-PD (C.D. Cal. Aug. 3, 2026), Dkt. No. 65 (C.D. Cal. Aug. 3, 2026); *id.*, Dkt. No. 1 (C.D. Cal. June 10, 2024).

*First*, Grecco's direct infringement claim fails because Grecco has now conceded its own theory of liability. That claim twice survived on a single allegation: that X "simply ignored" Grecco's takedown notices and "took no action" in response to takedown notices—the very ground on which this Court distinguished *Cox Communications, Inc. v. Sony Music Entertainment*, 146 S. Ct. 959 (2026) ("*Cox*"), *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723 (9th Cir. 2019) ("*VHT*"), and *Art Records LLC v. YouTube LLC*, 2026 WL 1669167 (N.D. Cal. June 9, 2026) ("*Art Records*"). Dkt. No. 70; Dkt. No. 91 n.7. Grecco finally admits that allegation was false all along. In fact, X promptly responded to Grecco's

---

[1] See Declaration of Kenneth M. Trujillo-Jamison ("Trujillo-Jamison Decl.") Ex. A (Party Search on PACER for "Michael Grecco" as Plaintiff yields 253 federal cases).

takedown notices by requesting basic information required by the DMCA—*it did so 139 times, but Grecco ignored every request*. Under the very Ninth Circuit authority on which this Court relied, X's prompt responses "can hardly be characterized as rising to the level of volitional conduct." *VHT*, 918 F.3d at 724.

*Second*, Grecco's contributory infringement claim returns weeks after the Court dismissed it under *Cox*. Unable to satisfy the Supreme Court's new intent requirement, Grecco doubles down on the same standard *Cox* abrogated while adding two social media posts by Elon Musk and Jack Dorsey that either pre-date Mr. Musk's ownership of Twitter/X or post-date nearly every alleged infringement and in any event are constitutionally protected public policy and legislative observations. Grecco's continued failure to plead any facts suggesting X "actively encourage[d] infringement through specific acts" requires dismissal of its contributory infringement claim as a matter of law. *Cox*, 146 S. Ct. at 967.

*Third*, Grecco's vicarious infringement claim suffers the same fate. The Court was already "inclined to agree" that Grecco's financial-interest allegations "may be insufficient" to demonstrate the required causal relationship between the alleged infringement and any direct financial benefit X received. Dkt. No. 91 at 10. Grecco responds with generalized platform-wide advertising statistics and a 2022 SEC filing that only confirm its failure to plead vicarious liability.

*Finally*, thirty-seven of the thirty-eight time-barred works the Court already dismissed return for a third time without a *single* allegation of diligence sufficient to invoke the discovery rule, joined by four brand new works whose infringement dates are also facially untimely. The discovery rule cannot save claims identified using the same search tools Grecco has used professionally for **eleven years** to file more than **250 federal lawsuits**.

Enough is enough. If Grecco had facts showing volitional conduct (direct infringement), intent to infringe (contributory), or direct financial benefit (vicarious), it would have pleaded them by now. The parties spent a full year in

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

discovery, producing tens of thousands of documents that Grecco has mined for any scrap of support for its claims. On its fifth try in two years, all Grecco can muster is a case-dispositive admission that X responded to its notices to request more information—responses Grecco ignored 139 times—two social-media posts, and an SEC filing describing how every ad-supported platform earns revenue.

Grecco's 4AC should be dismissed with prejudice.

## II.  BACKGROUND

### A.  Grecco's First Three Complaints and X's Rule 12(c) Motion

A serial copyright litigant, Grecco has policed alleged infringement of its photographs with reverse-image search tools since at least 2015 and has sued other defendants over some of the same photographs at issue here. *See supra* nn. 1, 11. Grecco sued X on June 10, 2024, alleging that third-party users—not X—posted its decades-old photographs, but that X is liable because it did not immediately remove those posts. Dkt. Nos. 1, 12. The Second Amended Complaint ("2AC") expanded the case to 111 photographs, and X moved for judgment on the pleadings. Dkt. Nos. 30, 41.

### B.  *Cox* Narrows Secondary Copyright Liability

On March 25, 2026, after the parties completed discovery, the Supreme Court issued its landmark *Cox* ruling on secondary copyright infringement. As discussed below, *Cox* held a service provider "is contributorily liable for the user's infringement ***only if it intended that the provided service be used for infringement.***" 146 S. Ct. at 967 (emphasis added).

### C.  The Prior Order Dismisses Thirty-Eight Time-Barred Photographs and Grants Limited Leave to Amend Allegations as to Those Photographs

Six days later, the Court dismissed Grecco's claims as to thirty-eight time-barred works with leave to amend allegations *only* as to those photographs because Grecco "does not assert the discovery rule or an alternative tolling basis." Dkt. No.

3

70 ("Prior Order") at 10–11. The Court otherwise denied X's motion for judgment on the pleadings. *Id.* at 11. Each of the theories of copyright liability the Court declined to dismiss was premised on a single allegation repeated across all of Grecco's complaints: that X "failed to respond to the DMCA takedown requests." *Id.* at 6–10. As demonstrated below, that allegation was false. In issuing the Prior Order, this Court possessed none of X's 139 written responses to Grecco's takedown notices because Grecco omitted any mention of them from its complaints and briefing. *See generally* Dkt. Nos. 1, 12, and 33.

