Peter R. Afrasiabi (SBN 193336)
Email: pafrasiabi@onellp.com
Taylor C. Foss (SBN 253486)
Email: tfoss@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Telephone: (949) 502-2870
Facsimile: (949) 258-5081

Attorney for Plaintiff,
MICHAEL GRECCO PRODUCTIONS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC., a Delaware corporation; X CORP., a Nevada corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-04878-MEMF-JC<br>Hon. George H. Wu<br><br>**OPPOSITION TO DEFENDANT X CORP.'S MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT**<br><br>Date: September 10, 2026<br>Time: 8:30 a.m.<br>Crtrm: 9D |

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

III. ARGUMENT ..... 5

A. Standard ..... 5

B. MGP Has Pleaded the Necessary Elements of Direct Copyright Infringement, Including Volitional Conduct ..... 5

1. MGP Has Pleaded Volitional Conduct ..... 6

2. Promptness Is Irrelevant When the Response Is a Refusal ..... 9

C. MGP Pleaded the Necessary Elements of Contributory Infringement, including that Twitter's Services are "Tailored to Infringement" ..... 12

D. MGP Has Pleaded the Necessary Facts for Its Claim for Vicarious Liability for Copyright Infringement, Including the Right and Ability to Supervise and a Direct Financial Interest ..... 13

1. MGP Has Pleaded the Right and Ability Supervise the Infringing Content ..... 14

2. MGP Has Pleaded that X has a Direct Financial Interest ..... 14

E. MGP Pleaded Sufficient Facts to Show Its Discovery of the Infringing Photographs ..... 15

F. The Court Should Allow Amendment to the Extent Necessary ..... 17

IV. TWITTER MUST SUPPLEMENT ITS DISCOVERY TO PROVIDE DOCUMENTS RESPONSIVE TO THE ALLEGATIONS IN THE 4AC ..... 17

V. MGP OBJECTS TO X'S PRESENTATION OF EVIDENCE OUTSIDE THE PLEADINGS AND OBJECTS TO TREATMENT OF THIS MOTION AS ONE FOR SUMMARY JUDGMENT ..... 18

VI. CONCLUSION .......................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Kermani v. Law Office of Joe Pezzuto, LLC*, 2014 WL 260650 (C.D. Cal. Jan. 23, 2014) ........ 5

*A&M Records v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ........ 14

*Aschroft v. Iqbal*, 556 U.S. 662 (2009) ........ 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 5

*Bell v. Witmott Storage Servs.*, 12 F.4th 1065 (9th Cir. 2021) ........ 5

*Bonanno v. Thomas*, 309 F.3d 320 (9th Cir. 1962) ........ 5

*Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047 (9th Cir. 2011) ........ 17

*Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. 583, 146 S. Ct. 959 (2026) ........ 13

*DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655 (9th Cir. 1992) ........ 17

*Ellison v. Robertson*, 357 F.3d 1071 (9th Cir. 2004) ........ 13

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ........ 5

*Enron Oil Trading & Transp. Co. v. Wallbrook Ins. Co.*, 132 F.3d 526 (9th Cir. 1997) ........ 5

*Hal Roach Studios v. Richard Feiner & Co.*, 896 F.3d 1542 (9th Cir. 1990) ........ 2

*IO Group, Inc. v. Jordon*, 708 F. Supp. 2d 989 (N.D. Cal. 2010) ........ 6

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) .......... 17

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......... 17

*Luvdarts, LLC v. AT & T Mobility, LLC*,
710 F.3d 1068 (9th Cir. 2013) .......... 13

*Mavrix Photographs, LLC v. LiveJournal, Inc.*,
853 F.3d 1020 (9th Cir. 2017) .......... 8

*Media Right Techs., Inc. v. Microsoft Corp.*,
922 F.3d 1014 (9th Cir. 2019) .......... 15

*Metro-Goldwyn-Mayer Studio, Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) .......... 12, 13

*Michael Grecco Prods., Inc. v. RADesign, Inc.*,
112 F.4th 144 (2d Cir. 2024) .......... 16

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) .......... 17

*Starz Ent., LLC v. MGM Domestic TV Distribution, LLC*,
39 F.4th 1236 (9th Cir. 2022) .......... 15

*Stross v. Meta Platforms, Inc.*,
Case No. 2:21-cv-08023-MCS-AS, 2022 U.S. Dist. LEXIS 100689
(C.D. Cal. Apr. 6, 2022) .......... 7

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
368 F.3d 1053 (9th Cir. 2004) .......... 17

