Kenneth M. Trujillo-Jamison (Bar No. 280212)
ktrujillo-jamison@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, California 90017
Telephone: (213) 955-9240
Facsimile: (213) 955-9250

Zack Chibane (admitted *pro hac vice*)
zchibane@x.com
Christopher Guerriero (admitted *pro hac vice*)
cguerriero@x.com
X CORP.
249 W. 17th Street
New York, NY 10011
Telephone: (201) 228-0699

*Attorneys for Defendant X Corp., in its corporate capacity and as successor in interest to named defendant Twitter, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL GRECCO PRODUCTIONS, INC., a California corporation,

Plaintiff,

v.

TWITTER, INC., a Delaware corporation; X CORP., a Nevada corporation; and DOES 1-10, inclusive,

Defendants.

Case No.: 2:24-cv-04878-MEMF-AYP

**DEFENDANT X CORP.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

**Date: September 10, 2026**
**Time: 8:30 a.m.**
**Place: Courtroom 9D**

Hon. George H. Wu

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 3

A. The Opposition Confirms Grecco's Failure to Allege Direct Infringement .......... 3

B. The Opposition Supplies None of the Intent *Cox* Requires .......... 5

C. The Opposition Confirms Grecco Cannot Plead Vicarious Liability .......... 7

D. The Opposition Confirms That Forty-One Photographs Are Time-Barred .......... 8

E. Grecco's Requests for Supplemental Discovery Should Be Denied .......... 9

F. Leave to File a *Sixth* Complaint Should Be Denied .......... 10

III. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Art Records v. YouTube*
2026 WL 1669167 (N.D. Cal. June 9, 2026) ........ 1, 3, 5

*Cox Commc'ns, Inc. v. Sony Music Ent.*
146 S. Ct. 959 (2026) ........ *passim*

*Ellison v. Robertson*
357 F.3d 1072 (9th Cir. 2004) ........ 7

*Foman v. Davis*
371 U.S. 178, 182 (1962) ........ 11

*VHT, Inc. v. Zillow Grp., Inc.*
918 F.3d 731 (9th Cir. 2019) ........ 1, 3, 5

*Long v. Dorset*
854 F. App'x 861 (9th Cir. 2021) ........ 1, 3, 5

*Mavrix Photographs, LLC v. LiveJournal, Inc.*
853 F.3d 1020 (9th Cir. 2017) ........ 5

*Michael Grecco Prods. v. BDG Media, Inc.*.
2019 WL 13128605 (C.D. Cal. Nov. 21, 2019) ........ 9

*Michael Grecco Prods., Inc. v. RADesign, Inc.*
112 F.4th 144 (2d Cir. 2024) ........ 9

*Perfect 10, Inc. v. Giganews, Inc.*
847 F.3d 657 (9th Cir. 2017) ........ 7, 8

*Stross v. Meta Platforms*
2022 WL 1843129 (C.D. Cal. Apr. 6, 2022) ........ 5

*UMG Recordings, Inc. v. Veoh Networks Inc.*
665 F. Supp. 2d 1099 (C.D. Cal. 2009) ........ 4

*United States v. Ritchie*
342 F.3d 903 (9th Cir. 2003) ........ 10

*Waterman v. TikTok, Inc.*
2024 WL 5413655 (C.D. Cal. Oct. 30, 2024) ........ 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

After five complaints, two years of litigation, and completed discovery, Grecco's entire case still relies on a fundamentally flawed legal theory: that X is liable for copyright infringement because it responded to Grecco's takedown notices by requesting basic identifying information required by the DMCA. *See* ECF No. 96 ("Opening Brief" or "Br.") at 6–10. The Ninth Circuit has repeatedly rejected copyright claims premised on exactly that theory. Br. at 7–8. In *VHT, Inc. v. Zillow Group, Inc.*, *Long v. Dorset*, *and Art Records v. YouTube*,[1] the defendants defeated copyright infringement claims by responding to takedown notices just as X did here. More recently, in *Waterman v. Twitter, Inc.,* No. 2:24-cv-04881-SRM-PD, ECF No. 65 (C.D. Cal. Aug. 3, 2026) ("*Waterman*")—a case counsel called "this case's companion," "premised on the same fact pattern"—this Court dismissed materially identical claims for failure to plead conduct "beyond passive, standard operation of [X]."[2] *Id.* at 2. Unable to distinguish any of this authority, Grecco's opposition ignores it all.