On May 6, 2026, X moved to certify the Prior Order for interlocutory appeal in light of *Cox*. Dkt. No. 75.

> **D.    The TAC Finally Reveals X Promptly Responded to Grecco's Takedown Notices, and the Court Dismisses Grecco's Contributory Claim**

On April 30, 2026, Grecco filed its Third Amended Complaint ("TAC"). Dkt. No. 73. There, Grecco exceeded the limited leave to amend by adding twelve brand new photographs and various new allegations—including that X *did* respond to Grecco's takedown notices by "request[ing] more information" about the allegedly infringed photographs. *Id.* ¶¶ 20, 27. X again moved to dismiss, placing before the Court the responses themselves, in which X asked Grecco to identify the copyrighted works at issue—as required by the Copyright Act. Dkt. No. 79.

In June 2026, the Court ruled on X's certification motion. Dkt. Nos. 89, 91, 92 (together, the "1292 Orders"). The 1292 Orders amended the Prior Order and dismissed Grecco's contributory claim, holding that inducement had not been adequately pleaded and that facts suggesting X is "tailored" for infringement were "[n]oticeably absent." Dkt. No. 91 at 7–8; Dkt. No. 92 at 1. The Court adhered to the Prior Order's direct-infringement ruling, distinguishing *Art Records* on a single ground: unlike the plaintiff in that case, "***Grecco alleges here that [X] took no action in response to the takedown requests he submitted***." Dkt. No. 91 at 6 n.7

4

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

(emphasis added). On vicarious liability, the Court was "inclined to agree with [X] that Grecco's allegations may be insufficient." *Id.* at 10. The Court ultimately permitted a fourth amended complaint, but warned Grecco "this will be the last opportunity to amend." Dkt. No. 92 at 1.

### E.        The Fourth Amended Complaint

Grecco filed the 4AC on July 8, 2026. Its primary addition is a narrative about Elon Musk's 2022 acquisition of Twitter/X, workforce reductions, and irrelevant statements of opinion by Mr. Musk. 4AC ¶¶ 15–27. For example, Grecco misleadingly alleges that, before he acquired Twitter/X, Mr. Musk "called copyright a 'plague on humanity'" (4AC ¶ 26), though Mr. Musk's actual post— made in reply to a post about copyright legislation—says "*Overzealous* DMCA is a plague on humanity" (*id.* ¶ 17; Trujillo-Jamison Decl. Ex. B (emphasis added)). The 4AC also alleges that Mr. Musk agreed with an April 2025 Jack Dorsey post where Mr. Dorsey wrote "delete all IP law." *Id.* ¶¶ 24–25; Trujillo-Jamison Decl. Ex. C.

The 4AC abandons the allegation that X "took no action" in response to its takedown notices, again admitting that X responded to Grecco's takedown notices while quibbling that X's requests sought "more information than was necessary under the DMCA." 4AC ¶¶ 34, 41, 67. The responses themselves show otherwise: X asked Grecco to identify the copyrighted works, the very information 17 U.S.C. § 512(c)(3)(A)(ii) requires. *See* Declaration of Eric Pitty ("Pitty Decl.") ¶¶ 8–10. For its vicarious claim, Grecco adds a generalized description of the platform's pre-acquisition advertising model, but it lacks *any* facts to suggest Twitter ever derived any revenue or other benefit from the photos at issue. *Id.* ¶¶ 48–56. And thirty-seven of the same thirty-eight time-barred works return, supported only by a cursory "Date of Discovery" column and a list of tools Grecco has used since 2015. *Id.* ¶ 181.

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

## III. <u>LEGAL STANDARD</u>

A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not "accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). That is especially true now that the parties have completed fact discovery; at this stage, the Court should "look more closely at the factual allegations to see if they support the legal conclusions pled." *Karth v. Keryx Biopharmaceuticals, Inc.*, 6 F.4th 123, 134 (1st Cir. 2021).

## IV. <u>ARGUMENT</u>

Each theory in Grecco's 4AC can be reduced to a single fundamentally flawed proposition: that X is liable because, rather than automatically or reflexively removing user posts, it asked for additional information about the takedown requests to determine whether removal was required. The Ninth Circuit has repeatedly held that is not direct infringement, the Supreme Court just held it is not contributory infringement, and no pleaded facts support vicarious infringement.

### A.    **Grecco's Direct Infringement Claim Fails, Considering Its Continued Failure to Plead Volitional Conduct**

Grecco's direct infringement claim twice survived on a single allegation, accepted as true: that X "failed to respond" to Grecco's takedown notices and thus "took no action" to address the alleged infringement. Dkt. No. 91 at 6 n.7; Prior Order at 6–7. The 4AC withdraws that false allegation and adds nothing in its place.

Unable to re-plead its false theory that X "failed to respond" to its takedowns, and unwilling to accept the consequences of its admission, Grecco tries to plead around the problem—alleging that X "either (i)" responded and "requested

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

more information" "or (ii)" "took no action at all." 4AC ¶ 34. But although Grecco knows well what requests for information it received, Grecco fails to identify which photographs were subject to those requests. Because the 4AC makes no attempt to exclude the lawful alternative as to any photograph, its allegations sit in "neutral territory" and "do not permit the court to infer more than the mere possibility of misconduct." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013); *Iqbal*, 556 U.S. at 679. The "plausibility standard 'asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, __ U.S. __, 146 S. Ct. 1391, 1399 (2026).