*UMG Recordings, Inc. v. Augusto*,
628 F.3d 1175 (9th Cir. 2011) .......... 5

*VHT, Inc. v. Zillow Grp., Inc.*,
918 F.3d 723 (9th Cir. 2019) .......... 13

*Warner Chappell Music, Inc. v. Nealy*,
601 U.S. 366 (2024) .......... 15

*Williams v. Cty. of L.A.*,
No. 2:24-cv-04071-DOC-BFM, 2025 U.S. Dist. LEXIS 78644 (C.D. Cal. Mar. 20, 2025) ..... 17

*Zarco v. Symons*,
No. EDCV 22-594-MEMF, 2025 U.S. Dist. LEXIS 116759 (C.D. Cal. June 17, 2025) ..... 17

**Statutes**

17 U.S.C. § 501(a) ..... 5

17 U.S.C. § 501(b) ..... 6

17 U.S.C. § 512(c)(3) ..... 10

**Rules**

Fed. R. Civ. P. 8 ..... 6

Fed. R. Civ. P. 8(a) ..... 5

Fed. R. Civ. P. 12(d) ..... 18

Fed. R. Civ. P. 15(a) ..... 17

Fed. R. Civ. P. 15(a)(2) ..... 17

Fed. R. Civ. P. 26(e) ..... 17, 18

Fed. R. Civ. P. 56(d) ..... 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant X Corp. ("Twitter," "X," or "Defendant") simply cannot meet the standard to dismiss Plaintiff Michael Grecco Productions, Inc.'s ("MGP" or "Plaintiff") Fourth Amended Complaint ("4AC"). The allegations set forth in the 4AC state a plausible claim based on specific facts, namely that Twitter directly, vicariously, and/or contributorily infringed Plaintiff's copyrights by reproducing, displaying, distributing, and utilizing the Photos on its social media platform for purposes of trade without authorization of or payment to Plaintiff in violation of 17 U.S.C. § 501 et seq. Specifically, MGP has pleaded how Twitter curates its social media platform to generate and guide web-traffic to result in advertising revenue. Rather than argue that there is a deficiency in that legal argument (there is not), Twitter's motion instead attempts to dispute the facts pleaded in MGP's 4AC. Such arguments are appropriate on summary judgment, not on the motion to dismiss authorized by the Court here.

Above all, Twitter's view of its obligations under the Copyright Act and the Digital Millennium Copyright Act ("DMCA") reveals why Twitter should be found liable for copyright infringement. Twitter asserts that because it "asked for additional information" after receiving takedown notices pursuant to the DMCA from Plaintiff MGP that Twitter is somehow justified in refusing to remove that copyright infringement from its social media platform pursuant to the DMCA. Mot. at 6. Twitter's belief (pushed by Elon Musk) that it can do what it wants by fiat is incorrect. Twitter does not have the authority to create and then enforce additional informational requirements that simply are not present in the DMCA. As set forth in paragraph 65 of the 4AC, Plaintiff provided notice as to every piece of information required by statute and rather than remove the infringing post, Twitter imposed extra-statutory demands for more information. This is no big "reveal." MGP has asserted from the beginning that Twitter's actions mattered, not its words.

## II. BACKGROUND[1]

Plaintiff is a company who owns the rights to multiple photographs made by Michael Grecco, who is an award-winning photographer and best-selling author recognized internationally for his high-concept imagery, mastery of lighting and powerful connections with subjects. 4AC ¶ 4. His extensive body of work encompasses celebrity, fine art, advertising, fashion, portraiture, and editorial photography. *Id.* Michael Grecco created many high value photographs throughout his career and has authored many iconic images that have generated substantial amounts of money through sales and publishing and Plaintiff owns the rights to these photographs. *Id.* at ¶ 9. The Photos at issue in this case were timely registered them with the United States Copyright Office. *Id.* at ¶ 10.

On X, users can send out a text-based messages, or alternatively can tweet images. 4AC ¶ 13. User-uploaded images are subject to the safe harbor provision of the Digital Millennium Copyright Act, which precludes liability for copyright infringement by an internet service provider such as Twitter, provided that Twitter complies with the DMCA and, among other things, requests by copyright owners to remove infringing materials upon receipt of a demand to do so. *Id.* at ¶ 14.