The Opening Brief also showed that Grecco has withdrawn the false allegation on which its claims previously survived: that X "simply ignored" its notices and "took no action in response." Br. at 8–10. On at least 139 occasions, X promptly "responded to ask for information." 4AC ¶¶ 34, 67; ECF No. 96-1 & Ex. A. Grecco ignored every one of those responses. *Id.* In other words, it was Grecco who "simply ignored" the relevant correspondence in this case.

The Opposition does not contest any of this. On direct infringement, it asks the Court to "affirm its prior holdings," while admitting those holdings relied on

---

[1] 918 F.3d 723 (9th Cir. 2019) ("*VHT*"); 854 F. App'x 861 (9th Cir. 2021); 2026 WL 1669167 (N.D. Cal. June 9, 2026) ("*Art Records*").

[2] *See Waterman*, ECF Nos. 65 at 4–5, 9–11; 57-1 at 1.

the withdrawn allegation that X "failed to respond to the DMCA takedown requests." Opp. at 7 n.3. It then attempts to recast X's responses as "an intentional, conscious refusal" to act, without citing a single case to support that inverted, illogical reading of X's conduct. Opp. at 9–10. On contributory infringement, *Cox Communications, Inc. v. Sony Music Entertainment*, 146 S. Ct. 959, 967 (2026) ("*Cox*"), requires intent to infringe—shown "only if the party induced the infringement or the provided *service* is tailored to that infringement." The Opposition never even cites—much less tries to satisfy—that standard. *See* Opp. at 12–13. Grecco instead claims Mr. Musk's "*actions*," rather than X as a *service*, are tailored to infringement, and two social media posts "advertise[d] and broadcast[ed]" infringement (Opp. at 12–13)—ignoring that the posts on their face did no such thing and that, in any event, one of the posts came *before* Mr. Musk even owned X while the other came after 149 of 152 alleged instances of infringement. On vicarious liability, Grecco simply repeats the conclusion that "X operates its business to make money" and "benefits from increased traffic" (Opp. at 14)—the same generalized "website traffic" theory *Waterman* flatly rejected. *Waterman*, ECF No. 65 at 10. Grecco also claims that X's maintenance of a DMCA agent—a statutory requirement that "shall not bear adversely upon" any defense—is somehow a "tacit admission" of liability. Opp. at 14. On Grecco's 37 time-barred and dismissed photos, Grecco treats the 4AC's "Date of Discovery" as a fact that must be accepted for discovery rule tolling, but Grecco's own cases confirm that is wrong. Opp. at 15–16.

This Court warned that the 4AC would be Grecco's "last opportunity to amend." ECF No. 92 at 1. Discovery is closed, and Grecco identifies no facts a sixth complaint would add. Dismissal should be with prejudice.

## II. ARGUMENT

### A. The Opposition Confirms Grecco's Failure to Allege Direct Infringement

The Opening Brief demonstrated that, despite two years of litigation and completed discovery, Grecco still cannot allege that X acted volitionally in "selecting infringing works for upload or download or instigating any copying, storage, or distribution of the works." Br. at 6–10. Grecco's direct infringement claim twice survived on a single false allegation—that X "simply ignored" the takedown notices and "took no action in response." Br. at 8–10. But the 4AC *withdraws* that false allegation and *admits* that X repeatedly "responded to ask for information." Br. at 9–10; 4AC ¶¶ 34, 67. That admission is dispositive. The Ninth Circuit has repeatedly held that a platform that "took affirmative action to address . . . claims by requesting further information engages in conduct that "can hardly be characterized as rising to the level of volitional conduct." Br. at 7–8; *Long*, 854 F. App'x at 864; *VHT*, 918 F.3d at 731–32, 734; *Art Records*, 2026 WL 1669167, at *1–2. As this Court acknowledged, mere display of user content "would not by itself constitute sufficient volitional conduct." ECF No. 91 at 6 n.8.