Direct infringement requires ownership, violation of an exclusive right under 17 U.S.C. § 106, and "causation (also referred to as 'volitional conduct') by the defendant." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017). For an online platform, the question is whether it was "'actively involved in the infringement,' and not [a] passive handler[] of content supplied by others." *Schneider v. YouTube, LLC*, 649 F. Supp. 3d 872, 878 (N.D. Cal. 2023) (quoting and citing *VHT)*. Volitional conduct often "will come down to who selects the copyrighted content: the defendant or its customers." *VHT*, 918 F.3d at 731–32. As *Cox* reaffirmed, "[t]he Copyright Act does not expressly render anyone liable for infringement committed by another." 146 S. Ct. at 966.

The Ninth Circuit has accordingly "rejected such failure-to-act arguments"—that a platform's failure to promptly remove infringing content is itself volitional. *Long v. Dorset,* 854 F. App'x 861, 864 (9th Cir. 2021). A platform that "request[s] further information from the copyright holder upon being informed of potential infringement" stands on even stronger ground because it has taken "affirmative action to address the claims" that "can hardly be characterized as rising to the level of volitional conduct." *Id.* at 864; *see VHT*, 918 F.3d at 734*; Art Records*, 2026 WL 1669167, at *1–2.

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

*First*, Grecco concedes that third-party "users . . . uploaded the Photos for public display and distribution." 4AC ¶ 59. Grecco thus stakes its claim on inaction: that X "took no action to halt the infringement" (*id.* ¶ 40) and "failed to address the DMCA takedown requests" (*id.* ¶ 44). From this, Grecco concludes that "[t]o the extent that [X] allowed the infringing material to remain on its platform," "[X] engaged in the active display of the infringing material." *Id.*

Not so. Relabeling a neutral platform's failure to immediately remove content as "active display" of that content violates the Ninth Circuit's prohibition on "failure-to-act arguments." *Long*, 854 F. App'x at 864 ("[the plaintiff] argues that Facebook's failure to promptly remove Dorset's posts amounted to volitional conduct," "[b]ut we have rejected such failure-to-act arguments"). Try as it might, Grecco cannot escape the fact that its core allegation—X "allowed the . . . infringing material to remain" (4AC ¶ 44)—describes what X did *not* do, and cannot support volitional conduct or direct infringement.[2] The 4AC's new gloss— that X "chose" not to act (*id.* ¶ 66)—is the same allegation repackaged. *Waterman* just dismissed materially identical allegations of direct infringement by the same counsel because screenshots "depict[ing] Twitter users who themselves posted Plaintiffs' images" cannot show that Twitter acted "outside the scope of normal operation of its website," and "[w]ithout more," the direct infringement claim fails. Dkt. No. 65 at 4.

*Second*, Grecco's direct infringement claim fails for another reason: Grecco has abandoned the central allegation on which its claim rested—that "**X chose to ignore the takedown notices**." Dkt. Nos. 42 at 4, 16 (emphasis added); *see* Dkt.

---

[2] Grecco claims X's passive failure to act "removes it from the [DMCA] safe harbor . . . and amounts to copyright infringement." *Id.* ¶¶ 28, 43. *Cox* rejected exactly this inverted reading of the safe harbor: the DMCA "merely creates new defenses from liability," and "failure to comply with the safe-harbor rules 'shall not bear adversely upon . . . a defense by the service provider.'" 146 S. Ct. at 969 (quoting 17 U.S.C. § 512(l)).

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

No. 77 at 12. Now, in its fifth bite at the apple, Grecco admits that X *did* respond to Grecco's notices, including by "request[ing] more information" and "respond[ing] to ask for information." 4AC ¶¶ 34, 67; *see id.* ¶ 41. In other words, X did exactly what the prevailing defendants in *VHT*, *Long*, and *Art Records* did— it took affirmative action by promptly responding to takedown requests[3]—139 times.[4] *See* Pitty Decl. ¶¶ 6, 8–11; *VHT*, 918 F.3d at 734; *Long*, 854 F. App'x at 864; *Art Records*, 2026 WL 1669167, at *1. Grecco answered none of X's responses. Pitty Decl. ¶ 12.[5]

A rightsholder who refuses to participate in the DMCA takedown process cannot manufacture volitional conduct from the natural consequence of that refusal. In *Harrison v. Facebook, Inc.*, 816 F. App'x 228, 229 (9th Cir. 2020), the platform-defendant "passively hosted the content and failed to remove it when [the plaintiff] was unable to follow Facebook's procedures for removal." That refusal to follow procedures—like Grecco's blanket refusal to respond to X—defeats volitional conduct as a matter of law. The Prior Order sustained Grecco's direct infringement claim solely because Grecco pleaded "that [X] . . . failed to respond to the DMCA takedown requests" and "took no action." Prior Order at 6–7; *see also* Dkt. No. 91 at 5–6 (declining to disturb this conclusion). Grecco has now

---

[3] *Long*, 854 F. App'x at 864 ("service provider 'took affirmative action to address the claims' by requesting further information"); *Art Records*, 2026 WL 1669167, at *1 (YouTube "asked for Plaintiff to demonstrate proof of ownership").