X, seemingly upon Elon Musk taking over and instituting a private version of what he has done with "DOGE" to X, stopped honoring DMCA takedown requests and has continued to facilitate copyright infringement despite repeated DMCA takedown requests, such that Defendants' conduct removes it from the safe harbor provided by the DMCA and amounts to copyright infringement. 4AC ¶¶ 15-17, 28. Plaintiff sent DMCA takedown requests in compliance with the statute but—apart from a few isolated incidents—Twitter took no action to cease its copyright infringement. *Id.* at ¶ 34. Plaintiff sent these DMCA takedown demands to the

[1] These facts are presumed true for purposes of the Motion. *See Hal Roach Studios v. Richard Feiner & Co.*, 896 F.3d 1542, 1550 (9th Cir. 1990).

registered DMCA agent for Twitter as well as to the subsequent registered DMCA agent for Twitter. *Id.* at ¶ 35. Many of the Photos are continuing to be infringed by Twitter as of the filing of this Complaint, and absent safe harbor protection under the DMCA, Twitter's reproduction and public display of the Photos amounts to copyright infringement. *Id.* at ¶ 42.

None of the users that uploaded the Photos for public display and distribution on Twitter had permission, license, or authority to do so. 4AC ¶ 59. At no point did Twitter seek a license for the Photos and at no point did Plaintiff provide any such permission or license for Defendants to use the Photos. *Id.* at ¶ 60. To the contrary, Plaintiff repeatedly requested that Twitter cease their copyright infringement. *Id.* Plaintiff has never sold, licensed, or authorized the use of the Photos to Twitter. *Id.*

Twitter violated federal law by willfully infringing Plaintiff's copyrights to at least the Photos and by simply ignoring takedown requests—Twitter has simply decided that copyright compliance is too expensive, so has abandoned even a pretense of a DMCA-compliant internal body. 4AC ¶ 61. This is Twitter's new copyright-blind policy to ignore takedowns in line with Musk's public pronouncements on the problem with giving people IP rights.

In a very timely and revealing interaction, in a tweet on Twitter, Jack Dorsey, the founder of Twitter, tweeted on April 11, 2025, "delete all IP law":




*See* https://x.com/jack/status/1910829254214115681 (accessed 4/22/2025); 4AC ¶ 24. In response, Musk tweeted his agreement:




*See* https://x.com/elonmusk/status/1910840422789763511 (accessed 4/22/2025); 4AC ¶ 25.

Specifically, Twitter reproduced, displayed, and distributed the Photos, and/or derivatives thereof without permission, consent, or license. 4AC ¶ 28. On information and belief, Defendants have generated revenue through their social media platform. *Id.* at ¶ 62. The website traffic translates into substantial ill-gotten commercial advantage and revenue generation for Defendants as a direct consequence of their infringing actions. *Id.* at ¶ 62. Despite receiving notice of its infringement, Twitter failed to remove a large majority of the infringing Photos from the platform. *Id.* at ¶ 68. Twitter previously maintained and enforced a policy for compliance with the DMCA such that Twitter knows and understands its obligations pursuant to the copyright laws as set forth in the Copyright Act as well as in the Digital Millennium Copyright Act. *Id.* Further still, Twitter failed and/or refused to take down nearly all of the foregoing instances of infringement, despite the multiple notices pursuant to the DMCA and despite Plaintiff filing this lawsuit. *Id.* at ¶ 69. Numerous reported infringements, now a year into this case, remain up and live on X. *Id.* at ¶ 207.

In sum, X's copyright infringement is rampant, unceasing, and reckless by additional instances of infringement and the continuing infringement of the overwhelming majority of the photos at issue in this litigation. 4AC ¶ 180. And Twitter exercises control over which images and posts are displayed and curated on

its platform. *Id.* at ¶ 200. Such curation proximately causes infringing material to be distributed and published on Twitter and subsequently viewed by its users. *Id.*

## III. ARGUMENT

### A. Standard

The liberal pleading standards of Fed. R. Civ. P. 8(a), which require only a "short and plain statement of the claim showing the pleader is entitled to relief," remains in full force. Since its purpose is to "give the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up), "[t]he issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted." *Kermani v. Law Office of Joe Pezzuto, LLC*, 2014 WL 260650, at *1 (C.D. Cal. Jan. 23, 2014).

In evaluating a motion to dismiss, courts should grant leave to amend unless amendment would be futile. *Enron Oil Trading & Transp. Co. v. Wallbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) ("The court should freely give leave when justice so requires."). A district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured. *Bonanno v. Thomas*, 309 F.3d 320, 322 (9th Cir. 1962).