In response, Grecco asks the Court to "affirm its prior holdings regarding the sufficiency of [Grecco's] allegations of direct infringement." Opp. at 6–7. But Grecco concedes—as it must—that the Prior Order's holding was premised on the false and since-abandoned allegation that X "failed to respond to the DMCA takedown requests." Opp. at 7 n.3 (quoting Prior Order at 6–7). That allegation was also the only ground on which this Court distinguished *Cox, VHT*, and *Art Records*. ECF No. 91 at 6 n.7 ("Grecco alleges here that [X] took no action in response to the takedown requests.") Stripped of that false claim, all that remains is the passive display of allegedly infringing third-party content, which a legion of courts—including this Court—have held "would not by itself constitute sufficient volitional conduct." ECF No. 91 at 6 n.8. Thus, Grecco's demand that the Court

"affirm its prior holdings" is actually a concession that Grecco lacks *any* new facts to replace its false and withdrawn theory of liability.

Faced with its pleading failure, Grecco offers nothing but labels and spin. Grecco claims for the very first time—without citing any authority—that X's 139 takedown responses somehow constitute "an intentional, conscious refusal to take down the infringing material." Opp. at 9–10. Even if this allegation were properly before the Court (it is not), Ninth Circuit law would foreclose it: a platform's request that a rightsholder identify the work claimed to be infringed is "affirmative action to address the claims" and "can hardly be characterized as rising to the level of volitional conduct." Br. at 7–8. The Opposition cites no authority for the contrary proposition that such responses can support volitional conduct.[3]

Nor did Grecco's takedown notices "compl[y] with every informational requirement[]" in the DMCA, as Grecco simply concludes.[4] Opp. at 10. The 4AC's own exemplar notice identifies Grecco's "Work" only by an internal ".jpg" file name—"050221_Heaton_Patricia_MGP_08_004.jpg." Br. at 11 n.6 (citing 4AC ¶ 65). That generic file name does not provide "identification of the copyrighted work," as required by 17 U.S.C. § 512(c)(3)(A)(ii). In *UMG Recordings, Inc. v. Veoh Networks Inc.*, 665 F. Supp. 2d 1099 (C.D. Cal. 2009), this Court held that listing "names of artists" is insufficient to provide "identification of the copyrighted work" because such names are "not quite the same" as "what the statute requires" to identify the works at issue. *Id.* (citing § 512(c)(3)(A)(ii)). If artists' *actual names* are not "what the statute requires," then Grecco's *private file*

---

[3] Grecco's false characterization of X's responses as a "conscious refusal" also contradicts Grecco's allegation that X merely "responded to ask for information."

[4] This is also a legal conclusion that cannot be credited on a motion to dismiss. *Waterman v. TikTok, Inc.*, 2024 WL 5413655, at *4 (C.D. Cal. Oct. 30, 2024) (rejecting the plaintiff's allegation that its takedown notices "complied with the DMCA" as a "legal conclusion the Court is not allowed to accept").

*names* certainly are not. Thus, X's prompt request to Grecco for more information was not a "refusal" at all; it is the natural consequence of Grecco's deficient takedown notices. On similar facts, the Ninth Circuit in *VHT* dismissed direct infringement claims for lack of volitional conduct because the platform-defendant "promptly requested" information sufficient to evaluate the plaintiff's exclusive rights. Prior Order at 6–7; *VHT*, 918 F.3d at 734. So too here.