[4] Indeed, the DMCA contemplates exactly what X did here: a provider that receives a deficient notice preserves its rights by "promptly attempt[ing] to contact the person making the notification." *Id.* § 512(c)(3)(B)(ii); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007) ("*Perfect 10*").

[5] That correspondence is properly before the Court: the 4AC repeatedly refers to X's responses and characterizes their content (4AC ¶¶ 34, 41, 67), and they form the basis of Grecco's claim. *Stross v. Twitter, Inc.*, 2022 WL 1843142, at *2 (C.D. Cal. Feb. 28, 2022) (considering "copies of emails that Plaintiff sent to Twitter and Twitter's subsequent responses").

9

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

withdrawn that false allegation. By the Prior Order's logic, applied to the allegations Grecco makes now, the 4AC's direct infringement claim must fail. Grecco's withdrawal also erases the only ground on which this Court distinguished *Art Records*: that unlike YouTube, whose request for proof of ownership was a "reasonable response," "Grecco alleges here that *[X]* ***took no action in response to the takedown requests***." Dkt. No. 91 at 6 n.7 (emphasis added). In fact, X responded 139 times, asking Grecco to identify its works. Pitty Decl. ¶¶ 6, 8–11. It was *Grecco* who "took no action in response." *See id.* ¶ 12. On the 4AC's new allegations, this case is *Art Records* and compels the same outcome—dismissal with prejudice.

*Third*, Grecco repeats generalized legal conclusions: that X is directly liable for "exercis[ing] control over which images and posts are displayed and curated" (4AC ¶ 200); "continued curation and exploitation of the infringing images" (*id.* ¶ 204); and that "[e]very view, retweet, reply or other engagement . . . is an incident of infringement" (*id.* ¶ 205). This Court has already rejected this theory as insufficient to state a direct infringement claim: these same "display" and "reproduction" allegations "fail[] to describe how such conduct exceeded Twitter's general operations." Prior Order at 6. As the 1292 Orders explained, X's "continual reproduction, copying, and/or public performance/display would not by itself constitute sufficient volitional conduct." Dkt. No. 91 at 6 n.8. At bottom, Grecco's conclusory labels are simply "different ways of saying [X] hosted the supposedly infringing [content] on its platform," which fails as a matter of law. *Art Records*, 2026 WL 1669167, at *2.

Five complaints, completed discovery, and two years of litigation have produced no facts to suggest X *ever* selected, uploaded, or instigated a single infringing post. Grecco does not plead those facts because it cannot. Its direct infringement claim should be dismissed with prejudice.

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

### B.    Grecco's Failure to Plead Any Intent to Infringe Defeats Contributory Liability Under *Cox*

After *Cox*, a service provider "is contributorily liable for the user's infringement *only* if it intended that the provided service be used for infringement." *Cox*, 146 S. Ct. at 967 (emphasis added). Intent can be shown in *only* two ways: (1) the provider induced infringement by "actively encourag[ing] infringement through specific acts," or (2) the provider's service is "tailored to infringement"—*i.e.*, "not capable of 'substantial' or 'commercially significant' noninfringing uses." *Id.* Inducement requires "specific acts" of active encouragement. *Id.*

The 4AC identifies no advertisements, solicitations, instructions, or other "specific acts" of encouragement directed at any user. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005); *see also Cox*, 146 S. Ct. at 967 (inducement requires "actively encourag[ing] infringement through specific acts"). "The classic instance of inducement is by advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations." *Grokster*, 545 U.S. at 937–38. Two social-media posts conveying personal opinions on legislation and company-wide layoffs are not that.

#### 1.    The 4AC Re-Pleads Only Knowledge and Inaction

Unable to plead any facts to show intent, Grecco instead invokes the same "material contribution" standard that *Cox* rejected. 4AC ¶¶ 45–46 (alleging that takedowns "provided [X] with actual knowledge of the alleged infringing material" and that X's "failure to remove" is "material contribution"). These allegations no longer suffice under *Cox*: "knowledge that a service will be used to infringe is insufficient to establish the required intent to infringe." *Cox*, 146 S. Ct. at 968.[6]

---

[6] Even if knowledge and inaction were sufficient, Grecco's claim that its notices "provided [X] with actual knowledge" (4AC ¶ 45) is refuted by the very exemplar notice cited in the 4AC, which identifies the alleged copyrighted work only by a generic ".jpg" file name—nothing else. *Id.* ¶ 65.

11

The 4AC avoids *Cox* for good reason: it eviscerates Grecco's contributory theory. In *Cox*, the Supreme Court found no contributory liability despite Cox (i) receiving failing to act upon most of the *millions* of relevant takedown notices it received, (ii) instituting a "thirteen-strike policy" for terminating repeat infringers, (iii) "never terminat[ing] a subscriber without reactivating them," and (iv) disparaging the DMCA in internal emails that showed "contempt for [copyright] laws." *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 236–37 (4th Cir. 2024), *rev'd in part on other grounds*, 146 S. Ct. 959 (2026). The facts alleged here—where X promptly responded to Grecco's 139 notices by requesting information that Grecco refused to provide—are not in the same universe.