### B. MGP Has Pleaded the Necessary Elements of Direct Copyright Infringement, Including Volitional Conduct

A claim direct for direct copyright infringement must state: (1) ownership of a valid copyright, and (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners under the Copyright Act. 17 U.S.C. § 501(a); *Bell v. Witmott Storage Servs.*, 12 F.4th 1065, 1071 (9th Cir. 2021); *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1178 (9th Cir. 2011). Here, Plaintiff alleges it "created many high value photographs throughout his career and has authored many iconic images that have generated substantial amounts of money

through sales and publishing. In the marketplace, professional photographs carry tremendous monetary value. As noted above, Plaintiff owns the rights to these photographs." 4AC ¶ 9. Plaintiff further alleges that it "owns the rights to multiple photographs made by Michael Grecco." *Id.* at ¶ 4. This plausibly alleges ownership under 17 U.S.C. § 501(b). Plaintiff furthermore alleges that Twitter unlawfully reproduced, publicly displayed, and distributed the Photos without authorization (*id.* at ¶ 200), and "Plaintiff has never sold, licensed, or authorized the use of the Photos to [X]." *Id.* at ¶ 60.

Importantly, Plaintiff attached as Exhibit A to the 4AC true and correct copies of each of the Photos (as well as including in the 4AC itself a table with: (1) the registration number of the photograph with the United States Copyright Office and the date of registration; (2) the date the photo was posted on X; and (3) the date when takedown requests were sent to Twitter and X, independently). 4AC ¶ 10 and Exh. A. Further, MGP attached as Exhibit C to the 4AC "[t]rue and correct copies of instances of [X] reproducing, publicly displaying, and distributing the Photos without permission, license, or authorization." *Id.* at ¶ 28 and Exh. C. As such, Plaintiff has clearly met the pleading requirements of Rule 8. *See IO Group, Inc. v. Jordon*, 708 F. Supp. 2d 989, 998 (N.D. Cal. 2010) (allegations sufficient where plaintiff "has alleged that it owns registered copyrights in its photographic and audiovisual works" and that defendant "reproduced, distributed, and publicly displayed . . . Plaintiff's copyrighted work.").

**1. MGP Has Pleaded Volitional Conduct**

The Court has already found that MGP's theory of the case regarding volitional conduct is viable.[2] MGP requests that the Court affirm its prior holdings regarding

[2] *See* ECF No. 91 at 5-6 ("As Twitter acknowledges, under Giganews and VHT, to demonstrate volitional conduct necessary for a finding of direct liability, 'a party . . . must provide some "evidence showing [the alleged infringer] exercised control (other than by general operation of [its website]); selected any material for upload,

the sufficiency of MGP's allegations of direct infringement.[3] Indeed, the distinction that X refuses to acknowledge in the Court's prior orders is that X's volitional conduct can be viewed in light of X Corp.'s knowledge *after* receiving the DCMA takedown demands—not prior to receiving them. (*See, e.g.*, ECF No. 70 at 8).

MGP emphasizes again here that the holding in *Stross v. Meta Platforms, Inc.*, Case No. 2:21-cv-08023-MCS-AS, 2022 U.S. Dist. LEXIS 100689 (C.D. Cal. Apr. 6, 2022), does not compel the Court to grant the Motion. In *Stross*, Facebook attempted to characterize the news feed managed by Facebook as "automated" and therefore not volitional. The Court however stated: "There is no basis in the law to conclude that active management of a website, which would constitute volitional conduct if performed by a human, fails to meet that element because an algorithm designed by a human engineer manages the website instead." *Id.* at *7.

---

download, transmission, or storage; or instigated any copying, storage, or distribution" of its photos.' *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) (alterations in original) (quoting *Giganews*, 847 F.3d at 666, 670). Twitter reads VHT to suggest that 'passive inactivity' cannot constitute the requisite volitional conduct. See Motion at 6. Grecco expressly alleged, however, that Twitter 'exercise[s] control over which images and posts are displayed and curated on [its platform].' 2AC ¶ 127. 'Such curation proximately causes infringing material to be distributed and published on Twitter and subsequently viewed by users on Twitter.' *Id.* The Court fails to understand how these allegations are insufficient to establish Twitter's exercise of control.").

[3] *See* ECF No. 70 at 6-7 (affirmed, ECF No. 91 at 7) ("By pleading that Twitter allowed the alleged infringing material to remain on its platform and failed to respond to the DMCA takedown requests, Grecco has properly pleaded that Twitter engaged in the active display of the infringing material. This is in contrast to the facts in *VHT, Inc.*—there the Ninth Circuit found that it was not proper to find a volitional act based upon receipt of takedown notices because the defendant reasonably responded to the notices. [*VHT*, 918 F.3d] at 734 (finding that defendant did not commit a volitional act after receiving notice as to infringing content because defendant reasonably responded to the notices). Here, by contrast, Grecco has alleged that Twitter failed to reasonably respond. As a result, the 2AC adequately pleads that Twitter committed a volitional act pertaining to the alleged infringing material.").