The rest of the Opening Brief's arguments go unanswered. Br. at 4–10. Grecco never mentions *Long* or *Art Records*, and never engages with *VHT*'s holding that affirmative responses to takedown notices defeat volitional conduct. *See generally* Opp. at 7 n.3. Grecco nowhere denies (or explains why) it ignored all 139 of X's responses. And Grecco never mentions *Waterman*—this Court's July 2026 dismissal of materially identical claims—even though Grecco's counsel, until recently, called *Waterman* "this case's companion." *Waterman*, ECF Nos. 57-1 at 1. Finally, the two cases the Opposition does cite (Opp. 7–8) say nothing about a platform promptly responding to takedown notices.[5] The direct infringement claim should be dismissed with prejudice.

**B. The Opposition Supplies None of the Intent *Cox* Requires**

The Opening Brief demonstrated that Grecco cannot plead the required intent to infringe under *Cox*—*i.e.*, that X (1) "actively encouraged infringement through *specific acts*," or (2) is "not capable of 'substantial' or 'commercially significant' noninfringing uses." Br. at 11 (citing *Cox*, 146 S. Ct. at 967). Instead, the 4AC relies on two of Mr. Musk's social media posts that could not have induced infringement, wholly irrelevant companywide layoffs, and the

[5] *Stross v. Meta Platforms*, 2022 WL 1843129 (C.D. Cal. Apr. 6, 2022), addressed allegations that Meta engaged in the "active management of a website," and there was no mention of Meta responding to takedown notices. *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 853 F.3d 1020 (9th Cir. 2017) is a DMCA safe-harbor decision regarding pre-publication screening of allegedly infringing material. It says nothing about takedown notices.

unsupported legal conclusion that X decided to "not enforce copyright law." Br. at 11–15 (citing 4AC ¶¶ 15–21, 36–38). As the Opening Brief demonstrated, each fails to satisfy *Cox*. *Id.*

The Opposition's response occupies barely a page. Opp. at 12–13. Grecco argues that two of Mr. Musk's X posts—which say nothing about Grecco, the works at issue, the alleged infringements, or even X generally—somehow "advertise[d] and broadcast[ed]" infringement. Opp. at 12. But as the Opening Brief explained, that is utterly implausible: one of the two posts *pre*-dates Mr. Musk's acquisition of Twitter and the other *post*-dates 149 of 152 alleged acts of infringement. Neither post approaches a "specific act" that "actively encouraged infringement." *Cox*, 146 S. Ct. at 967. The Opening Brief also demonstrated that both posts are protected political speech—one is a reply to a United States Senator about copyright legislation, and the other is an exchange about copyright policy. Br. at 13. The Constitution and the *Noerr-Pennington* doctrine preclude liability based on such advocacy. Br. at 13. The Opposition ignores this argument altogether, effectively conceding these posts cannot support liability. Grecco's silence is a concession that such posts cannot support liability.

Moreover, the Opening Brief explained that *Cox* requires a *service* be "not capable of 'substantial' or 'commercially significant' noninfringing uses." 146 S. Ct. at 967. Acknowledging that it cannot meet that standard, the Opposition tries to change it, claiming Mr. Musk's "*actions* are 'not capable of substantial or commercially significant non-infringing uses.'" Opp. at 13. That is not the standard. 146 S. Ct. at 967. The Opening Brief already demonstrated that the 4AC's own allegations preclude any showing that X—as a general-purpose platform *service* with "237.8 million daily users"—is incapable of noninfringing uses. Br at 14–15 (citing, *e.g.*, 4AC ¶¶ 36–38, 68 (X's (i) Copyright Policy provides for removal of infringement; (ii) Terms of Service prohibit infringement; (iii) DMCA agent receives takedown notices; and (iv) enforcement actioned more

than 230,000 takedowns)). The Opposition ignores all of this.

Grecco also ignores *Cox* itself. In *Cox*, the provider received millions of takedown notices, maintained a "thirteen-strike policy," "never terminat[ed] a subscriber without reactivating them," and employed a head of enforcement that was "openly contemptuous" of copyright law. Br. at 12–13. The Supreme Court found no contributory liability on those facts. *Cox*, 146 S. Ct. at 968. Grecco's allegations here—where its 139 takedowns were promptly responded to, but met with silence from Grecco—are not in the same universe. Br. at 12. Grecco's contributory liability claim should be dismissed with prejudice.