### 2. Grecco's New Allegations Only Confirm Its Inability to Plead Intent

Grasping for something—anything—to suggest X induced infringement, Grecco points to two X posts from Mr. Musk: (1) a May 2022 post made before Mr. Musk even acquired Twitter/X, and (2) an April 2025 post agreeing with a Jack Dorsey post ("delete all IP law"), as well as company-wide layoffs at Twitter/X after the company was acquired. 4AC ¶¶ 15–26. From this, Grecco concludes that "public hostility to copyright law" somehow "sent a message" that Twitter/X "would not enforce copyright law," inducing certain unknown users to infringe. *Id.* ¶ 206. Not so.

Neither of Mr. Musk's posts says anything about Grecco, the accused posts, the works at issue, or even the X platform generally. While Grecco claims Mr. Musk "called copyright a 'plague on humanity,'" the full post says something materially different: "*Overzealous* DMCA is a plague on humanity." 4AC ¶¶ 26, 17; *supra* § II.E. *Second*, the full exchange on X, which the Court may consider because the 4AC quotes it, shows nothing more than Mr. Musk's political commentary on a Senate bill. Trujillo-Jamison Decl. Ex. B. This context presents an "obvious alternative explanation" that defeats plausibility as a matter of law.

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

*Hikma Pharms.*, 146 S. Ct. at 1401 (quoting *Twombly*, 550 U.S. at 567). Grecco cannot transform personal opinions on proposed legislation into "specific acts" of active encouragement to infringe copyrights. Doing so would punish core petitioning activity protected by the First Amendment's Petition Clause. *See, e.g.*, *E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961) (no liability for "mere attempts to influence the passage or enforcement of laws"); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929–31 (9th Cir. 2006) (applying Noerr-Pennington doctrine to RICO claims).

Take *Cox*, for example, where the facts were extreme.[7] There, Cox's head of copyright enforcement was "openly contemptuous" of copyright law, "telling his team *'F the dmca!!!'*"[8] If open contempt for the DMCA by the very employees charged with enforcing it is insufficient to constitute inducement, as the Supreme Court held, a private citizen's criticism of "[o]verzealous" DMCA enforcement—posted months *before* acquiring Twitter/X—certainly cannot be.

Even setting aside the contents of the posts, Grecco does not allege that a *single user* who allegedly posted its photographs ever saw—much less was induced to infringe by—either statement. In fact, Grecco's own timeline forecloses the possibility entirely. 149 of the 152 alleged instances of infringement predate Mr. Musk's April 11, 2025 exchange with Mr. Dorsey about IP law, while a third of the alleged instances predate the May 2022 Musk tweet—which itself predates

---

[7] Grecco tries to avoid *Cox* by invoking the Prior Order's distinction of it—that X "took no action" in response to takedowns—which is the same passage this Court abrogated in the 1292 Orders. A complaint cannot state a claim by re-pleading a holding the Court has since amended. Nor can Grecco confine *Cox* to internet *providers*, rather than internet platforms. Nothing in *Cox* turned on the type of service, and *Art Records* correctly applied it to a platform like X.

[8] Brief for Respondents at 10, No. 24-171 (Oct. 15, 2025) ("Sony Br."), https://bit.ly/4aOAXJG.

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

Mr. Musk's acquisition of Twitter/X. 4AC ¶¶ 63–64, 185. A statement cannot "induce" infringement that already occurred. The inference Grecco presents is that Mr. Musk's generalized statements of opinion somehow caused unidentified users to post specific photographs on Twitter years earlier. That is the "sheer possibility" *Iqbal* forbids. 556 U.S. at 678.

Finally, Grecco's layoffs and "deprioritization" allegations (4AC ¶¶ 15–21) are classic nonfeasance under Supreme Court precedent: "mere omissions, inactions, or nonfeasance" cannot establish culpable encouragement. *Hikma Pharms.*, 146 S. Ct. at 1402 (citing *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 489 (2023)). And Grecco's conclusion that X decided to "not enforce copyright law" (4AC ¶ 206) is refuted four times over by Grecco's own complaint, and materials incorporated therein, admitting that X: (i) maintained a Copyright Policy providing for the removal of infringing posts; (ii) maintained Terms of Service requiring users to warrant that their posts do not infringe; (iii) "designated [a] DMCA agent" to receive DMCA takedown notices; and (iv) actioned "230,392" copyright notices in the second half of 2024 alone.[9] *See* 4AC ¶¶ 36–38, 68.

Accordingly, Grecco's allegations only confirm its inability to plead inducement, and thus contributory liability, as a matter of law.

> 3.     The 4AC Pleads No "Tailored to Infringement" Facts

Nor does the 4AC plead *Cox*'s alternative showing of intent: that X was "not capable of 'substantial' or 'commercially significant' noninfringing uses." 146 S. Ct. at 967. Indeed, Grecco concedes the opposite: that X is a general-purpose platform (4AC ¶¶ 12–13); its users are "able to create posts themselves" (*id.* ¶ 48); and the platform serves "237.8 million" daily users (*id.* ¶ 54). Thus, by Grecco's own admission, X is plainly "capable of substantial noninfringing uses," and

---

[9] See X's 2024 Transparency Report, https://transparency.x.com/en/reports/global-reports/2025-transparency-report ("230,392" copyright notices "actioned or withheld" by Twitter between July 2024 and December 2024).