Twitter—without any direction from its users—selects, orders, arranges, and displays infringing images from Twitter accounts of Twitter's own choosing to Twitter users of Twitter's choosing. 4AC ¶¶ 200. Plaintiff has specifically asserted that Twitter "received substantial benefit" from the infringement in the form of "increasing the traffic to their websites and use of their services." *Id.* at ¶ 131. The Court can reasonably infer that Twitter took an active role in curating how the posts on its social media platform are seen such that X—upon notice of the infringement still left images up—was a proximate cause in that copyright infringement occurring. *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009).

And that volitional conduct was then matched by a conscious decision to ignore DMCA-compliant takedown requests and mediate the takedown between the content owner and the X client/user who posted, by ignoring the DMCA and placing extra-statutory burdens on the content owner side to advantage X and its users. That intentional content moderation is the type of conduct at issue in *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 853 F.3d 1020, 1026-27 (9th Cir. 2017) (which case this firm litigated), indeed worse because here it is not even anonymous moderating agents acting to benefit the platform, it is X itself that decided to be a mediator of content use and reject a compliant takedown because it chose, volitionally and intentionally, to ignore it and instead demand more information the law does not require.

Further, Twitter fails to address the continuing infringement problem identified by the Court,[4] namely that every visit to Twitter's website by a new user, either

---

[4] *See* ECF No. 91 at n.8 (citing *Mavrix Photographs*, 853 F.3d at 1026-27) ("Taking a step back for a moment, it is not disputed that when a third party infringes a copyright holder's exclusive rights to reproduce and/or distribute copies of a registered work by placing a copy of the image/photograph on an internet platform thereby allowing access to the public, there is clearly no volitional conduct on the part of the operator of the platform. However, after that placement, there is continual reproduction, copying, and/or public performance/display of the work on the platform. But again, that continual reproduction, copying, and/or public performance/display would not by itself constitute sufficient volitional conduct.

because Twitter itself curated that infringing post (with infringing image) into the feed of a Twitter user, or because another Twitter user shared that post. Indeed, as alleged by MGP in the 4AC, "[e]very view, retweet, reply or other engagement with one of the posts of the Infringing Images is an incident of infringement that occurred despite clear notice pursuant to the DMCA that continued use of the Infringing Images constituted copyright infringement." 4AC ¶ 205. Further, MGP added allegations to bolster its prior pleading. In the 4AC, MGP pleads that "Defendants exercise control over which images and posts are displayed and curated on Twitter." *Id.* at ¶ 200. MGP further alleges that "[s]uch curation proximately causes infringing material to be distributed and published on Twitter and subsequently viewed by users on Twitter." *Id.*

### 2. Promptness Is Irrelevant When the Response Is a Refusal

Twitter's argument that a "prompt response" is important here, misses the fact that Twitter's response was for MGP to pound sand. Twitter refused to take down the infringing material, so it does not matter how promptly Twitter told MGP that Twitter would be refusing to comply with its obligations under the DMCA. Twitter incorrectly asserts that its refusal to take down the infringing can be labeled (as a matter of after-the-fact attorney argument) as a "response." Indeed, refusing to take down the infringement and making demands beyond the statutorily required notice under the DMCA is not "responding to take down the infringement." Twitter asserts in its motion that MGP has "admitted' that Twitter "responded" to its takedown demands (Mot. at 2), but Twitter is taking semantic license when the bottom line of Twitter's "response" is an intentional, conscious <u>refusal</u> to take down the infringing

---

Nevertheless, when the platform owner is notified that its internet server is allowing unauthorized access and unlawful copying of registered works along with a request by the copyright holder to remove such items from its platform as provided for under the DMCA, the owner's failure to appropriately respond can be deemed a sufficient volitional act for the purpose of determining direct copyright infringement.").

material despite MGP's compliance with every informational requirements of the DMCA. 17 U.S.C. § 512(c)(3).[5] MGP provided an example of the DMCA takedown notice it provided to X in compliance with the statutory requirement of 17 U.S.C. § 512(c)(3). Paragraph 65 of the 4AC states:

> For each of the foregoing infringements, as well as for the additional infringements identified below, Plaintiff provide a notification providing each of the required elements of a DMCA notification pursuant to 17 U.S.C. § 512. For example, the following is an example of a takedown email sent by MGP to copyright@twitter.com, Twitter's registered agent for DMCA notifications.