### C. The Opposition Confirms Grecco Cannot Plead Vicarious Liability

The Opening Brief demonstrated that Grecco pleads neither element of vicarious liability: (1) no direct financial interest, because the 4AC does not tie a single user, advertisement, or dollar of revenue to any alleged infringement; and (2) no right and ability to supervise, because X's ability to remove posts in the abstract means nothing without adequate detail identifying the infringement. Br. at 15–18. In response, the Opposition claims "[t]he Court has already ruled on this question" and offers that "X operates its business to make money and that it benefits from increased traffic on its Platform." Opp. at 14. Neither addresses the 4AC's deficiencies. *First*, the Opposition admits that the Prior Order "questioned" whether it "pleaded sufficient facts to establish direct financial benefit," but answers that question with another insufficient fact—that "X operates its business to make money and that it benefits from increased traffic." Opp. at 14. That generalized description—which applies to every advertising-supported platform, says nothing about revenue generated "*specifically because of Grecco's copyrighted material*," as this Court held is required. ECF No. 91 at 10 (citing *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) and *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004)). That theory was expressly rejected in

*Waterman*—*i.e.*, the "broad allegation" that "website traffic" generally "translates into substantial ill-gotten commercial advantage and revenue generation." ECF No. 65 at 10. The 4AC pleads that exact sentence verbatim, which Grecco blindly repeats it in opposition. 4AC ¶ 62; Opp. at 4.

*Second*, the Opposition asserts in conclusory fashion that X supervises infringement "through its curation of users feeds" where X "determines" which content is shown, and that X's maintaining of a "DMCA agent" is somehow "a tacit admission that X has the right and ability" to control infringement. Opp. at 13–14. Neither allegation is found in the 4AC. The 4AC never alleges "curation" of user "feeds." Instead, the 4AC alleges how X generally operates in the abstract: advertisements appear "alongside and between the posts" in all user feeds, and X controls content through its Terms of Service and "basic design of its platform." *Id.* ¶¶ 50, 207. Those are the same generalized allegations that this Court already held "fail[] to describe how [X's] conduct *exceeded* Twitter's general operations." Prior Order at 6 (emphasis added). The 4AC's allegations thus confirm that Grecco cannot plead the practical ability to locate the infringing works—the 4AC's own exemplar takedown identifies the copyrighted work only by an internal file name, which, as in *Waterman*, lacked necessary "identifying information." *Waterman*, ECF No. 65 at 11. And Grecco's "tacit admission" claim likewise appears nowhere in the 4AC. *See* 4AC. Regardless, maintaining an agent is a statutory prerequisite to safe-harbor eligibility, and safe-harbor compliance "shall not bear adversely upon" any defense. 17 U.S.C. § 512(l). What remains is the abstract power to remove content, but "[f]or vicarious liability to attach . . . the defendant must have the right and ability to supervise and control *the infringement*" at issue. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 805 (9th Cir. 2007). Grecco cannot make that showing.

### D. The Opposition Confirms That 41 Photographs Are Time-Barred

The Opening Brief demonstrated that Grecco's claims as to thirty-seven

previously dismissed photographs remain time-barred. Br. at 19–20. In the Opposition, Grecco fails to explain how its conclusory "Date[s] of Discovery" and list of search tools can establish that it "lacked actual knowledge of the alleged acts of infringement" during the limitations period and that this "was reasonable under the circumstances." Br. at 19 (citation omitted); Opp. at 15–16. Grecco also does not address—much less rebut—X's case law, including *Michael Grecco Productions v. BDG Media, Inc.*, 2019 WL 13128605 (C.D. Cal. Nov. 21, 2019), where this Court rejected as insufficient similar "conclusory assertions that [Grecco] discovered Defendant's unauthorized uses" at a particular time. Br. at 20 (citation omitted). Instead, Grecco relies on an out-of-circuit case, *Michael Grecco Productions, Inc. v. RADesign, Inc.*, 112 F.4th 144 (2d Cir. 2024); but that case is inapposite because, in that Circuit, unlike here, plaintiffs are not required to plead facts sufficient to demonstrate the timeliness of otherwise time-barred claims. *Id.* at 153–54. Grecco also does not contest—and thus concedes—that its claims as to four newly-added photos do not relate back to its original complaint, that photograph 112 is facially time-barred, and that the 4AC lacks facts suggesting diligence as to the other three photos. Br. at 21; *see generally* Opp.