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

"absent any specific information which identifies infringing activity, a computer system operator cannot be liable for contributory infringement merely because the structure of the system allows for the exchange of copyrighted material." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001).

### C.    Grecco Fails to Plausibly Allege Vicarious Infringement

To plead vicarious liability—an outgrowth of *respondeat superior*—Grecco must allege that X had *both* "(1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *VHT*, 918 F.3d at 745–46; *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004); *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1071 (9th Cir. 2013). Supervision requires "a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10*, 508 F.3d at 1174. To allege a direct financial interest, Grecco "must plead facts showing a causal relationship between the *specific infringing conduct* and a financial benefit to the defendant," and where, as here, the benefit "is alleged to come from the use of the . . . services generally," Grecco "must show that individuals sought out the defendant's goods or services *specifically because of the availability of infringing material*." *Barnes v. Sanchez*, 2026 WL 1912085, at *7 (N.D. Cal. July 2, 2026) (emphasis added).

### 1.    Grecco Still Fails to Plead Any Direct Financial Interest

In its 1292 Order, the Court was "inclined to agree" that Grecco's vicarious liability allegations "may be insufficient" because it was "unclear whether there are sufficient factual allegations under *Giganews* and *Ellison* demonstrating that [X] derived revenue **specifically because of Grecco's copyrighted material**." Dkt. No. 91 at 10, *adopted*, Dkt. No. 92 (emphasis added). In its fifth attempt, Grecco remains unable to do so.

Rather than allege any facts suggesting X derived revenue "specifically because of Grecco's copyrighted material," the 4AC relies on conclusory and platform-wide generalities: that X's "revenue is directly tied to infringing posts"

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

because "[i]f infringing content/posts receive views, [X]'s advertising revenue increases." 4AC ¶¶ 32, 48–53, 207–08. Grecco also invokes a lone 2022 SEC filing showing that X generated advertising revenue and has hundreds of millions of users. *Id.* ¶ 54. Such generalized allegations do nothing to fill the pleading gap this Court identified. The 1292 Order suggested that "[p]erhaps a better factor" than a work-specific draw "would be whether the defendant derives a substantial amount of revenue from the presence of materials/videos on its platform that violate copyright laws." Dkt. No. 91 at 9–10 n.14. Grecco fails that test too—it pleads only platform-wide advertising metrics, not one dollar of revenue from any infringing material. *See* 4AC ¶¶ 29–33, 54, 62 (asserting conclusory allegation that "[t]he website traffic translates into substantial ill-gotten commercial advantage and revenue generation for Defendants as a direct consequence of their infringing actions."). Earlier this week, this Court dismissed a complaint in *Waterman* containing that exact allegation because it "fail[ed] to allege how increased traffic creates direct financial interest or how [X] benefitted financially from having *Plaintiffs' copyrighted images* on its platform." *Waterman*, Dkt. 65, at 10 (emphasis added). Grecco's pleading failure is identical.

To make matters worse for Grecco, the 4AC's reliance on platform-wide allegations means it must plead facts suggesting X users "sought out" the X platform "specifically because of" the availability of infringing content. *Barnes*, 2026 WL 1912085, at *7. Grecco's only allegation is to speculate that "[t]he photographs serve specifically as a draw . . . because the infringed content is high quality." 4AC ¶ 55. That speculation is entirely unfounded—and Grecco's own numbers refute it. Grecco claims that, on a platform with "237.8 million" daily users, the 152 alleged acts of infringement were collectively viewed by "thousands" of users. *Id.* ¶¶ 30, 54, 63–64. But where the universe of third-party content is so vast, "any conclusion that subscribers were 'drawn' to [X's] services as a result of the availability of [Grecco's] content would be pure speculation."

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

*Perfect 10*, 508 F.3d at 1174. Finally, Grecco's conclusion that X must have "generated advertising revenue from the infringing posts" because ads "are presented alongside content" (4AC ¶¶ 31, 207) identifies (i) *no advertisement* that ever ran alongside any infringement, (ii) *no user* who came to X to view such infringement, and (iii) *not one dollar* of resulting revenue. Paragraph 56 of the 4AC concedes as much: by falsely claiming without citation or quotation that X "possesses—but has refused to produce—data" about user engagement, Grecco concedes it has no facts to support its theory.

*Ellison* is instructive. There, AOL hosted infringing copies of the plaintiff's stories on a subscription-funded service, yet the Ninth Circuit affirmed because "[t]he record lack[ed] evidence that AOL attracted or retained subscriptions because of the infringement." 357 F.3d at 1079. The very same is true here: Grecco claims that "the more users view posts and content on the platform, the more advertising revenue [X] can generate." 4AC ¶ 29. But X earns advertising revenue no matter what content its users view, and the 4AC pleads no fact to suggest X's revenue would have been reduced by even one cent if the posts at issue never appeared.