---

[5] Elements of notification.—
(A)To be effective under this subsection, a notification of claimed infringement must be a written communication provided to the designated agent of a service provider that includes substantially the following:
(i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.
(ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.
(iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.
(iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.
(v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.
(vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

Copyright Manager
Twitter, Inc.
1355 Market Street, Suite 900
San Francisco, CA 94103

To Whom It May Concern:

This is notice pursuant to section 512(c) of the Digital Millennium Copyright Act that your website service is hosting material that infringes my copyright. As a service provider, you are required to expeditiously remove or disable access to the infringing material.

Work: Photograph titled "050221_Heaton_Patricia_MGP_08_004.jpg"
Locations:
https://twitter.com/Kevin10919728/status/1552070310949691392
https://pbs.twimg.com/media/FYoPaFpXkAIWo5l?format=jpg&name=900x900

File/excerpt name: 050221_Heaton_Patricia_MGP_08_004.jpg

Infringing poster: @Kevin10919728

I am the author and copyright owner of the work listed above. This work has been posted to your service without my permission.

Claimant:

Michael Grecco Productions, Inc.
3103 17th Street
Santa Monica, CA 90405
+1 310-452-4461

I have a good-faith belief that the use of the material that appears on the service is not authorized by me, by my agent, or by operation of law. I declare under penalty of perjury, pursuant to the laws of the United States of America, that this notification is true and accurate, and that I am either the copyright owner or I am authorized by the copyright owner, by their agent, or by operation of law.

Please contact me at the email listed above indicating your prompt response.

Sincerely,

Michael Grecco
President/CEO
Michael Grecco Productions, Inc.

4AC ¶ 65. X does not possess the right or authority to "request" information beyond that of the statutory scheme created by Congress, particularly where the "request" is paired with a refusal to take down the infringing post. X's acts are ultra vires, intentional to avoid removing content it wishes to keep on its servers to its benefit.

### C. MGP Pleaded the Necessary Elements of Contributory Infringement, including that Twitter's Services are "Tailored to Infringement"

Regarding the tailoring of X's platform and services, MGP has pleaded: "Regarding contributory liability for copyright infringement, as set forth above, the public hostility to copyright law expressed by Elon Musk sent a message representing the Twitter platform would not enforce copyright law would not prohibit copyright infringement, thereby serving as a knowing inducement for users of its platform to infringe copyright without limitation." 4AC ¶ 206. As noted by X, "'[t]he classic instance of inducement is by advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations.'" Mot. at 11 (quoting *Metro-Goldwyn-Mayer Studio, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937-38 (2005)). However, X cannot reasonably assertion that Elon Musk's repeated suggestions and intimations to Twitter users that intellectual property laws are not going to be enforced did not have the intended effect of more infringement. Regardless, MGP has pleaded that the communications and actions of Elon Musk have served to advertise and broadcast to Twitter users that copyright law is not being enforced.

"Accordingly, Twitter knowingly and materially contributed and/or induced the infringement of Plaintiff's Copyrighted Images on the Twitter Platform." 4AC ¶ 206; *see Grokster*, 545 U.S. at 930 ("One infringes contributorily by intentionally

inducing or encouraging direct infringement . . . ."). Further, Elon Musk has called for the end of intellectual property protection and exhibited a reckless disregard for copyright laws; such actions are "not capable of substantial or commercially significant non-infringing uses." *Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. 583, 593, 146 S. Ct. 959, 967 (2026). The intent of Elon Musk to induce and encourage infringement as evidenced by his actions is a fact pleaded in the 4AC that is deemed as true for purposes of this motion to dismiss.

### D. MGP Has Pleaded the Necessary Facts for Its Claim for Vicarious Liability for Copyright Infringement, Including the Right and Ability to Supervise and a Direct Financial Interest

MGP has pleaded sufficient facts to show that Twitter had the right and ability to supervise the infringing conduct, namely through its curation of users' "feeds" wherein Twitter determines which posts (accompanied by advertisements) are shown to Twitter users. 4AC ¶¶ 50, 207. As a function of that curation of posts, content, and accompanying advertisements (to generate revenue) Twitter received a direct financial interest from the infringing activity in the form of advertising revenue (4AC ¶¶ 31-32, 55-56, 207). *See* ECF No. 91 at 8 (quoting *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019) ("To state a claim for vicarious infringement, a plaintiff must allege that the defendant 'has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity.'"), and *Ellison v. Robertson*, 357 F.3d 1071, 1076 (9th Cir. 2004) ("A defendant is vicariously liable for copyright infringement if he enjoys a direct financial benefit from another's infringing activity and 'has the right and ability to supervise' the infringing activity.")). As such, Twitter has the right and ability to control infringement on its network and receives a direct financial benefit for it, meeting the basic standards for vicarious liability. *Grokster*, 545 U.S. at 930-31 (holding that a defendant "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."); *see also Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068,

1071 (9th Cir. 2013) ("Vicarious infringement occurs when one profits from direct infringement while declining to exercise a right to stop or limit it.").