**E. Grecco's Requests for Supplemental Discovery Should Be Denied**

The Opposition ends by asking for the kitchen sink—requesting an order requiring X to produce "documents and information" about the "revenue" and "web traffic to the [allegedly] infringing posts"; supplement its initial disclosures; permit Grecco to depose the witness who authenticated X's responses to 139 of Grecco's takedown notices;[6] and to conduct a Rule 30(b)(6) deposition. Opp. at

---

[6] Grecco's objection to the Court's consideration of those records (Opp. at 18), is baseless. A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Grecco's 4AC does exactly that. See 4AC ¶ 34 ("Plaintiff sent DMCA takedown requests" and X "requested more information"); *id.* ¶ 41 ("Rather than remove the

17–18. These baseless, improper, and untimely requests should all be denied. As explained in full in X's Opposition to Grecco's Untimely Motion to Extend Fact Discovery Cutoff (ECF No. 66; "Motion to Extend"), Grecco was the opposite of diligent in discovery—it (i) waited nearly six months into a twelve-month discovery period to serve *any* discovery; (ii) propounded nearly 600 discovery requests on the very last day to do so; (iii) noticed its only deposition eight days before the fact discovery cutoff; and (iv) refused X's invitation to enter into an ESI protocol that would have streamlined document discovery by governing the search for and production of documents. Further, Grecco filed its Motion to Extend *twelve days after* discovery closed—making the motion itself untimely. Indeed, this Court recently denied a motion in "this case's companion" that similarly sought to reopen discovery after that plaintiff—represented by the same counsel—failed to diligently conduct discovery. *Waterman*, ECF No. 57-1 at 1; *id.*, ECF No. 64, at *2–5. This Court should do the same.

### F. Leave to File a *Sixth* Complaint Should Be Denied

This Court warned Grecco that the 4AC would be its "last opportunity to amend." ECF No. 92 at 1. Grecco's fifth complaint re-pleads already-rejected facts, withdraws the very allegations on which its claims previously survived, and re-asserts thirty-seven time-barred photographs. *See* Br. at 21–22. Further, "[r]epeated failure to cure deficiencies by amendments previously allowed" is a settled ground for denying leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962). This Court should dismiss the 4AC and finally bring this case to a close.

## III. <u>CONCLUSION</u>

For all the foregoing reasons and those in the Opening Brief, X respectfully requests that the Court dismiss the 4AC in its entirety with prejudice.

---

infringements [X] demanded information not required"). This Court may consider these records—especially since Grecco strategically omitted them from all five of its complaints, including the 4AC. *See* ECF Nos. 1, 12, 30, 73, 95-1.

Respectfully submitted,

Dated: August 31, 2026

WILLENKEN LLP

By: */s/ Kenneth M. Trujillo-Jamison*

Kenneth M. Trujillo-Jamison

*Attorneys for Defendant X Corp., in its corporate capacity and as successor in interest to named defendant Twitter, Inc.*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for defendant X Corp., in its corporate capacity and as successor in interest to named defendant Twitter, Inc., certifies that this brief contains 3374 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 31, 2026 WILLENKEN LLP

By: */s/ Kenneth M. Trujillo-Jamison*
Kenneth M. Trujillo-Jamison
*Attorneys for Defendant X Corp., in its corporate capacity and as successor in interest to named defendant Twitter, Inc.*