> ### 2. Grecco Also Cannot Plead the Right and Ability to Supervise

Even if Grecco could plead a direct financial benefit (it cannot), the 4AC's vicarious claim would still fail because Grecco cannot plead that X had the right and ability to supervise infringement on X. Grecco claims that X's Terms of Service "grant [X] broad authority to remove content and terminate accounts," because "X reserves the right to take enforcement actions" (4AC ¶ 39), and "[X] had the ability to supervise the infringing content through the DMCA takedown requests," (*id.* ¶ 47). Each of these generalized allegations boils down to the same insufficient theory: X—like any online platform—can remove or block third-party content after the fact. That is precisely the showing the Ninth Circuit has rejected for neutral platforms: a platform's ability to remove content once identified does

17

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

not supply the ability to supervise infringement it cannot properly evaluate. *VHT*, 918 F.3d at 745–46; *Perfect 10*, 508 F.3d at 1174 ("Google lacks the practical ability to police the infringing activities of third-part[ies]").

Nor does the 4AC plead X had the "practical ability" to supervise. On 139 occasions, X requested from Grecco the work-identifying information required by the DMCA, and necessary for X to locate and evaluate the alleged infringements. Each time, Grecco refused to provide it. Absent such identifying information, "ferreting out claimed infringement" among hundreds of millions of users' posts is "beyond hunting for a needle in a haystack." *VHT*, 918 F.3d at 746. Grecco's deficient notices cannot supply the missing "ability" to supervise: predicating vicarious liability on a failure to act on takedown notices would simply resurrect, under another label, the knowledge-plus-inaction theory *Cox* foreclosed. *Cf. Cox*, 146 S. Ct. at 969; *VHT*, 918 F.3d at 746. *Waterman* is in accord: a plaintiff who pleads that notices were sent, without pleading that they "contained any identifying information as to infringing content," fails to allege the "practical ability" to supervise. *Waterman*, Dkt. 65, at 11. At bottom, a platform cannot "supervise" infringing activity that a rightsholder affirmatively refuses to identify. That is the very design of the DMCA, which "places the burden of identifying infringing content on the copyright owner, not the service provider." *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 603 (9th Cir. 2018).

After five complaints, Grecco has yet to allege a single user or dollar of revenue specifically attributable to its photographs, or that X had the right and ability to supervise the claimed infringement. Nothing suggests a sixth complaint would be different. The vicarious infringement claim should be dismissed with prejudice.

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

### D.    Forty-One Photographs Are Time-Barred, and Grecco Has *Again* Pleaded No Basis for Tolling

The Prior Order dismissed Grecco's claims as to thirty-eight time-barred photographs because Grecco "does not assert the discovery rule or an alternative tolling basis." Prior Order at 11. The 4AC re-pleads thirty-seven of those works, again without facts necessary to toll the limitations period. *Compare* Prior Order at 11 n.6 (cataloguing thirty-eight dismissed works and their alleged infringement dates from 2AC ¶ 29) *with* 4AC ¶¶ 63–64. Where, as here, a complaint "contain[s] the same defects" the court has already identified, dismissal with prejudice is proper. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008).

To invoke the discovery rule, Grecco must plead it "lacked actual knowledge of the alleged acts of infringement" during the limitations period and that this "was reasonable under the circumstances." *In re Napster, Inc. Copyright Litig.*, 2005 WL 289977, at *3 (N.D. Cal. Feb. 3, 2005). The 4AC does not meet this standard. All Grecco can muster is a "Date of Discovery" column and the conclusory allegation that Grecco "discovered the infringements through Internet search tools such as Pixsy, Google Lens, ImageRights, and/or Copytrack." 4AC ¶ 181. Listing search tools does not plead the discovery rule: the 4AC nowhere pleads any facts to suggest (i) Grecco was unaware of the infringements for three years, (ii) Grecco's lack of awareness was reasonable, or (iii) that such posts could not have been found by even a "cursory investigation."[10]

---

[10] Grecco claims certain time-barred works "remained active on the Platform" (4AC ¶¶ 70–180, 186–97) and that "[e]very view, retweet, reply or other engagement . . . is an incident of infringement" (*id.* ¶ 205). Those cursory allegations cannot resurrect time-barred works because "[s]eparately accruing harm should not be confused with harm from past violations that are continuing." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 n.6 (2014). A time-barred work published "outside the relevant three-year window" "does not give rise to a discrete claim occurring within the three-year window" by "remain[ing]