**1. MGP Has Pleaded the Right and Ability Supervise the Infringing Content**

The Court has already ruled on this question, and Judge Wu did not reconsider that portion of Judge Frimpong's Order. *See* ECF No. 70 at 9-10 ("As determined, the Court finds that Grecco sufficiently pleads that Twitter had the right and ability to supervise the alleged infringing content through the DMCA takedown requests. Upon reviewing Grecco's requests, Twitter could have removed the content from its platform. 2AC ¶¶ 29-124."). Regarding the right and ability to control, X's registration of a DMCA agent with the Copyright Office is a tacit admission that X has the right and ability to take down infringing images from its website pursuant to the DMCA. As such, X has the legal right to stop or limit the directly infringing conduct as well as the practical ability to do so—specifically through DMCA takedown notices.

**2. MGP Has Pleaded that X has a Direct Financial Interest**

This Court has previously found that MGP has met the pleading requirements.[6] For purposes of the 4AC, Judge Wu questioned whether MGP had pleaded sufficient facts to establish direct financial benefit. In response in the 4AC, Plaintiff has pleaded further that X operates its business to make money and that it benefits from increased traffic on its Platform. *See A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) ("Financial benefit exists where the availability of infringing material acts as a 'draw' for customers.").

---

[6] *See* ECF No. 91 at 8 (discussing Order, ECF No. 70) ("The Court found the first element met because '[u]pon reviewing Grecco's [DMCA] requests, Twitter could have removed the content from its platform.' *See id.* at 10 (citing 2AC ¶¶ 29-124). The Court also found the second element met because Grecco had alleged that 'Twitter has generated revenue through the increased traffic from the infringing content.' *Id.* (citing 2AC ¶¶ 27, 131).").

Specifically, MGP has pleaded that "Twitter generates revenue from advertising on its platform, based on user traffic, i.e., the more users view posts and content on the platform, the more advertising revenue Twitter can generate." 4AC ¶ 29. MGP has pleaded that "[t]he instances wherein Twitter reproduced, publicly displayed, and distributed the Photos without permission, license, or authorization were viewed, on information and belief by thousands of Twitter users." *Id.* at ¶ 30. Further, MGP has pleaded that, "[b]ased on the foregoing user traffic, Twitter generated advertising revenue from the infringing posts, wherein Twitter reproduced, publicly displayed, and distributed the Photos without permission, license, or authorization." *Id.* at ¶ 31. Further to that point, MGP has pleaded that "[s]uch revenue is directly tied to infringing posts. If infringing content/posts receive views, Twitter's advertising revenue increases commensurately based on the views that the infringing content/posts receive." *Id.* at ¶ 32. Further, as is relevant to Twitter's withholding of documents during discovery, MGP has pleaded that "Twitter tracks and maintains records of user traffic for purposes of selling advertisements." *Id.* at ¶ 33.

### E. MGP Pleaded Sufficient Facts to Show Its Discovery of the Infringing Photographs

The governing law in the Ninth Circuit is that copyright infringement is subject to the discovery rule. *See Media Right Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022 (9th Cir. 2019) ("Under the discovery rule, a copyright infringement claim accrues—and the statute of limitations begins to run—when a party discovers, or reasonably should have discovered, the alleged infringement.") (cleaned up, citations omitted); *Starz Ent., LLC v. MGM Domestic TV Distribution, LLC*, 39 F.4th 1236, 1238 (9th Cir. 2022) ("Because we agree with the district court that the discovery rule of accrual of copyright claims is alive and well, we affirm."). Here, the chart spanning from pages 15 to 26 includes a column listing the date of discovery of each of the infringing works. *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 372 (2024) ("That provision [§ 507(b)] establishes a three-year period for filing suit, beginning

to run when a claim accrues—here, we assume, upon its discovery."). X appears to challenge the truth of the dates of discovery but cites no evidence to support its attempt to dispute these factual assertions and ignores the Rule 12 stage that delimits its ability to just reject pleaded facts. Indeed, all properly pleaded facts are deemed as established for purposes of a motion to dismiss.

In the 4AC, MGP pleads that, "[a]s set forth in the table above, Plaintiff discovered the infringements on or about the date set forth in the 'Date of Discovery' column." 4AC ¶ 181. X quibbles with the fact that MGP also pleads that "Plaintiff discovered the infringements through Internet search tools such as Pixsy, Google Lens, ImageRights, and/or Copytrack." *Id.* The argument that Plaintiff should have discovered X's wrongdoing sooner falls flat considering the substantial scope of searching the entire internet. X's claim that forty-one of MGP's photographs are time-barred is incorrect. Plaintiff provided a detailed list of their dates of discovery. X's assertion that MGP should have known about them sooner lacks any factual or legal basis.

Indeed, the very argument X presses, that "Grecco should have known sooner, ergo discovery rule does not apply," has been expressly rejected by courts, with the Supreme Court refusing to revisit such a ruling. *See Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 154 (2d Cir. 2024) (rejecting argument that there is a sophisticated plaintiff exception to the discovery rule, and stating "[b]ut at this stage, even if MGP's allegations suggested a copyright holder generally 'sophisticated' in detecting copyright infringements, they did not make it clear from the face of the complaint that MGP's claims in this action were time-barred, or otherwise relieve Davis of her burden to plead and prove her statute of limitations defense."). Indeed, in that case, RADesign filed a cert petition (No. 24-768), where a response was sought, amici filed briefs, and cert was then denied on June 16, 2025.

/ / /

/ / /

### F. The Court Should Allow Amendment to the Extent Necessary

To the extent that the Court deems the 4AC insufficient to state a claim under either direct, contributory, or vicarious copyright infringement, MGP requests leave to further amend its complaint. A district court "shall grant leave to amend freely 'when justice so requires.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting Fed. R. Civ. P. 15(a)). The Ninth Circuit has stated that "this policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.")

X has not demonstrated that any such amendment would be futile, i.e. impossible. *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004); *see also Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("Normally, when a viable case may be pled, a district court should freely grant leave to amend.") (citing *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002)); *Zarco v. Symons*, No. EDCV 22-594-MEMF, 2025 U.S. Dist. LEXIS 116759, at *9 (C.D. Cal. June 17, 2025); *Williams v. Cty. of L.A.*, No. 2:24-cv-04071-DOC-BFM, 2025 U.S. Dist. LEXIS 78644, at *17 (C.D. Cal. Mar. 20, 2025) ("The Ninth Circuit has a liberal policy favoring amendments, and thus leave to amend should be freely granted.") (citing *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992)).

## IV. TWITTER MUST SUPPLEMENT ITS DISCOVERY TO PROVIDE DOCUMENTS RESPONSIVE TO THE ALLEGATIONS IN THE 4AC

Pursuant to Fed. R. Civ. P. 26(e), X has an obligation to supplement its discovery responses.[7] As has become the focus of the Court's inquiry, X possesses

---

[7] Supplementing Disclosures and Responses.
(1) In General. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

documents and information to show the web traffic to the infringing posts and X possesses documents and information to show the amount of revenue to those infringing posts. X has not produced such documents.

## V. MGP OBJECTS TO X'S PRESENTATION OF EVIDENCE OUTSIDE THE PLEADINGS AND OBJECTS TO TREATMENT OF THIS MOTION AS ONE FOR SUMMARY JUDGMENT

X's submission of a factual declaration from a witness not identified in its Initial Disclosures pursuant to Fed. R. Civ. P. 26(a) reveals both that X is attempting to convert this motion to dismiss into a motion for summary judgment by going outside the four corners of the complaint, and that Twitter has not participated in discovery in good faith and has withheld (and is withholding) evidence. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

Pursuant to Fed. R. Civ. P. 56(d), Plaintiff requests that X be ordered to supplement its discovery and production of documents and identification of witnesses pursuant to Rule 26(e), and further that Plaintiff MGP be given leave to depose Mr. Pity and a Rule 30(b)(6) witness as previously noticed.

/ / /

/ / /

/ / /

/ / /

/ / /

---

(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]

## VI. CONCLUSION

For the foregoing reasons, Plaintiff MGP respectfully requests that the Court deny Defendant's Motion to Dismiss the 4AC.

Dated: August 21, 2026

**ONE LLP**

By: /s/ Taylor C. Foss
Taylor C. Foss
Peter R. Afrasiabi
Attorneys for Plaintiff,
Michael Grecco Productions, Inc.

## CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)

The undersigned, counsel of record for Plaintiff Michael Grecco Productions, Inc., hereby certifies that this brief contains 5,846 words, which complies with the word limit of L.R. 11-6.1.

By: /s/ Taylor C. Foss
Taylor C. Foss