19

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

Nor could Grecco plead these missing facts. Judicially noticeable records show that Grecco has used reverse-image search technology since at least 2015, employed ImageRights for years, and previously sued other defendants over some of the **same photographs re-pleaded here**.[11] *Supra* § II.A; *Michael Grecco Prods. v. Valuewalk LLC*, 345 F. Supp. 3d 482, 496 (S.D.N.Y. 2018) ("MGP discovered [the] use of the image by running a Google search" and "ImageRights[] conducted a search"); *Michael Grecco Prods. v. Livingly Media*, 2021 WL 2546759, at *3 (C.D. Cal. Apr. 16, 2021) ("Grecco used ImageRights, a reverse image search vendor"); *Michael Grecco Prods., Inc. v. Ziff Davis, LLC*, 2021 WL 6618863, at *1 (C.D. Cal. Sep. 8, 2021) ("reverse image search'"). A plaintiff that professionally polices its catalog of copyrights with the same tools pleaded in its complaint (4AC ¶ 181) cannot plausibly allege it could not have discovered public posts on one of the world's most-trafficked websites. *Bluprint Clothing Corp. v. Chico's Fas, Inc.*, 2024 WL 3914469, at *3 (C.D. Cal. July 23, 2024) (rejecting discovery rule where "plaintiff has a history of filing copyright suits"). Indeed, Grecco's dismissal in *BDG Media* taught it exactly what the discovery rule requires: the Court held that Grecco's "[c]omplaint does not allege plausible facts to justify the application of the delayed discovery rule, it merely contains conclusory assertions that Plaintiff discovered Defendant's unauthorized uses of

on defendant's website." *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1099 n.13 (C.D. Cal. 2016).

[11] *Compare* 4AC ¶ 64 (Photographs 54, 68, and 75—"19930625_X Files_The_MGP_0015," "19950310_X Files_The_MGP_0007," and "19970506_Xena_lawless_lucy_MGP_0003"), *with Michael Grecco Prods., Inc. v. Livingly Media, Inc.*, No. 2:20-cv-00151-DSF-JC (C.D. Cal.) (Dkt. No. 1) ("Subject Photograph[s]" 1, 2, and 4) (claiming infringement of the exact images); and *compare* 4AC ¶ 64 (Photographs 55 and 68—"19930625_X Files_The_MGP_0021" and "19950310_X Files_The_MGP_0007"), *with Michael Grecco Prods., Inc. v. Ziff Davis, LLC*, No. 2:19-cv-04776-DSF-JC (C.D. Cal.) (Dkt. No. 25-1, Ex. A) (claiming infringement of the same images).

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

the [photos] in 2019." *Michael Grecco Prods. v. BDG Media, Inc.*, 2019 WL 13128605, at *4 (C.D. Cal. Nov. 21, 2019). Five complaints and two years later, such allegations remain absent here and should be dismissed with prejudice.[12]

Finally, four of the twelve works added since the 2AC allege infringement "at least as early as" 2013–2019—more than three years before they were first asserted on April 30, 2026. 4AC ¶ 185 (Photographs 112, 116, 118, and 119). These later-added works relate back to the original complaint: a newly asserted work is a new claim, as the Ninth Circuit held in rejecting Grecco's own contrary argument. *Michael Grecco Prods., Inc. v. BDG Media, Inc.*, 834 F. App'x 353, 354 (9th Cir. 2021) (no relation back where a claim "rests on a separate act of infringement involving a different photograph"). Photograph 112 fails even on its own terms: the 4AC alleges Grecco discovered that infringement on February 21, 2022—more than four years before asserting it. 4AC ¶ 185. As for the rest, Grecco offers only bare "discovery" dates in 2025 for works publicly posted, by its own allegations, six to thirteen years earlier—without a single fact suggesting diligence. *Id.* That is not the discovery rule; it is conclusory pleading this Court has repeatedly rejected.

### E. Dismissal Should Be with Prejudice

This Court cautioned Grecco that "this will be the last opportunity to amend and that any new factual allegations supporting its copyright infringement claims should be made with the Court's guidance in mind." Dkt. No. 92 at 1. Grecco instead re-pleaded a complaint rife with incurable legal defects. Dismissal without

---

[12] Even if the discovery rule could save these claims, Grecco's demand for statutory damages and attorneys' fees fails as to Photographs 54, 78, and 108. Both remedies are barred for "any infringement of copyright commenced after first publication of the work and before the effective date of its registration." 17 U.S.C. § 412(2). The 4AC's own table alleges infringement of these works beginning in 2015, 2015, and 2019, respectively—years before their registrations became effective in 2017, 2017, and 2021. 4AC ¶ 63; *id.* Ex. B.

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

leave is proper where, as here, "it is clear . . . that the complaint could not be saved by any amendment," *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008), and for "repeated failure to cure deficiencies by amendments previously allowed," *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Grecco's 4AC should be dismissed with prejudice.

## V.   CONCLUSION

For the foregoing reasons, X respectfully requests that the Court dismiss the 4AC in its entirety with prejudice, or, in the alternative, dismiss the forty-one time-barred works.

Respectfully submitted,

Dated:  August 7, 2026         WILLENKEN LLP

By: */s/ Kenneth M. Trujillo-Jamison*
     Kenneth M. Trujillo-Jamison
     *Attorneys for Defendant X Corp., in its corporate capacity and as successor in interest to named defendant Twitter, Inc.*

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendant X Corp., in its corporate capacity and as successor in interest to named defendant Twitter, Inc., certifies that this brief contains 6,995 words, which complies with the word limit of L.R. 11-6.1.

Dated:  August 7, 2026                    WILLENKEN LLP


                                          By: */s/ Kenneth M. Trujillo-Jamison*
                                              Kenneth M. Trujillo-Jamison
                                              *Attorneys for Defendant X Corp., in its corporate capacity and as successor in interest to named defendant Twitter, Inc.*

DEFENDANT X CORP.'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT